# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

TEXAS AMERICAN FEDERATION OF TEACHERS

     *Plaintiff,*

v.

TEXAS EDUCATION AGENCY and
MIKE MORATH,

     *Defendants.*

CASE NO. 1:26-CV-00024-ADA

---

## DEFENDANTS' MOTION TO DISMISS

---

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................iii

INTRODUCTION ............................................................................................................. 1

I.      Legal Standard ..................................................................................................... 2

II.     Argument .............................................................................................................. 2

    1. Disciplinary Process for Teachers ...................................................................... 3

        A.      Plaintiff has not suffered harm from Defendants .................................. 5

    2. Plaintiff's alleged injuries are not traceable to the Attorney General .................... 7

    3. Plaintiff's claims against TEA are barred by sovereign immunity. ......................... 8

    4. Younger Abstention ............................................................................................ 9

CONCLUSION .............................................................................................................. 10

CERTIFICATE OF SERVICE ............................................................................................ 11

TABLE OF AUTHORITIES

**Cases**

*A & R Eng'g and Testing, Inc. v. Scott*,
    72 F.4th 685 (5th Cir. 2023) ............................................................. 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................... 2

*Breaux v. City of Garland*,
    205 F.3d 150 (5th Cir. 2000) ........................................................... 7

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019) ......................................................... 10

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ......................................................................... 9

*Colson v. Grohman*,
    174 F.3d 498 (5th Cir. 1999) ........................................................... 8

*Daves v. Dallas Cnty.*,
    22 F.4th 522 (5th Cir. 2022) .......................................................... 11

*Fed. Election Comm'n v. Cruz*,
    596 U.S. 289 (2022) ......................................................................... 9

*Gomez v. Tex. Educ. Agency*,
    354 S.W.3d 905 (Tex. App.—Austin 2011, pet. denied) .................. 6

*Harris v. Victoria Indep. Sch. Dist.*,
    168 F.3d 216 (5th Cir. 1999) ........................................................... 7

*Hooks v. Landmark Indus.*,
    797 F.3d 309 (5th Cir. 2015) ........................................................... 2

*Institutional Div. of Tex. Dep't of Crim. Justice v. Powell*,
    318 S.W.3d 889 (Tex. 2010) ....................................................... 3, 12

*La Union Del Pueblo Entero v. Abbott*,
    151 F.4th 273 (5th Cir. 2025) .......................................................... 6

*Lowery v. Mills*,
    157 F.4th 729 (5th Cir. 2025) .......................................................... 8

*Mi Familia Vota v. Ogg*,
    105 F.4th 313 (5th Cir. 2024) ........................................................ 10

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982) ................................................................... 11, 12

*Nat'l Press Photographers Ass'n v. McCraw*,
    90 F.4th 770 (5th Cir. 2024) ........................................................ 6, 8

*Pierce v. Texas Dept. of Crim. J., Institutional Div.*,
    37 F.3d 1146 (5th Cir. 1994)...........................................................................7, 8

*Plotkin v. IP Axess Inc., Etc.*,
    407 F.3d 690 (5th Cir. 2005) .................................................................................3

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) .................................................................................2

*Santander v. Salazar*,
    133 F.4th 471 (5th Cir. 2025) ................................................................................3

*Texas Ass'n of Business v. Earle*,
    388 F.3d 515 (5th Cir. 2004) ...............................................................................12

*Texas State Teachers Ass'n v. State*,
    711 S.W.2d 421 (Tex. App.—Austin 1986, writ ref'd n.r.e.)............................11

*Zadeh v. Robinson*,
    928 F.3d 457 (5th Cir. 2019) ...............................................................................11

## Statutes

1 Tex. Admin. Code § 12.85 ...........................................................................................4

19 Tex. Admin. Code § 249.36 .......................................................................................4

19 Tex. Admin. Code § 249.39 .......................................................................................4

19 Tex. Admin. Code. § 249.14(a)-(d) ..........................................................................3

Tex. Admin. Code. § 249.14(k) ..................................................................................3, 4

Tex. Educ. Code §§ 39.3-4 .............................................................................................3

Tex. Gov't Code § 2001.058(e) ......................................................................................4

Tex. Gov't Code § 2001.087 ...........................................................................................4

Tex. Gov't. Code §§ 2001.174-76 ..................................................................................5

## Regulations

Fed. R. Civ. P. 12(b)(1)...................................................................................................2

Fed. R. Civ. P. 12(b)(6) ..................................................................................................2

## Constitutional Provisions

Tex. Const. Ann. art. VII, Sec. 1 (1995)........................................................................9

**Other Authorities**

*Educator Misconduct & Investigations*, Texas Education Agency
    https://tea.texas.gov/texas-educators/investigations/educator-misconduct-
    investigations (last visited Feb 5, 2026) ............................................................. 3

Defendants, Texas Education Agency and Mike Morath, hereby file this Motion to Dismiss and would show the Court as follows:

### INTRODUCTION

On September 10, 2025, Charlie Kirk was murdered as he engaged in discourse on a college campus. As a public figure in a time when passions are high, the public reacted to his assassination in public forums. Some participants in the resulting dialogue happened to be teachers. The Texas Commissioner of Education, Mike Morath sent a letter to school superintendents, not teachers, not principals, reminding superintendents that public school educators are held to a higher ethical standard, the Educators' Code of Ethics. He also told them that if the superintendents discover that any teachers may have been over the ethical line in their discourse, that the superintendents should refer those teachers to the Texas Education Agency's ("TEA") investigative division through the Misconduct Reporting Portal. Those complaints would then be thoroughly investigated to determine if a breach occurred.

It is important in these overheated times to step back and think for a moment about what exactly Mr. Morath said and to whom he said it. He simply asked for referrals for investigation of anything the superintendents believed was not within the ethical boundaries for a public-school teacher of Texas's children to publish to the world. Nothing more, nothing less.

There was no new policy enunciated. Just a reminder of the existing policy and the place to refer complaints.

Separate and apart from any letter by Mr. Morath, school districts who are the actual employers of teachers, had their own reactions to their teachers' responses to the Charlie Kirk murder. Mr. Morath and TEA had nothing to do with these reactions including any school district terminations or public reprimands.

There has been no showing that any plaintiff has suffered injury as a result of Defendants' actions. Opening an investigation is not an injury. Conducting that investigation is not an injury. Two teachers described in the complaint continue to do their jobs without interruption. Teacher 1

was terminated from her position by the school board and Defendants had no role in the termination. Teacher 4 was put on leave and reprimanded by his school or district without any action by Defendants. No injury is alleged in the complaint that is traceable to Defendants.

## I.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus.,* 797 F.3d 309, 312 (5th Cir. 2015). The plaintiff bears the burden to prove jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc., Etc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Qualified immunity can be asserted in a 12(b)(6) motion to dismiss. *See, e.g.*, *Santander v. Salazar*, 133 F.4th 471, 477 (5th Cir. 2025).

## II.     ARGUMENT

The Court should dismiss Plaintiff's claims for four reasons. First, Defendants have not caused any harm to any of Plaintiff's members. Second, there is no traceability of any harm allegedly suffered to these Defendants. Third, sovereign immunity bars any claim against the Texas Education Agency because it is a state governmental agency immune from suit under the Eleventh

Amendment to the United States Constitution.  Fourth, in the alternative, th*e Younger* abstention doctrine requires the court to allow the investigations to continue.

**1. Disciplinary Process for Teachers**

As an initial matter, it is important to lay out the legal process that the state must go through before there is any adverse action taken against a teacher's license.  During that process any affected teacher has an adequate opportunity to raise their First Amendment arguments within the state process.  *See, e.g.*, *Institutional Div. of Tex. Dep't of Crim. Justice v. Powell*, 318 S.W.3d 889, 892 (Tex. 2010).

The process that the TEA is required to follow when conducting a disciplinary investigation is governed by detailed administrative rules and statutes.  *See Educator Misconduct & Investigations*, TEXAS EDUCATION AGENCY https://tea.texas.gov/texas-educators/investigations/educator-misconduct-investigations (last visited Feb 5, 2026).  The governing rules and statutes ensure due process and provide the petitioner an adequate opportunity to challenge the evidentiary basis of any disciplinary action and for the petitioner to raise and have timely decided any legal defenses.

The TEA's investigation and hearing process generally begins when the TEA receives a written complaint or when the TEA obtains information concerning allegedly improper conduct committed by an educator, applicant, or examinee.  *See* 19 Tex. Admin. Code. § 249.14(a)-(d); *see also id.* at §§ 153.1203-153.1207 (describing mandatory reporting requirements and separate procedures when an employee is under investigation for a romantic relationship with, or solicited or engaged in sexual contact with, a student or minor); Tex. Educ. Code §§ 39.3-4 (describing special investigations).  After reviewing the allegations, TEA staff have the discretion whether to accept the case for investigation.  *See* 19 Tex. Admin. Code. § 249.14(k).  Before the institution of any agency proceedings, the TEA is required to send a letter via certified or registered mail to the certificate holder being investigated giving them notice of the facts or conduct alleged to warrant the intended action and provide her with an opportunity to show compliance with the law. *Id.* § 249.14(p)-(q).  Only the TEA may file a petition seeking sanctions with the State Board for Educator Certification (SBEC).  *Id.* § 249.14(q).

3

If the TEA determines that a petition seeking sanctions is warranted, the TEA can file the petition and must serve the petition on the certificate holder and the certificate holder's attorney, if notice of representation has been provided. *Id.* § 249.15(c), 249.26. The petitioner has the burden of proof by a preponderance of the evidence, and the petition must contain "a statement of the legal authority and jurisdiction under which the disciplinary action is being sought and hearing is to be held," "a reference to the particular sections of the statutes and rules involved,' "a statement of the matters asserted," and "a statement regarding the failure of the parties to reach an agreed settlement of the matters." *Id.* § 249.26(b). The certificate holder has 30 calendar days to file an answer and has the right to be represented by an attorney. *Id.* §§ 249.23, 249.27.

If the certificate holder has timely served an answer, the case is then referred to the State Office of Administrative Hearings, where the case is heard by an Administrative Law Judge. *Id.* §§ 249.18(b)(2), 249.19-21. The parties are entitled to discovery, and the proceeding is governed by the Texas Rules of Civil Procedure; Tex. Gov't Code, Chapter 2001 (relating to administrative procedures); 1 Tex. Admin. Code, Part 7, Chapter 155 (relating to procedural rules relevant to procedures of the State Office of Administrative Hearings); and 19 Tex. Admin. Code, Chapter 249 (relating to disciplinary proceedings by the State Board for Educator Certification). 19 Tex. Admin. Code § 249.29. The Texas Rules of Evidence as applied in a nonjury civil case in district court govern the hearing, and parties have the right to cross-examine witnesses. Tex. Gov't Code § 2001.087; 1 Tex. Admin. Code § 12.85. After the hearing, the Administrative Law Judge must prepare a proposal for decision, which must contain separate findings of fact and conclusions of law. 19 Tex. Admin. Code § 249.36. The SBEC must then make a final decision on the proposal for decision and may change a finding of fact or conclusion of law made by the Administrative Law Judge only if the SBEC states "in writing the specific reason and legal basis" for the change. 19 Tex. Admin. Code § 249.39; Tex. Gov't Code § 2001.058(e). The final order is subject to judicial review, and the reviewing court must reverse or remand the case if the decision prejudices the appellant's substantial rights because it violates a constitutional or statutory provision, exceeds the agency's authority, is made through unlawful procedure, is not reasonably supported by substantial

evidence, or is arbitrary or capricious. Tex. Gov't. Code §§ 2001.174-76; *Gomez v. Tex. Educ. Agency*, 354 S.W.3d 905 (Tex. App.—Austin 2011, pet. denied).

These procedures, like the procedures in *Middlesex*, are not deficient. Nor has there been any showing that Defendants are acting in bad faith. Plaintiff's members can be represented by counsel, have plenty of opportunity to present evidence and legal arguments to the agency prior to any final decision, and may seek judicial review. These procedures are an adequate opportunity to raise these constitutional questions and importantly, there has been no allegation to the contrary.

### A. Plaintiff has not suffered harm from Defendants

Plaintiff has not pled an Article III injury for several reasons. First, Plaintiff has not pled facts showing a credible threat of adverse employment action by Defendants exists as to its members. Second, Plaintiff has not pled an injury in fact traceable to the conduct of Defendants. Article III standing requires the plaintiff to plead an injury in fact that is traceable to the conduct of the defendants and redressable by the court. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 781 (5th Cir. 2024). "[P]laintiffs must establish standing for each and every provision they challenge." *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 285 (5th Cir. 2025) (quoting *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019)).

Plaintiff has failed to state a claim for First Amendment retaliation because it has failed to show an adverse employment action by Defendants against any of its members. A plaintiff must plead four elements to assert a retaliation claim cognizable under the First Amendment: (1) the plaintiff has suffered an adverse employment action; (2) the plaintiff was speaking as a citizen on a matter of public concern; (3) the plaintiff employee's interests in free speech on matters of public concern outweighs the defendant employer's interests in efficiently managing a public function; and (4) the defendant's action was motivated by the plaintiff's speech. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). Here, Defendants agree the death of Charlie Kirk is a matter of public concern and that the teachers were referred for investigation because of the speech at issue, but without an adverse employment action, and because Plaintiff has failed to show how

*Pickering* balancing weighs in their favor against these Defendants, Plaintiffs have failed to state a claim.

The Fifth Circuit has consistently taken a narrow view of what constitutes an adverse employment action. *Pierce v. Texas Dept. of Crim. J., Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994). "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Id.* The Fifth Circuit has declined to broaden its view of adverse employment actions, advising that even when some actions may have "the effect of chilling protected speech," they are not necessarily actionable. *Id.* at 1150.

The Fifth Circuit has further defined what is *not* an adverse employment action: (1) "mere accusations or criticism," *Breaux v. City of Garland*, 205 F.3d 150, 157–58 (5th Cir. 2000) (citing *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997)); (2) "investigations," *id.* (citing *Pierce,* 37 F.3d at 1150); (3) "psychological testing," *id.* (citing *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998), *cert denied*, 526 U.S. 1065 (1999)); (4) "false accusations," *id.* (citing *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999)); and (5) "polygraph examinations that do not have adverse results for the plaintiff," *id.* (citing *Pierce*, 37 F.3d at 1150). Specifically in the education context, the Fifth Circuit has repeatedly announced that "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures" are not the kinds of adverse actions that "rise to the level of a constitutional deprivation." *Lowery v. Mills*, 157 F.4th 729, 741 (5th Cir. 2025) (quoting *Pierce*, 37 F.3d at 1149).

Thus, the outer boundaries of the adverse employment action category appear to be defined by the ultimate result. For example, in *Pierce*, the plaintiff was investigated two separate times for potential misconduct, but the Fifth Circuit found no adverse employment action because "[n]either investigation resulted in any action being taken against Pierce." *Pierce*, 37 F.3d at 1150. And in *Colson v. Grohman*, the Fifth Circuit distinguished verbal reprimands from formal reprimands, concluding that only the latter qualified as an adverse employment action. *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999) (citing *Benningfield*, 157 F.3d at 376; *Harris*, 168 F.3d at 220).

Here, Plaintiff has failed to show any adverse employment action as to Teachers 2 and 3. While Teacher 1 and Teacher 4 likely suffered an adverse employment action through termination and written reprimand, respectively, those actions are not fairly traceable to any conduct by Defendants but rather was caused by the independent conduct of their actual employer, the local school board. All four teachers were contacted by their principal, directed to report to the Human Resources Department to discuss the posts, and finally referred by their school district to the TEA for disciplinary investigation. Because the Fifth Circuit has explicitly declined to consider an investigation an adverse employment action, plaintiffs have failed to state a claim. Plaintiffs' alleged injuries are not traceable to the Attorney General.

**2. Plaintiff's alleged injuries are not traceable to the Attorney General**

Plaintiff has not pled facts showing any of the alleged injuries are traceable to Defendants. To establish standing an injury must be fairly traceable to the defendant's conduct. *Nat'l Press Photographers Ass'n*, 90 F.4th at 781. "Traceability is particularly difficult to show where the proffered chain of causation turns on the government's speculative future decisions regarding whether and to what extent it will bring enforcement actions in hypothetical cases." *A & R Eng'g and Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412–14 (2013) "[W]here the plaintiff fails to allege such actual or threatened enforcement, the Supreme Court has instructed [courts] to reject the mere potential for enforcement as a 'highly attenuated,' 'speculative chain of possibilities' that cannot trace an injury to the government." *Id.* (quoting *Clapper*, 568 U.S. at 410). As discussed in the previous section Plaintiff has not alleged facts showing Defendants have taken or will eventually take any adverse action against its members. For this reason, Plaintiff lacks standing to bring any of its claims.

Plaintiff cannot show that any of its members have been subjected to adverse employment action by the Defendants. *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 297 (2022) (citing *Clapper*, 568 U.S. at 416) ("Their problem, however, was that they could not show that they had been or were likely to be subjected to that policy in any event."). Plaintiff's members "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical

future harm that is certainly not impending." *Clapper*, 568 U.S. at 416 (citing *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam)). For these reasons Plaintiff lacks standing to bring its claims in this case.

### 3. Plaintiff's claims against TEA are barred by sovereign immunity.

Plaintiff's claims are barred by sovereign immunity under the Eleventh Amendment to the United States Constitution. The Texas Education Agency is immune from suit under the Eleventh Amendment. *City of Austin v. Paxton*, 943 F.3d 993, 1003 (5th Cir. 2019).

"Generally, state sovereign immunity precludes suits against state officials in their official capacities." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (quoting *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020)). "The legal fiction of *Ex parte Young*, however, provides an 'exception to Eleventh Amendment sovereign immunity' in the subset of cases to which it applies." *Id.* (quoting *City of Austin*, 943 F.3d at 997). "The exception permits federal courts to enjoin prospective unconstitutional conduct by 'individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature.'" *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). "To be a proper defendant under *Ex parte Young*, a state official 'must have some connection with the enforcement of' the law being challenged." *Id.* (quoting *Ex parte Young*, 209 U.S. at 157). To have a sufficient connection to enforcement, the state official must have (1) a "particular duty to enforce the statute in question;" (2) "demonstrated willingness to exercise that duty;" and (3) taken some action which "compel[s] or constrain[s persons] to obey the challenged law." *Id.* (quoting *Texas All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)). Here, none of the prongs are met.

The *Ex parte Young* exception to sovereign immunity only applies to individuals working for the state. The Texas Education Agency is not an individual and is covered by the Eleventh Amendment and not within any exception. It is immune from suit.

### 4. Younger Abstention

For the reasons stated above, the Court should dismiss Plaintiff's claims in their entirety. It is too early in the process for any actual harm to have occurred, and if harm eventually occurs, it will not be the doing of these two Defendants.

Nonetheless, if the court believes that opening investigations alone is sufficient harm, then that harm is also sufficient to find that a state judicial process has begun that is entitled to be allowed to continue without collateral actions from a federal court.

The *Younger* abstention doctrine is animated by two principles: "equity and comity." *Daves v. Dallas Cnty.*, 22 F.4th 522, 547 (5th Cir. 2022) (citing *Younger v. Harris,* 401 U.S. 37, 43–44, 53–54 (1971)). It precludes federal courts from interfering with ongoing, parallel state proceedings where there is an ongoing state court proceeding that implicates important state interests, and plaintiffs have an adequate opportunity to raise their federal challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)

Each of these preconditions are present here. The Texas Education Agency investigations are ongoing. *See, e.g.*, *Zadeh v. Robinson*, 928 F.3d 457, 462, 472–73 (5th Cir. 2019) (finding *Younger* abstention appropriate because of the Texas Medical Board's ongoing investigation). The State's interest in establishing and maintaining its public school system is "of 'paramount importance'", "constitutional magnitude," Tex. Const. Ann. art. VII, Sec. 1 (1995), and "involves the exercise of the state's police power." *Texas State Teachers Ass'n v. State*, 711 S.W.2d 421, 425 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (quoting *Ferrell v. Dallas Indep. Sch. Dist.*, 392 F.2d 697, 703 (5th Cir. 1968)). And any affected teacher has an adequate opportunity to raise their First Amendment arguments within the state process. *See, e.g.*, *Powell*, 318 S.W.3d at 892.

Ongoing state judicial proceedings include certain civil and administrative proceedings that are judicial in nature. *Texas Ass'n of Business v. Earle,* 388 F.3d 515, 520 (5th Cir. 2004) (citing *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc*, 477 U.S. 619 (1986), and *Middlesex County Ethics Comm.*, 457 U.S. 423). In *Middlesex*, the Supreme Court explained that for *Younger* abstention, the "'pertinent inquiry is whether the state proceedings afford an adequate opportunity

to raise the constitutional claims.'" *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432 (quoting *Moore v. Sims*, 442 U.S. 415, 430 (1979)). The Supreme Court then found that the petitioner "had an 'opportunity to raise and have timely decided by a competent state tribunal the federal issues involved'" because the state supreme court entertained the constitutional issues raised by the petitioner. *Id.* at 436–37 (quoting *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)); *accord Zadeh*, 928 F.3d at 472 n.1 (noting that the constitutional issues must be preserved for appeal to the state court) (citing *Ohio Civil Rights Comm'n*, 477 U.S. at 629).

The process that the TEA is required to follow when conducting a disciplinary investigation is similar to the bar disciplinary proceedings in *Middlesex* that were entitled to *Younger* abstention. TEA's disciplinary process is governed by detailed administrative rules and statutes that ensure due process and provide the petitioner an adequate opportunity to challenge the evidentiary basis of any disciplinary action and for petitioner to raise and have timely decided any legal defenses.

## Conclusion

For these reasons, the Court should grant Defendants' Motion to Dismiss and dismiss Plaintiff's claims in their entirety.

Date: February 9, 2026

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted.

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
keith.ingram@oag.texas.gov

BRIAN B. TUNG
Assistant Attorney General
Texas State Bar No. 24145179
brian.tung@oag.texas.gov

LAUREN E. SAEGER
Assistant Attorney General
Texas State Bar No. 24149365
lauren.saeger@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF              TEXAS
                                               Special Litigation Division
                                               P.O. Box 12548, Capitol Station
                                               Austin, Texas 78711-2548
                                               Tel.: (512) 463-2100

                                               COUNSEL FOR DEFENDANTS, TEXAS
                                               EDUCATION AGENCY AND MIKE MORATH

### CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on February 9, 2026, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

Alexander M. Wolf                          Manuel Alfonso Quinto-Pozos
Texas Bar No. 24095027                     Texas Bar No. 4070459
Allison Standish Miller                    Deats, Durst & Owen PLLC
Texas Bar No. 24046440                     2901 Bee Caves Rd., Suite L
Steptoe LLP                                Austin, TX 78746
717 Texas Avenue, Suite 2800               Telephone: (512) 474-6200
Houston, TX 77002                          Facsimile: (512) 474-7896
Telephone: (713) 221-2309                  mqp@ddollaw.com
Facsimile: (713) 221-2320
awolf@steptoe.com                          COUNSEL FOR PLAINTIFF, TAFT
amiller@steptoe.com


                                           */s/ Keith Ingram*
                                           BRIAN KEITH INGRAM
                                           Special Counsel