# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| TEXAS AMERICAN FEDERATION OF TEACHERS<br><br>    *Plaintiff,*<br><br>v.<br><br>TEXAS EDUCATION AGENCY and<br>MIKE MORATH,<br><br>    *Defendants.* | CASE NO. 1:26-CV-00024-ADA |

## DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... III

INTRODUCTION AND BACKGROUND ......................................................................................... 1

I.   Plaintiff Lacks Standing to Bring Its Claims. ................................................................... 2

    A.  Plaintiff's Members Have Not Been Injured by Defendants ............................................. 2

    B.  Plaintiff's Alleged Injuries Are Not Traceable to Defendants .......................................... 3

II.  Sovereign Immunity Bars Plaintiff's Claims and *Ex parte Young* Does Not Apply. ................. 3

III. The *Younger* Abstention Doctrine Precludes the Court from Exercising Jurisdiction and Issuing a Preliminary Injunction. .............................................................................................. 4

IV.  Plaintiff Is Unlikely to Succeed on the Merits of its Claims. .............................................. 5

    A. The TEA Letter Does Not Announce an Unconstitutional Policy as Applied to Plaintiff's Members. .................................................................................................. 5

        1.  None of Plaintiff's Members Have Suffered Adverse Employment Actions by Defendants. ................................................................................................... 6

        2.  *Pickering* Balancing Does Not Favor Plaintiff's Members' Interests............................ 7

            a.  The TEA Is Not Plaintiff's Members' Employer. ................................................. 8

            b.  Even if the TEA Were Plaintiff's Members' Employer, Plaintiff's Members' Interests Would Still Fail Under *Pickering*. ......................................... 8

    B.      The TEA Letter Does Not Amount to a Facially Unconstitutional Policy. .......... 11

        1.  Plaintiff's Overbreadth Challenge Fails because *Pickering* Balancing Does Not Favor Plaintiff's Members' Interests.......................................................... 11

        2.  The TEA Policy Is Not Impermissibly Vague. ..................................................... 12

V.  The Remaining Preliminary Injunction Factors Weigh Against Preliminary Relief ............... 14

CONCLUSION ..................................................................................................................... 15

CERTIFICATE OF SERVICE ..................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*A & R Eng'g and Testing, Inc. v. Scott,*
   72 F.4th 685 (5th Cir. 2023) ................................................................. 3

*AbbVie, Inc. v. Fitch,*
   152 F.4th 635 (5th Cir. 2025) ................................................................. 2

*Breaux v. City of Garland,*
   205 F.3d 150 (5th Cir. 2000) ................................................................. 6

*City of Austin v. Paxton,*
   943 F.3d 993 (5th Cir. 2019) ................................................................. 4

*Colson v. Grohman,*
   174 F.3d 498 (5th Cir. 1999) ................................................................. 7

*Crook v. Creston Cmty. School Dist.,*
   No. 4:25-cv-00373 (S.D. Iowa Oct. 20, 2025) ................................................ 10

*Daves v. Dallas Cnty.,*
   22 F.4th 522 (5th Cir. 2022) ................................................................. 4

*Garcetti v. Ceballos,*
   547 U.S. 410 (2006) ................................................................. 8

*Harris v. Victoria Indep. Sch. Dist.,*
   168 F.3d 216 (5th Cir. 1999) ................................................................. 6, 9

*Hersh v. U.S. ex rel. Mukasey,*
   553 F.3d 743 (5th Cir. 2008) ................................................................. 12

*Hook v. Rave,*
   No. 4:25-CV-04188, 2025 WL 2720978 (D.S.D. Sep. 24, 2025) ................................................ 10

*Kinney v. Weaver,*
   367 F.3d 337 (5th Cir. 2004) ................................................................. 8

*Kirkland v. Northside Indep. Sch. Dist.,*
   890 F.2d 794 (5th Cir. 1989) ................................................................. 8, 9

*La Union Del Pueblo Entero v. Abbott,*
   151 F.4th 273 (5th Cir. 2025) ................................................................. 3

*LIA Network v. City of Kerrville,*
   163 F.4th 147 (5th Cir. 2025) ................................................................. 5

*Lowery v. Mills,*
   157 F.4th 729 (5th Cir. 2025) ................................................................. 5, 12

*Maryland v. King,*
   567 U.S. 1301 (2012) ................................................................. 15

*McClelland v. Katy Indep. Sch. Dist.,*
   63 F.4th 996 (5th Cir. 2023) ................................................................. 13

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
   457 U.S. 423 (1982) ................................................................. 4

*Mock v. Garland*,
   75 F.4th 563 (5th Cir. 2023) ...................................................................... 2, 15

*Nat'l Press Photographers Ass'n v. McCraw*,
   90 F.4th 770 (5th Cir. 2024) ......................................................................... 3

*Nixon v. City of Houston*,
   511 F.3d 494 (5th Cir. 2007) ......................................................................... 9

*PCI Transp., Inc. v. Fort Worth & W. R. Co.*,
   418 F.3d 535 (5th Cir. 2005) ......................................................................... 2

*Pierce v. Texas Dept. of Crim. J., Institutional Div.*,
   37 F.3d 1146 (5th Cir. 1994)...................................................................... 6, 7

*Rankin v. McPherson*,
   483 U.S. 378 (1987) ..................................................................................... 8, 9

*Serafine v. Branaman*,
   810 F.3d 354 (5th Cir. 2016) ....................................................................... 12

*U.S. v. Nat'l. Treas. Employees Union*,
   513 U.S. 454 (1995)....................................................................................... 5

*Valentine v. Collier*,
   956 F.3d 797 (5th Cir. 2020) ....................................................................... 15

*Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982)..................................................................................... 13

*Waters v. Churchill*,
   511 U.S. 661 (1994) ...................................................................................... 9

*Younger v. Harris*,
   401 U.S. 37 (1971) ........................................................................................ 2

## Constitutional Provisions & Statutes

Tex. Educ. Code Sec. 22A.054(c) .................................................................. 15

## Other Authorities

*Required Reporting of Educator Misconduct*, TEXAS EDUCATION AGENCY,
   https://tea.texas.gov/texas-educators/investigations/educators-duty-to-protect-
   students (last visited Feb. 4, 2026) ............................................................. 14

## INTRODUCTION AND BACKGROUND

On September 10, 2025, Charlie Kirk was murdered as he engaged in discourse on a college campus. As he was a public figure in a time when passions are high, the public reacted in public to his assassination. Some participants in the resulting public dialogue happened to be teachers. The Texas Commissioner of Education, Mike Morath, sent a letter to school superintendents—not teachers, not principals—reminding superintendents that public school educators are held to a higher ethical standard—the Educators' Code of Ethics. *See* Ex. 1. He also told them that if the superintendents discover that any teachers may have been over the ethical line in their discourse, that the superintendents should refer those teachers to the Texas Education Agency's ("TEA") investigative division through the Misconduct Reporting Portal.

It is important in these overheated times to step back and think for a moment about what exactly Mr. Morath said and to whom he said it. All he asked for is referrals for investigation of anything the superintendents believed was not within the boundaries of the Educators' Code of Ethics for a public-school teacher of Texas' children to publish to the world.

There was no new policy enunciated. Just a reminder of the existing policy and the place to refer complaints.

Separate and apart from any letter by Mr. Morath, school districts who are the actual employers of teachers, had their own reactions to their teachers' responses to the Charlie Kirk murder. Mr. Morath and TEA had nothing to do with these reactions including any school district terminations or public reprimands. The only thing Mr. Morath's letter encouraged was referrals for investigation.

For the reasons stated herein and in Defendants' Motion to Dismiss, Plaintiff is not entitled to a preliminary injunction. Defendants have not taken any actions that would constitute harm to any of Plaintiff's members. Investigations are not harm. Thus, Plaintiff doesn't have standing to bring any claims. In addition, sovereign immunity bars any claims against the TEA. Finally, if the court finds that investigations are sufficient harm to confer standing, then the court should abstain

from a collateral attack on the adequate state judicial processes under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 43–44, 53–54 (1971).

STANDARD OF REVIEW

"[A] preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *AbbVie, Inc. v. Fitch*, 152 F.4th 635, 642 (5th Cir. 2025) (quoting *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023)) (substitution in *Anibowei*). To obtain a preliminary injunction, it is the movant's burden to establish "'(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.'" *Id.* (quoting *Jones v. Texas Dep't of Crim. Just.*, 880 F.3d 756, 759 (5th Cir. 2018)). "The government's and the public's interests merge when the government is a party." *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). A preliminary injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (internal quotations omitted).

ARGUMENT

In this case, plaintiff has no standing, cannot overcome sovereign immunity and even if standing is found, the court should abstain from collaterally attacking the fully adequate state judicial processes. In addition, Plaintiff are not likely to prevail on the merits because these Defendants are not employers of Plaintiff's members and have not taken any adverse employment action against any of Plaintiff's members.

## I.    Plaintiff Lacks Standing to Bring Its Claims.

### A.    Plaintiff's Members Have Not Been Injured by Defendants.

Plaintiff lacks standing because none of its members have suffered an Article III injury because of anything Defendants have done. As shown in Defendants' Motion to Dismiss, Plaintiff has not pled facts showing a credible threat of adverse employment action by Defendants exists.

Indeed, Defendants are not the employers of Plaintiff's members and have only communicated existing policy and existing reporting channels for investigation. Second, Plaintiff has not pled an injury in fact traceable to the conduct of Defendants. Article III standing requires the plaintiff to plead an injury in fact that is traceable to the conduct of the defendant and redressable by the court. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 781 (5th Cir. 2024). "[P]laintiffs must establish standing for each and every provision they challenge." *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 285 (5th Cir. 2025) (quoting *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019)).

For the reasons stated in Defendants' Motion to Dismiss, Plaintiff has failed to show any adverse employment action taken by Defendants. Because the Fifth Circuit has explicitly declined to consider an investigation an adverse employment action, Plaintiff has failed to state a claim.

### B.    Plaintiff's Alleged Injuries Are Not Traceable to Defendants.

In addition, any alleged injuries Plaintiff has alleged are not caused by and not traceable to Defendants. To establish standing, an injury must be fairly traceable to the defendant's conduct. *Nat'l Press Photographers Ass'n*, 90 F.4th at 781. "Traceability is particularly difficult to show where the proffered chain of causation turns on the government's speculative future decisions regarding whether and to what extent it will bring enforcement actions in hypothetical cases." *A & R Eng'g and Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412–14 (2013)). "[W]here the plaintiff fails to allege such actual or threatened enforcement, the Supreme Court has instructed [courts] to reject the mere potential for enforcement as a 'highly attenuated,' 'speculative chain of possibilities' that cannot trace an injury to the government." *Id.* (quoting *Clapper*, 568 U.S. at 410).

As discussed in their Motion to Dismiss, Plaintiff has not alleged facts showing Defendants have taken or will take any adverse employment action against its members. For this reason, Plaintiffs lack standing to bring any of their claims.

### II.    Sovereign Immunity Bars Plaintiff's Claims and *Ex parte Young* Does Not Apply.

Plaintiff's claims against TEA are barred by sovereign immunity under the Eleventh Amendment to the United States Constitution. The Texas Education Agency is immune from suit

under the Eleventh Amendment to the United States Constitution. *City of Austin v. Paxton*, 943 F.3d 993, 1003 (5th Cir. 2019).

As shown in Defendants Motion to Dismiss, the *Ex parte Young* exception to sovereign immunity only applies to individuals working for the state. The Texas Education Agency is not an individual and is covered by the Eleventh Amendment and not within any exception. It is immune from suit.

### III. The *Younger* Abstention Doctrine Precludes the Court from Exercising Jurisdiction and Issuing a Preliminary Injunction.

For the reasons stated above, the Court should deny Plaintiff's Motion for Preliminary Injunction. It is too early in the process for any actual harm to have occurred, and if harm eventually occurs, it will not be the doing of these two Defendants.

Nonetheless, if the court believes that opening investigations alone is sufficient harm, then that harm is also sufficient to find that a state judicial process has begun that is entitled to be allowed to continue without collateral actions from a federal court.

The *Younger* abstention doctrine is animated by two principles: "equity and comity." *Daves v. Dallas Cnty.*, 22 F.4th 522, 547 (5th Cir. 2022) (citing *Younger*, 401 U.S. at 43–44, 53–54). It precludes federal courts from interfering with ongoing, parallel state proceedings where there is an ongoing state court proceeding that implicates important state interests, and plaintiffs have an adequate opportunity to raise their federal challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

As shown in Defendants' Motion to Dismiss, each of these preconditions are present here. The process that the TEA is required to follow when conducting a disciplinary investigation is similar to the bar disciplinary proceedings in *Middlesex County Ethics Comm.*, that were entitled to *Younger* abstention. *Id.* TEA's disciplinary process is governed by detailed administrative rules and statutes that ensure due process and provide the petitioner an adequate opportunity to challenge the evidentiary basis of any disciplinary action and for petitioner to raise and have timely decided any legal defenses.

## IV.    Plaintiff Is Unlikely to Succeed on the Merits of its Claims.

Mr. Morath's letter to school district superintendents does not announce an unconstitutional policy either as applied to Plaintiff's members or on its face. In a First Amendment case, the plaintiff bears the burden to "demonstrate[ ] that the government is infringing her speech." *LIA Network v. City of Kerrville*, 163 F.4th 147, 161 (5th Cir. 2025) Here, Plaintiff has not carried this burden. Specifically, Plaintiff has not shown likelihood of success on the merits of its as-applied challenge because none of its members have suffered an adverse employment action because of Defendants. Likewise, Plaintiff has not shown likelihood of success on the merits of its facial challenge because the challenged policy is not unconstitutional in a substantial number of its applications. What Plaintiff refers to as "the Policy" is nothing new, but rather a letter serving as a reminder of existing policies and procedures. The existing Educators' Code of Ethics has been in place since 1988, and the Misconduct Reporting Portal has existed since 2020. These have never been challenged as impairing any teacher's right to free speech or chilling their speech in any way. Because Plaintiff has not shown a likelihood of success on the merits of its claims, this Court should deny Plaintiff's Motion for Preliminary Injunction.

### A.    The TEA Letter Does Not Announce an Unconstitutional Policy as Applied to Plaintiff's Members.[1]

Plaintiff is unlikely to succeed on the merits of its First Amendment retaliation claim because it has failed to show any adverse employment actions suffered by its members at the hands of Defendants. First, Plaintiff has alleged no adverse employment actions attributable to Defendants. It is undisputed that these Defendants are not the employers of any of Plaintiff's member teachers. Even so, Defendants' interest in overseeing the stability of Texas's educational institutions by ensuring that teachers comply with the Educators' Code of Ethics outweighs the

---

[1] The Court should address Plaintiff's as-applied challenge before it's facial challenge because the as-applied challenge provides narrower grounds for relief. *See U.S. v. Nat'l Treas. Employees Union*, 513 U.S. 454, 477–78 (1995) ("although the occasional case requires us to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute, we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants.") (citations omitted); *see also Lowery v. Mills*, 157 F.4th 729 (5th Cir. 2025) ("Although litigants are permitted to raise both as-applied and overbreadth challenges in First Amendment cases, the lawfulness of the particular application of the law should ordinarily be decided first.").

interests of individual teachers here.  Therefore, Plaintiff is unlikely to succeed on the merits of its as-applied challenge and this Court should deny Plaintiff's Motion for Preliminary Injunction on this basis.

A plaintiff must plead four elements to assert a retaliation claim cognizable under the First Amendment: (1) the plaintiff has suffered an adverse employment action; (2) the plaintiff was speaking as a citizen on a matter of public concern; (3) the plaintiff's interests in free speech on matters of public concern outweighs the defendant's interests in efficiently managing a public function; and (4) the defendant's action was motivated by the plaintiff's speech. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999).  Here, Defendants agree the assassination of Charlie Kirk is a matter of public concern and that the teachers were referred for investigation because of the speech at issue, but without an adverse employment action, and because Plaintiff has failed to show how *Pickering* balancing weighs in its favor against these Defendants, Plaintiff has not shown a likelihood of success on the merits.

1. **None of Plaintiff's Members Have Suffered Adverse Employment Actions by Defendants.**

As shown in Defendants' Motion to Dismiss, Plaintiff has not pled facts showing any of its members has suffered an adverse employment action by Defendants.  Defendants are not the employer of any of Plaintiff's members, and all Defendants have done here is communicate to superintendents existing policy and existing channels for reporting educator misconduct.

The Fifth Circuit has consistently taken a narrow view of what constitutes an adverse employment action. *Pierce v. Texas Dept. of Crim. J., Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994).  "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Id.*  And the Fifth Circuit has declined to broaden its view, advising that even when some actions may have "the effect of chilling protected speech," they are not necessarily actionable. *Id.* at 1150.

The Fifth Circuit has further defined what is *not* an adverse employment action. *Breaux v. City of Garland*, 205 F.3d 150, 157–58 (5th Cir. 2000).  Pertinently here, the Fifth Circuit has

explicitly excluded investigations from the adverse employment action category.  *Id.* (citing *Pierce*, 37 F.3d at 1150).  The ultimate result determines whether an adverse employment action has occurred.  *See Pierce*, 37 F.3d at 1150 (the plaintiff was investigated two separate times for potential misconduct, but the Fifth Circuit found no adverse employment action because "[n]either investigation resulted in any action being taken against Pierce."); *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999) (distinguishing verbal reprimands from formal reprimands and concluding that only the latter is an adverse employment action).

Here, Plaintiff has failed to show an adverse employment action sufficient to support a First Amendment retaliation claim against Defendants.  In its Motion for Preliminary Injunction, Plaintiff merely alleges that certain adverse employment actions took place without providing any evidence that either of Defendants are culpable.  In fact, Plaintiff has failed to show any adverse employment action as to Teachers 2 and 3.  As discussed *supra*, although Teacher 1 and Teacher 4 may have suffered an adverse employment action through termination and written reprimand, respectively, those actions are not fairly traceable to any conduct by Defendants but rather were caused by the independent conduct of the respective local school boards.  Because the Fifth Circuit has explicitly declined to consider an investigation an adverse employment action, Plaintiff has not shown that any of its members has suffered an adverse employment action at the hands of Defendants.

## 2.    *Pickering* Balancing Does Not Favor Plaintiff's Members' Interests.

On balance, Plaintiff's members' interests do not prevail.  Courts must weigh the free speech interest of government employees against the efficiency interests of government employers to determine whether the alleged adverse employment action violates the First Amendment. Plaintiffs have sued the TEA and Mr. Morath rather than the individual government employers, and as discussed *supra* and in Defendants' Motion to Dismiss, Plaintiff has failed to state a claim against these Defendants for this reason.  In performing *Pickering* balancing, the proper analysis is between the individual school districts and the individual teachers.  And here, because Plaintiff has failed to sue the proper defendants, this Court cannot adequately perform a *Pickering* analysis.  In

any case, Plaintiff has failed to show how its members' interests prevail under any formulation of the test.

### a.    The TEA Is Not Plaintiff's Members' Employer.

The TEA does not stand in the place of the employer for the purposes of this analysis. Plaintiff points to *Kinney v. Weaver*, in which the Fifth Circuit applied *Pickering* balancing to an independent contractor and government employer relationship because "the relationship is sufficiently 'analogous to an employment relationship.'" 367 F.3d 337, 359 (5th Cir. 2004) (citing *Blackburn v. City of Marshall,* 42 F.3d 925, 932 (5th Cir. 1995)). Contrary to Plaintiff's claim, an oversight and disciplinary agency is not sufficiently analogous to an employer for *Pickering* purposes. The TEA is no more like an employer to teachers than the Texas Bar Association is an employer to attorneys.

### b.    Even if the TEA Were Plaintiff's Members' Employer, Plaintiff's Members' Interests Would Still Fail Under *Pickering*.

But even if *Pickering* applied between the TEA and the individual teachers, the scales would still tip in favor of the TEA. *Pickering* analysis calls on the court to find "'a balance between the interests of the [employee], as a citizen,[2] in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Rankin v. McPherson*, 483 U.S. 378, 384 (1987) (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968) and citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)). Courts should not scrutinize the speech at issue in a vacuum; rather, courts should consider the "manner, time, and place of the employee's expression, as well as the context in which the dispute arose." *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 799 (5th Cir. 1989) (citing *Rankin*, 483 U.S. at 388 and collecting cases). Among a court's considerations should be "whether the speech was

---

[2] Defendants do not dispute that the teachers were speaking as citizens on a matter of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (restating the *Pickering* test to include the first-step inquiry of whether the government employee was speaking as a citizen on a matter of public concern or as a government employee in the course of their official duties).

likely to generate controversy and disruption, impeded the school's general performance and operation, and affected working relationships necessary to the department's proper functioning." *Harris*, 168 F.3d at 223 (citing *Brawner v. Richardson,* 855 F.2d 187, 192 (5th Cir. 1988)).

The Fifth Circuit has held that "a teacher's free speech protection, even as to a matter of public concern, is not absolute." *Kirkland*, 890 F.2d at 799 (citing *Ferrara v. Mills*, 781 F.2d 1508, 1513 (11th Cir. 1986)). "Consequently, a public-school employer who retaliates against a teacher for engaging in protected speech does not *automatically* violate the Constitution." *Id.* (citing *Ferrara*, 781 F.2d at 1513). Public employers occupy a "dual role . . . as a provider of public services and as a government entity operating under the constraints of the First Amendment." *Rankin*, 483 U.S. at 384. Even though public employers cannot act in certain ways that would violate the First Amendment, they are still employers that are responsible for the efficient performance of a certain public function. *Id.* Thus, second-guessing every decision related to educator investigation made by a state education agency would burden that performance. *Id.*

This concern is especially evident in the education context. The Fifth Circuit has recognized that federal courts should be "extremely hesitant to 'invade and take over' in the area of education." *Harris*, 168 F.3d at 220–21 (citing *Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 124 (5th Cir. 1991)).

Part of the calculus is whether the employee's speech caused a disruption. The Fifth Circuit recognizes reasonable predictions of disruption as sufficient. *Nixon v. City of Houston*, 511 F.3d 494, 499 n.4 (5th Cir. 2007). "[A] government employer need not produce evidence of actual harm or disruption to governmental operations." *Id.* (quoting *Connick*, 461 U.S. at 152 ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.")). Courts have therefore given "substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern." *Waters v. Churchill*, 511 U.S. 661, 673 (1994).

Plaintiff cites two cases in which a federal court granted a temporary restraining order against a public education employer after notice of intent to fire an educator. ECF 12 at 8, 10, 14–16 (citing Order Granting in Part Plaintiff's Motion for Temporary Restraining Order at 9, *Crook v. Creston Cmty. School Dist.*, No. 4:25-cv-00373 (S.D. Iowa Oct. 20, 2025) ("*Crook* Order") and *Hook v. Rave*, No. 4:25-CV-04188, 2025 WL 2720978, at *5–6 (D.S.D. Sep. 24, 2025)). The main similarity between these two cases and the one before this Court is that all three cases involve educators who posted on social media about the assassination of Charlie Kirk. But that is where the similarities end. Both *Crook* and *Hook* involved an actual adverse employment action because in both cases, the educator was given notice of intent to terminate their employment. *Crook* Order at 3; *Hook*, No. 4:25-CV-04188, 2025 WL 2720978, at *2. Additionally, in both cases, the individual plaintiffs sued their employer instead of suing the state education agency. *Crook* Order at 1; *Hook*, No. 4:25-CV-04188, 2025 WL 2720978, at *1. *Crook* involved a high school teacher who sued her local school district and *Hook* involved a college professor who sued the relevant decisionmakers at the University of South Dakota. *Crook* Order at 1; *Hook*, No. 4:25-CV-04188, 2025 WL 2720978, at *1. Here, Plaintiff's members' have not suffered any adverse employment action at the hands of these Defendants, and as such, they have failed to sue the proper defendants. In short, *Crook* and *Hook* are hardly analogous to this case and should not inform this Court's decision.

Here, Plaintiff has failed to show that its members' interests prevail under *Pickering*. As Plaintiff's highlight, the TEA's Educator Investigations Department asserts an interest in "ensuring that Texas educators meet the highest standards of professionalism and ethical behavior." ECF 12 at 14 n.3 (quoting Texas Education Agency, Investigations, TEXAS EDUCATION AGENCY https://tea.texas.gov/texas-educators/investigations). Thus, as Plaintiff points out, the TEA indeed shares the relevant interest in "promoting the efficiency of public services" for *Pickering* purposes. ECF 12 at 14 n.3. Although this interest does not make the TEA the employer, this interest in regulating teacher professionalism and ethical behavior, which includes an interest in promoting a safe and efficient learning environment for schoolchildren and maintaining community trust, would outweigh Plaintiff's members' interests if compared against them.

This is especially true when the speech at issue involves openly celebrating someone's death. A teacher who shows support for political violence likely violates school ethics codes and demonstrates their unfitness to teach impressionable children. And when, as here, principals receive reports about a teacher's speech, a reasonable prediction of disruption is warranted. ECF 1 ¶¶ 36, 48. Because Plaintiff cannot show it is likely to succeed on the merits of its as-applied challenge, this Court should deny Plaintiff's Motion for Preliminary Injunction.

**B.      The TEA Letter Does Not Amount to a Facially Unconstitutional Policy.**

Plaintiff's facial challenge does not fare any better. To mount a facial challenge in the First Amendment context, a plaintiff must show that the policy at issue is overbroad, meaning that its impermissible applications outweigh its permissible ones. Here, the letter simply restates existing policy that teachers must comply with the Educators' Code of Ethics and if a superintendent believes a teacher is not in compliance to report them through the existing misconduct reporting portal. This guidance is not overbroad because it passes *Pickering* balancing in a majority of its applications. The Policy is not unconstitutionally vague because the Educators' Code of Ethics and Misconduct Reporting Portal have been in place for a long time and there is no allegation or showing that any teacher is confused about their application. As Plaintiff acknowledges, the TEA Educators' Code of Ethics appropriately restricts some speech, and Plaintiff bears the burden of showing a substantial number of the Policy's applications are unconstitutional. Plaintiff has failed to meet its burden. This Court should therefore deny Plaintiff's Motion for Preliminary Injunction on this basis.

**1.      Plaintiff's Overbreadth Challenge Fails because *Pickering* Balancing Does Not Favor Plaintiff's Members' Interests.**

The Policy is not unconstitutional on its face. Plaintiff asserts the Policy is overbroad because it "targets a wide swath of constitutionally protected speech that has no impact on school operations. . . ." ECF 12 at 12. But Plaintiff has not provided any evidence to support this claim. Plaintiff has not met its high burden to prove likelihood of success on its overbreadth claim, and this Court should deny its Motion for Preliminary Injunction.

"First Amendment facial challenges should be granted 'sparingly and only as a last resort.'" *Lowery*, 157 F.4th at 746 (quoting *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 762 (5th Cir. 2008)). A plaintiff must demonstrate "'a realistic danger that the [policy] itself will significantly compromise recognized First Amendment protections of parties not before the [c]ourt' before a statute will be struck down as facially overbroad." *Hersh*, 553 F.3d at 762 (quoting *Shackelford v. Shirley*, 948 F.2d 935, 940 (5th Cir. 1991)). The policy at issue may be invalidated as overbroad only if "'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Lowery*, 157 F.4th at 745–46 (quoting *United States v. Stevens*, 559 U.S. 460, 472–73 (2010)) (citations omitted); *Serafine v. Branaman*, 810 F.3d 354, 363 (5th Cir. 2016).

That would be true only if "applications of the code frequently failed *Pickering*." *Lowery*, 157 F.4th at 746. *Pickering*, as discussed *supra*, requires "a delicate balancing of the competing interests surrounding [an employee's] speech and its consequences," which considers "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Lowery*, 157 F.4th at 747 (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 528 (2022)) (citation modified).

Here, Plaintiff has not shown it is likely to succeed on its overbreadth claim. Specifically, Plaintiff failed to properly examine whether a substantial number of the Policy's applications fail *Pickering*. Plaintiff merely asserts that because the Policy is overbroad because it does not "ask superintendents to assess the impact of such posts on the school environment before requiring them to launch an investigation." ECF 12 at 11. However, because the Policy merely contemplates investigation, which is not an adverse employment action, superintendents need not assess the impact of such posts prior to reporting. The investigation itself will accomplish that assessment. In this way, the Policy is properly tailored to the government's interests and is not overbroad. Plaintiff has not shown otherwise.

### 2.    The TEA Policy Is Not Impermissibly Vague.

To the extent the TEA Policy recommends that superintendents take action, the Policy provides notice and explicit standards. Plaintiff argues that the Policy is so vague that it has caused

a chilling effect and has led to inconsistent enforcement. Plaintiff's claim fails for two reasons. First, the Policy clearly defines social media posts to which the Policy applies. Second, school district superintendents typically have some discretion in determining when to report teachers for ethics code violations and the Policy is no different than an alert that certain social media posts *could* constitute such a violation.

The void for vagueness standard is heightened in the education context. *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023), *cert. denied* 144 S. Ct. 348 (2023). The typical test is whether a law "(1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *Id.* (quoting *A.M ex rel. McAllum v. Cash*, 585 F.3d 214, 224–25 (5th Cir. 2009) (internal quotation marks omitted)). The standard is stricter in the education context because of "the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process." *Id.* (quoting *Fraser*, 478 U.S. at 676). Thus, in the education context, "[a] regulation is void for vagueness when it is so unclear that people 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* And although a law that "interferes with the right of free speech" is scrutinized more closely, *Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982), laws with "civil rather than criminal penalties" receive less scrutiny "because the consequences of imprecision are qualitatively less severe." *Id.* (citation omitted).

The TEA Policy is clear. First, the Policy in this case is no more than a reminder to superintendents of existing policies in light of current events. Again, the existing Educators' Code of Ethics has been in place since 1988, and the Misconduct Reporting Portal has existed since 2020. Consequently, the absence of vagueness challenges to these policies shows educators understand their meaning. And looking specifically to Mr. Morath's letter, Plaintiff argues that "the Policy's language mandating that superintendents report 'additional instances of inappropriate content' . . . is so vague and open to varying interpretations that it has inevitably caused inconsistent enforcement." ECF 12 at 13. Yet the letter clearly defines social media posts referencing Charlie

Kirk's assassination in a "reprehensible" manner that "*could* constitute a violation of the Educators' Code of Ethics." Ex. 1 (emphasis added).  People of common intelligence can ascertain the Policy's meaning.

The Policy also does not impose a mandatory duty on superintendents to do anything. Superintendents already have a mandatory duty to report certain categories of educator misconduct to the TEA under existing policies.  *See Required Reporting of Educator Misconduct*, TEXAS EDUCATION AGENCY, https://tea.texas.gov/texas-educators/investigations/educators-duty-to-protect-students (last visited Feb. 4, 2026) ("superintendents . . . are legally required to report certain types of educator misconduct to TEA . . . .").  This TEA letter, by contrast, does not mandate that superintendents do anything at all.  *See* Ex. 1.  Rather, the letter merely flags a recent trend that the TEA found concerning so that superintendents are advised of their options when faced with these situations.  *See id.*  Because the Policy imposes no duty, claims of vagueness are irrelevant.

Plaintiff has failed to show a likelihood of success on its vagueness claim, and this Court should deny Plaintiff's Motion for Preliminary Injunction.

## V.  The Remaining Preliminary Injunction Factors Weigh Against Preliminary Relief.

The Plaintiff has also not "clearly carried the burden of persuasion" on the remaining preliminary injunction factors.

First, Plaintiff has failed to show a "substantial threat of irreparable injury if the injunction is not issued" because Plaintiff has failed to clearly show that Defendants have violated the First Amendment rights of its members.  Nor has the Plaintiff shown an adverse employment action sufficient to support its public employment First Amendment retaliation claim.

Second, Plaintiff has not shown that "the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted."  Not one of Plaintiff's members has received a sanction from the SBEC or has been placed on the Do Not Hire Registry because of

14

any comments made in relation to the Charlie Kirk shooting.[3]  After concluding its investigation, the TEA may decide that a petition for sanctions is not warranted.  Furthermore, parties under investigation have substantial due process rights before any formal admonishment is issued by the SBEC and may seek judicial review.  *See* Def's Motion to Dismiss at 3–5 (describing the due process rights of individuals under investigation).

On the other hand, the public and the TEA will be irreparably harmed if an injunction is granted.  *See Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) ("The government's and the public's interests merge when the government is a party.").  "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (internal quotes omitted and substitution in *King*).  And if a statute by the "Texas Legislature assigned . . . prerogatives" to a government agency, an injunction that prohibits the agency from exercising its prerogatives "prevents the State from effectuating the Legislature's choice and hence imposes irreparable injury."  *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020).  In the present case, the TEA is trying to fulfil its lawful duties to investigate allegedly improper conduct, and if warranted, refer the action to the State Office of Administrative Hearings.  *See also* Def's Motion to Dismiss at 3-5 (describing the TEA's procedures).  An injunction that prohibits the TEA from fulfilling its duties will irreparably harm the public and the state.

## Conclusion

For the foregoing reasons, this Court should deny Plaintiff's Motion for Preliminary Injunction.

---

[3] To the best of our knowledge, only one individual has an investigative warning on his or her certificate.  In accordance with Tex. Educ. Code Sec. 22A.054(c), this individual is also listed as "Under Investigation" on the Do Not Hire Registry.

Date: February 9, 2026

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
keith.ingram@oag.texas.gov

BRIAN B. TUNG
Assistant Attorney General
Texas State Bar No. 24145179
brian.tung@oag.texas.gov

LAUREN E. SAEGER
Assistant Attorney General
Texas State Bar No. 24149365
lauren.saeger@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF
TEXAS

Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100

COUNSEL FOR DEFENDANTS, TEXAS
EDUCATION AGENCY AND MIKE MORATH

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on February 9, 2026, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

Alexander M. Wolf
Texas Bar No. 24095027
Allison Standish Miller
Texas Bar No. 24046440
Steptoe LLP

717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2309
Facsimile: (713) 221-2320
awolf@steptoe.com

amiller@steptoe.com

Manuel Alfonso Quinto-Pozos
Texas Bar No. 4070459
Deats, Durst & Owen PLLC
2901 Bee Caves Rd., Suite L

Austin, TX 78746
Telephone: (512) 474-6200
Facsimile: (512) 474-7896
mqp@ddollaw.com

COUNSEL FOR PLAINTIFF, TAFT

/s/ Keith Ingram
BRIAN KEITH INGRAM
Special Counsel