**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **TEXAS AMERICAN FEDERATION OF TEACHERS,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**TEXAS EDUCATION AGENCY and MIKE MORATH, in his official capacity as Commissioner of the Texas Education Agency,**<br><br>        **Defendants.** | CIVIL ACTION NO. 1:26-cv-00024-ADA |

**PLAINTIFF'S CORRECTED REPLY IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Karima Maloney
Texas Bar No. 24041383
Allison Standish Miller
Texas Bar No. 24046440
Alexander M. Wolf
Texas Bar No. 24095027
STEPTOE LLP
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2300
Fax: (713) 221-2320
kmaloney@steptoe.com
amiller@steptoe.com
awolf@steptoe.com

Ida Adibi (*admitted pro hac vice*)
Kylie Clouse (*admitted pro hac vice*)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
iadibi@steptoe.com
kclouse@steptoe.com

Manuel Quinto-Pozos
Texas Bar No. 24070459
DEATS DURST & OWEN PLLC
2901 Bee Caves Road, Suite L
Austin, TX 78746
Telephone: (512) 474-6200
Fax: (512) 474-7896
mqp@ddollaw.com

*Counsel for Plaintiff Texas American Federation of Teachers*

**ARGUMENT AND AUTHORITIES**

I.        **Plaintiff Has Standing.**

    A.        **Plaintiff's Members Have Suffered Injuries in Fact.**

Plaintiff's members have suffered injuries in fact, both from the TEA Policy's chilling effect on their speech and from adverse actions taken in response to the TEA Policy. Defendants' pleadings wholly ignore Plaintiff's allegations that the TEA Policy's chilling effect injured Plaintiff's members. However, the Fifth Circuit has consistently held that "a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006); *see also Justice v. Hosemann*, 771 F.3d 285, 294 (5th Cir. 2014) ("Standing rules are relaxed for First Amendment cases so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief.") (citation modified).

In addition, "[a]n adverse employment action, or the threat thereof, constitutes an injury-in-fact" for standing purposes. *Crane v. Napolitano*, 920 F. Supp. 2d 724, 740 (N.D. Tex. 2013) (citing *U.S. v. City of Miami,* 664 F.2d 435, 446 (5th Cir.1981) (en banc) (per curiam)). The TEA Policy has been both threatened and enforced against Plaintiff's members, chilling their private speech, threatening the loss of their teaching certifications, and setting in motion adverse actions taken against them—including formal reprimands, terminations, investigation flags on their certifications, and placement on TEA's Do Not Hire registry, which prevent them from finding other employment—for engaging in protected speech. These injuries satisfy Article III's standing requirements. *See id*.

    B.        **Plaintiff's Injury is Traceable to the Defendants' Actions.**

The standing requirement is a "low causation bar"; indeed, "uncertain" or "indirect causal relationship will suffice for standing, and plaintiffs may satisfy the requirement by alleging a chain of causation between defendants' conduct and plaintiffs' injuries." *Est. of Parker v. Miss. Dep't of*

*Pub. Safety*, 140 F.4th 226, 236-37 (5th Cir. 2025) (citation modified). "Standing exists where the purported injury is connected to allegedly unlawful government conduct. The defendant's conduct does not need to be the very last step in the chain of causation." *Reule v. Jackson,* 114 F.4th 360, 367 (5th Cir. 2024) (citation modified). Rather, it "is often enough that the defendant's conduct was one of multiple contributing causes," and "the fact that the defendant is only one of several persons who cause the harm does not preclude a finding of causation sufficient to support standing." *Est. of Parker*, 140 F.4th at 236-37 (citations omitted). Importantly, the causal requirement "does not exclude injury produced by [defendant's] determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997).

Here, the injuries suffered by Plaintiff's members are plainly traceable to Defendants' challenged actions. Among other things, the Policy directly caused the chilling effect on Plaintiff's members' speech and led to at least one member's placement on TEA's Do Not Hire Registry.[1] The adverse actions taken against Plaintiff's members by their school districts were likewise consequences of the TEA Policy. The TEA Policy mandates that school districts across Texas report teachers who post about Mr. Kirk's death in a manner that Morath subjectively identifies as "reprehensible" and "inappropriate"; it also encourages districts to take actions against teachers who make such posts. That the school districts, rather than TEA, imposed disciplinary measures on teachers is immaterial, since such actions occurred because of the TEA Policy and would not have otherwise occurred. *See, e.g.*, *Reule,* 114 F.4th at 367. Accordingly, the fact that school districts carried out adverse actions against Plaintiff's members does not deprive Plaintiff of

---

[1] TEA describes the registry established by Texas Education Code as "list[ing] all individuals who have been determined to be ineligible for employment in a Texas school district . . . includ[ing] non-certified employees who were determined by the Commissioner to be ineligible, individuals with criminal history referenced in TEC §22,092, and individuals whose teaching certificate was revoked by the State Board for Educator Certification (SBEC) for abuse or inappropriate relationship with a student or minor." *See* TEA, Do Not Hire Registry, *https://tea.texas.gov/texas-educators/investigations/do-not-hire-registry* (last visited Feb. 17, 2026) (Frequently Asked Questions No. 1).

standing to sue here, as those actions were caused by the Policy's edict to report educators and its pressure to discipline educators who posted in a manner Defendants disfavor. Teacher 4, for instance, received a written reprimand from her school district that explicitly referenced the Policy.

Superintendents who do not act against employees in accordance with the Policy could jeopardize their certifications for failure to report.[2] As reported by the press, this was echoed in one school district's legal counsel's letter to Mr. Morath stating that the district did not find the posts by its teachers to rise to the level of misconduct, let alone misconduct requiring reporting, but that it nevertheless reported the teachers because it was obligated to comply with the TEA Policy.[3]

### C. The Requested Relief Would Redress the Injury.

Enjoining Defendants from enforcing the Policy along with the other requested relief would diminish the Policy's chilling effect such that teachers can once again feel free to engage in protected speech without fear of retaliation. Such an injunction would also relieve school districts of any obligation to act on alleged violations of the Policy, thereby preventing adverse employment actions against Plaintiff's members.

## II. Plaintiff is Likely to Succeed on the Merits of Its Claims.

### A. The TEA Policy Is Facially Unconstitutional.[4]

1. The TEA Policy Is Void for Vagueness.

Defendants claim the Policy "is clear" because it "simply restates existing policy that teachers must comply with the Educators' Code of Ethics and if a superintendent believes a teacher

---

[2] TEA, Educator Misconduct & Investigations, https://tea.texas.gov/texas-educators/investigations/educator-misconduct-investigations (last visited Feb. 17, 2026) ("SBEC may also take disciplinary action against a principal or superintendent who fails to report."); Tex. Educ. Code § 22A.051(k).

[3] Kelly Wiley & Christopher Adams, *'Purge them from out classrooms': Behind the push to oust Texas teachers who commented on Charlie Kirk*, KXAN (Feb. 6, 2026), https://www.kxan.com/investigations/behind-the-push-to-oust-texas-teachers-who-commented-on-charlie-kirk/ (last visited Feb. 17, 2026); Tex. Educ. Code § 22A.051(k).

[4] Defendants ask the Court to address Plaintiff's as-applied challenge before its facial challenge because the as-applied challenge provides a narrower remedy, citing to *U.S. v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 477–78 (1995). However, in *Nat'l Treasury Emps. Union*, the Court stated that granting the as-applied remedy "will fully protect the

3

is not in compliance to report them through the existing misconduct reporting portal." ECF No. 18 at 11, 13.

But the TEA Policy is *not* framed as a general reminder to follow the Educators' Code of Ethics, nor does the Code of Ethics contain any constraints on teachers' speech such as those reflected in the language of the Policy. Rather, the Policy creates a *new* requirement for reporting "reprehensible" and "vile" social media posts specifically concerning the assassination of Charlie Kirk and directs superintendents to take action against teachers who posted content vaguely deemed as "inappropriate content." ECF No. 12-1.

While the Policy fails to define any of these terms, Defendants maintain it is not vague because it "clearly defines social media posts referencing Charlie Kirk's assassination in a 'reprehensible' manner." ECF No. 18 at 13-14. But "reprehensible" is not an objective or clear criteria. Nor has it been applied in the past to teachers' posts about other matters of public concern. Given the politically charged nature of the subject matter at hand, what is reprehensible to Defendants may not be reprehensible to superintendents or educators interpreting the Policy. Moreover, this mandate deviates from the misconduct that superintendents are required to report to the TEA for investigation: physical abuse, threats of violence, romantic relationships, or inappropriate boundary violations—all involving students or minors. *See* Tex. Educ. Code §§ 22A.051, 22A.052 (West 2025).

Defendants then allege that Plaintiff's "claims of vagueness are irrelevant" because the Policy "does not impose a mandatory duty on superintendents to do anything" outside of their "mandatory duty to report certain categories of educator is conduct to the TEA under existing policies." ECF No. 18 at 14. This too is false. "Inappropriate" posts about Kirk do not fall within

---

litigants." 513 U.S. at 478 (citation omitted). That is not the case here. Plaintiff's members will continue to be injured by the TEA Policy if it is not enjoined in its entirety.

the mandatory reporting requirements listed above, and superintendents are not afforded discretion in determining whether a teacher should be reported.

### 2. The TEA Policy Is Overbroad.

Defendants assert that the Policy is not overly broad because "it merely contemplates investigation, which is not an adverse employment action." ECF No. 18 at 12. But this ignores the extensive chilling of educators' private speech regarding Charlie Kirk and related matters. The Supreme Court has made clear, "overbroad laws may deter or chill constitutionally protected speech, and if would-be speakers remain silent, society will lose their contributions to the marketplace of ideas." *U.S. v. Hansen,* 599 U.S. 762, 769–70 (2023) (citation modified). Moreover, Defendants ignore that the Policy's call to target and report educators for "inappropriate" posts set off a chain of events leading to a "substantial number of its applications" that violated educators' constitutional rights. *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citation omitted) (striking down a federal statute criminalizing depictions of animal cruelty as overbroad in violation of the First Amendment). As a result of superintendents enforcing the TEA Policy, Plaintiff's members have been subjected to adverse actions at both the TEA and district level in the form of terminations, written reprimands, and placement on the Do Not Hire Registry—all without regard to whether the members' posts caused any disruptions to the classroom as required under *Pickering v. Bd. of Educ. of Twp. High School Dist. 205, Will Cnty., Ill.*, 391 U.S. 563 (1968). A non-infringing state policy regulating speech must account for educators' First Amendment rights. The TEA Policy does not, and is thus improperly overly broad.

### B. The TEA Policy Is Unconstitutional as Applied to Plaintiff's Members.

1. The *Pickering* Balancing Test Applies, but Plaintiff Also Prevails Under the Alternative "Ordinary Citizen" Test.

Defendants urge that the *Pickering* test is inapplicable to this case because the TEA is not the employer of Plaintiff's members. But the Fifth Circuit has held that the *Pickering* test applies

5

to cases in which the relationship between the defendant and the employee "implicates governmental interest similar to those involved in the public employment context." *Kinney v. Weaver*, 367 F.3d 337, 360 (5th Cir. 2004). Here, Defendants acknowledge they have an "interest in overseeing the stability of Texas's educational institutions"—a governmental interest akin to those at stake in the public employment context. ECF No. 18 at 5. *Pickering* applies. *See Kinney*, 367 F.3d at 360. Even if it does not, Plaintiff also satisfies the elements of the "ordinary citizen" test used to assess First Amendment retaliation claims in which the defendant does not stand in the place of the plaintiff's public employer. *See Cripps v. La. Dep't of Agric. & Forestry*, 819 F.3d 221, 229 (5th Cir. 2016); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

To prevail on a First Amendment retaliation claim, a party must establish that: (1) they were engaged in a constitutionally protected activity; (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Cripps*, 819 F.3d at 229 (citation omitted); *Keenan*, 290 F.3d at 258 (citations omitted). Plaintiff has satisfied these elements.

First, Defendants do not dispute Plaintiff's members were engaged in constitutionally protected activity in speaking out as private citizens on a matter of public concern. ECF No. 18 at 8. Second, the TEA Policy caused Plaintiff's members to suffer an injury that would chill a person of ordinary firmness from continuing to engage in political discourse. Being reported for misconduct to the TEA's Educator's Investigations Division, which places one's teaching certification at risk, indeed imposes such an injury. At least one teacher was improperly placed on the TEA's Do Not Hire list. ECF 12-2 ¶ 16. Teachers were terminated and reprimanded for their posts only after the TEA Policy required superintendents to act against supposedly "reprehensible" posts. These injuries have chilled people of ordinary firmness from continuing to engage in

protected speech; indeed, several affected teachers have stated that they no longer feel safe or comfortable expressing their political views on social media. *See* ECF No. 12-2 ¶ 18. Finally, Defendants do not contest that TEA's actions against educators were motivated by the educator's social media posts about Kirk. Also, the causal connection between the TEA Policy and the school districts' adverse actions is addressed above and further below.

> 2. Plaintiff's Members Have Suffered Adverse Employment Actions as a Result of the TEA Policy.

Defendants cannot evade their obligation under the First Amendment by relying on the fact that they do not employ Plaintiff's members. As the Fifth Circuit stated in *Kinney*:

> The Supreme Court has made it clear that First Amendment protection does not depend on whether the governmental action at issue is "direct" or "indirect." To hold that the Police Officials' conduct cannot constitute a First Amendment violation because they did not directly deprive [Plaintiffs] of their jobs, but instead used governmental power to exert economic pressure on the [Plaintiff's] employer in order to achieve that same result, "would allow the government to 'produce a result which [it] could not command directly.'"

367 F.3d at 357-58 (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). Mr. Morath used his oversight authority over Texas school districts to pressure Plaintiff's members' employers to target them for their protected speech. As a result of this pressure, school districts issued formal reprimands against teachers (e.g. Teacher 4 and Teacher 5) and terminated teachers (e.g. Teacher 1 and Teacher 6). *See* ECF No. 12 at 5. Many adverse actions were taken within a week of the TEA Policy's publication. At least one teacher's formal reprimand specifically referenced the TEA Policy. Whether accomplished through "direct" or "indirect" actions, Mr. Morath used his agency's "governmental power" to "achieve the same result" that he "could not command directly." *See Kinney*, 367 F.3d at 357-58.

Moreover, "refusals to hire" constitute adverse employment actions, and Defendants have directly imposed an adverse action on at least one member by placing that member on the Do Not Hire registry, signaling to the public that this member is under investigation "based on allegations

7

that the individual abused or was involved in an inappropriate relationship with a student or minor"[5]; *see Lloyd v. Birkman*, 127 F. Supp. 3d 725, 761 (W.D. Tex. 2015) (quoting *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997)).

       3.    *Pickering* Balancing Favors Plaintiff's Members' Interests.

The *Pickering* analysis calls on courts to balance an employee's interest in commenting upon matters of public concern against the government's interest in promoting efficiency of the public services it performs. *Rankin v. McPherson*, 483 U.S. 378, 384 (1987) (quoting *Pickering*, 391 U.S. at 568). Defendants concede that Plaintiff's members were speaking as private citizens on a matter of public concern, which is speech that lies at the very heart of the First Amendment's protections. ECF No. 18 at 8-9; *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011). But Defendants fail to justify their infringement this speech with real governmental interests in preventing disruptions to state services. *See* ECF No. 18 at 9 (citing *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794 (5th Cir. 1989)).

Courts have given weight to government employers' "*reasonable* predictions of disruption," but "[h]ypothetical harms will not tip the *Pickering* scale." *Bevill v. City of Quitman,* No. 4:19-CV-406, 2025 WL 2306849, at *15 (E.D. Tex. Aug. 11, 2025) (emphasis added) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 499 n.8 (5th Cir 2007)). Here, Defendants have failed to articulate any reasonable prediction of disruption to school operations caused by the Plaintiff's members' social media posts outside of conclusory and unfounded statements about educator's speech signaling their "unfitness to teach impressionable children." ECF No. 18 at 11. Nor does the TEA Policy state how these Kirk-related posts either disrupted or were anticipated to disrupt school operations. Several months have passed since the teachers made the social media posts at

---

[5] TEA, Do Not Hire Registry, https://tea.texas.gov/texas-educators/investigations/do-not-hire-registry (last visited Feb. 17, 2026) (defining "Under investigation").

issue, and there remains no indication that their speech generated any disruptions to school operations. Teacher's First Amendment interests at stake far outweigh the Defendants' stated interest in preventing hypothetical disruptions with no basis in reality.

### III.   Plaintiff's Claims Against Mr. Morath Are Not Barred by Sovereign Immunity.

Plaintiff's claims against Mr. Morath are not barred by sovereign immunity, as detailed in Plaintiff's Motion for a Preliminary Injunction. *See* ECF No. 12 at 6–7.

### IV.   The *Younger* Abstention Doctrine Does Not Preclude the Court from Exercising Jurisdiction and Issuing a Preliminary Injunction.

The Court should not abstain from exercising jurisdiction pursuant to the *Younger* abstention doctrine. ECF No. 18 at 4. Facial challenges to state policies brought "on First Amendment grounds have been exempted from the abstention doctrine, which, itself is 'the exception and not the rule.'" *RTM Media, L.L.C. v. City of Houston*, 518 F. Supp. 2d 866, 871 (S.D. Tex. 2007) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). "In such cases to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *City of Houston v. Hill*, 482 U.S. 451, 467-68 (1987) (citation modified).

Even assuming *arguendo* that one of the "highly exceptional circumstances" warranting abstention under *Younger* exists (and Plaintiff does not concede one does), a federal court should nonetheless assert jurisdiction if the state proceeding was brought in bad faith or for purposes of harassment. *Tex. Ent. Ass'n v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021). Any ongoing TEA investigations against Plaintiff's members fall squarely into that category because here, a top state official issued a politically motivated, first-of-its-kind, one-sided policy seeking to retaliate against those who do not share his viewpoints. Through the Policy, Defendants take the unprecedented

9

step of directing superintendents to misuse the TEA's Misconduct Reporting Portal—a mechanism designed to report "physical abuse[,] threats of violence[,] romantic or sexual relationships[, and] inappropriate communication or boundary violations" involving "a student or minor"—as a tool to suppress educators' First Amendment rights to speak on matters of public concern. *See* Tex. Educ. Code §§ 22A.051, 22A.052 (West 2025). Such infringement on core constitutional rights is precisely the kind of danger federal courts are entrusted to prevent.

Finally, "a federal court need not decline to hear a constitutional case within its jurisdiction merely because a state investigation has begun." *Evans v. Garza*, 161 F.4th 315, 319 (5th Cir. 2025) (citation omitted). Requiring abstention "whenever enforcement is threatened . . . would leave a party's constitutional rights in limbo while an agency contemplates enforcement but does not undertake it." *Jefferson Par. Firefighters Ass'n v. La. Bd. of Ethics,* 779 F. Supp. 3d 842, 861 (E.D. La. 2025) (citation omitted). Defendants fail to establish when *any* state proceedings at issue commenced or identify the stage those proceedings had reached when Plaintiff filed this suit. Many teachers who were told they were being reported to the TEA remain unsure of the status of any investigations. Many teachers who are now too afraid to engage in political debate on social media because of the Policy are not under investigation. Accordingly, the Court should not abstain from exercising its jurisdiction over this case.

## CONCLUSION

Plaintiff respectfully requests that after consideration of the arguments of the parties and the evidence offered at the April 8, 2026 preliminary injunction hearing, the Court grant its Motion for Preliminary Injunction.

Dated: February 17, 2026                                Respectfully submitted,

/s/ *Karima Maloney*
Karima Maloney
Texas Bar No. 24041383
Allison Standish Miller
Texas Bar No. 24046440
Alexander M. Wolf
Texas Bar No. 24095027
STEPTOE LLP
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2300
Fax: (713) 221-2320
kmaloney@steptoe.com
amiller@steptoe.com
awolf@steptoe.com

Ida Adibi (*admitted pro hac vice*)
Kylie Clouse (*admitted pro hac vice*)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
iadibi@steptoe.com
kclouse@steptoe.com

Manuel Quinto-Pozos
Texas Bar No. 24070459
DEATS DURST & OWEN PLLC
2901 Bee Caves Road, Suite L
Austin, TX 78746
Telephone: (512) 474-6200
Fax: (512) 474-7896
mqp@ddollaw.com

*Counsel for Plaintiff Texas American Federation of Teachers*

**CERTIFICATE OF SERVICE**

I certify that on the 17th day of February 2026, a true and correct copy of the above document was served via the CM/ECF system on all counsel of record.

/s/ *Karima Maloney*
Karima Maloney