## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **TEXAS AMERICAN FEDERATION OF TEACHERS,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 1:26-cv-00024-ADA** |
| **TEXAS EDUCATION AGENCY and MIKE MORATH, in his official capacity as Commissioner of the Texas Education Agency,** | |
| **Defendants.** | |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Karima Maloney
Texas Bar No. 24041383
Allison Standish Miller
Texas Bar No. 24046440
Alexander M.  Wolf
Texas Bar No. 24095027
STEPTOE LLP
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2300
Fax: (713) 221-2320
kmaloney@steptoe.com
amiller@steptoe.com
awolf@steptoe.com

Ida Adibi (*admitted pro hac vice*)
Kylie Clouse (*admitted pro hac vice*)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
iadibi@steptoe.com
kclouse@steptoe.com

Manuel Quinto-Pozos
Texas Bar No. 24070459
DEATS DURST & OWEN PLLC
2901 Bee Caves Road, Suite L
Austin, TX 78746
Telephone: (512) 474-6200
Fax: (512) 474-7896
mqp@ddollaw.com

*Counsel for Plaintiff Texas American Federation of Teachers*

## <u>TABLE OF CONTENTS</u>

Table of Contents ........................................................................................................... i

Introduction .................................................................................................................. 1

Statement of Facts ........................................................................................................ 1

Legal Standard ............................................................................................................. 2

Argument and Authorities ............................................................................................ 3

I.     Texas AFT Has Standing to Bring Its Claims. ................................................... 3

     A.     Texas AFT's Members Have Suffered Injuries in Fact. ........................... 3

     B.     Texas AFT's Members' Injuries are Traceable to Defendants' Actions. ................ 5

II.     Texas AFT Has Plausibly Stated a Claim for Vagueness and Overbreadth. ..................... 7

III.     Texas AFT Has Plausibly Stated a Claim for First Amendment Retaliation. .................... 9

     A.     Texas AFT's Members Suffered Adverse Employment Actions as a Result of the TEA Policy. ................ 9

     B.     The *Pickering* Balancing Test Weighs in Favor of Texas AFT. ...........................11

IV.     Defendants Do Not Assert Sovereign Immunity on Behalf of Defendant Morath. .......... 13

V.     The Court Should Reject the Defendants' Argument that *Younger* Abstention is Appropriate Here. ................ 13

Conclusion .................................................................................................................. 16

Certificate of Service ................................................................................................. 17

## TABLE OF AUTHORITIES

*Alexander v. AmeriPro Funding, Inc.*,
    848 F.3d 698 (5th Cir. 2017) ................................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................3

*Atkinson v. Pustilnik*,
    2024 WL 1937860 (S.D. Tex. May 2, 2024) ......................................................4

*Bennett v. Spear*,
    520 U.S. 154 (1997) .......................................................................................5, 7

*Bode v. Kenner City*,
    303 F. Supp. 3d 484 (E.D. La. 2018) .................................................................8

*City of Houston v. Hill*,
    482 U.S. 451 (1987) ..........................................................................................14

*Cooperrider v. Woods*,
    127 F.4th 1019 (6th Cir. 2025) .........................................................................11

*Crane v. Napolitano*,
    920 F. Supp. 2d 724 (N.D. Tex. 2013) ...............................................................4

*Cripps v. La. Dep't of Agric. & Forestry*,
    819 F.3d 221 (5th Cir. 2016) ..............................................................11, 12, 13

*Ctr. for Individual Freedom v. Carmouche*,
    449 F.3d 655 (5th Cir. 2006) ..........................................................................4, 9

*Duncan v. Smith & Nephew, Inc.*,
    2020 WL 6151233 (S.D. Tex. Oct. 5, 2020) ......................................................3

*Est. of Parker v. Mississippi Dep't of Pub. Safety*,
    140 F.4th 226 (5th Cir. 2025) .............................................................................5

*Evans v. Garza*,
    161 F.4th 315 (5th Cir. 2025) ...........................................................................15

*Flores v. Sanchez*,
    No. EP04CA056PRM, 2005 WL 1804434 (W.D. Tex. July 29, 2005)................11

*Green Valley Special Util. Dist. v. City of Schertz, Tex.*,
    969 F.3d 460 (5th Cir. 2020) (en banc) ............................................................13

*Greenwood v. City of Yoakum*,
    2008 WL 1858902 (S.D. Tex. April 24, 2008) ....................................................3

*Greiner v. United States*,
　900 F.3d 700 (5th Cir. 2018) ......................................................................2

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
　634 F.3d 787 (5th Cir. 2011) ......................................................................2

*Hishon v. King & Spalding*,
　467 U.S. 69 (1984)......................................................................................3

*Hodak v. City of St. Peters*,
　2006 WL 3004052 (E.D. Mo. Oct. 20, 2006) ..........................................11

*Jefferson Par. Firefighters Ass'n v. Louisiana Bd. of Ethics*,
　779 F. Supp. 3d 842 (E.D. La. 2025)........................................................15

*Justice v. Hosemann*,
　771 F.3d 285 (5th Cir. 2014) ......................................................................4

*Keenan v. Tjeda*,
　290 F.3d 252 (5th Cir. 2002) ..............................................................12, 13

*Kinney v. Weaver*,
　376 F.3d 337 (5th Cir. 2004) ..............................................................10, 12

*Lane v. Halliburton*,
　529 F.3d 548 (5th Cir. 2008) ......................................................................2

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992)....................................................................................2

*Morris v. Robinson*,
　2017 WL 4510593 (W.D. Tex June 5, 2017) ...........................................15

*Pickering v. Bd. Of Educ.*,
　391 U.S. 563 (1968)........................................................................9, 11, 12

*Reule v. Jackson*,
　114 F.4th 360 (5th Cir. 2024) ...............................................................5, 6, 7

*Robledo v. United States*,
　147 F.4th 515 (5th Cir. 2025) .....................................................................2

*RTM Media, L.L.C. v. City of Houston*,
　518 F. Supp. 2d 866 (S.D. Tex. 2007).....................................................14

*Tex. Entm't Ass'n v. Hegar*,
　10 F.4th 495 (5th Cir. 2021) .....................................................................14

*Thomas v. State,*
    294 F.Supp.3d 576 (N.D. Tex. 2018) ........................................................14

*United Transp. Union v. State Bar of Mich.,*
    401 U.S. 576 (1971) .....................................................................................8

*Younger v. Harris,*
    401 U.S. 37 (1971). ECF No. 17 ............................................................1, 14

**Other Authorities**

Ed. Agency, https://tea.texas.gov/texas-educators/investigations/educator-
    misconduct-investigations (last visited Feb. 23, 2026) .........................2, 15

Fed. R. Civ. P. 12(b)(1) ....................................................................................2

Federal Rule of Civil Procedure 12(b)(6) .....................................................2, 3

U.S. Constitution ............................................................................................13

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

Plaintiff Texas American Federation of Teachers ("Texas AFT" or "Plaintiff") opposes Defendants' Motion to Dismiss. ECF No. 17. Texas AFT's Complaint plausibly alleges Article III standing and retaliation against Texas AFT's members in violation of the First Amendment. *Younger* abstention should not apply to this case because the State policy at issue is being challenged on First Amendment grounds. Tellingly, Defendants do not challenge Mr. Morath's inclusion as a Defendant, nor do they offer any legal basis to dismiss Texas AFT's facial challenge of the TEA Policy. And Defendants ignore the applicable legal standards at the motion to dismiss stage—when all inferences are drawn in favor of the plaintiff—and spend much time disputing Texas AFT's allegations, relying on outside facts, and drawing inferences in their own favor. Defendants' Motion should be denied.

## STATEMENT OF FACTS

In the wake of Charlie Kirk's death, TEA Commissioner Mike Morath published a policy letter (the "Policy") that directed Texas superintendents to report to TEA for misconduct investigations all "vile," "reprehensible," and "inappropriate" content posted on Texas educators' personal social media accounts regarding Mr. Kirk. The Policy did not stop there—Mr. Morath further warned that "[s]uch posts could constitute a violation of the Educators' Code of Ethics," signaling to administrators statewide that they should discipline the educators who engaged in this speech. Indeed, the signal was received and teachers across the state were immediately subjected to discipline from their school districts as the direct result of Mr. Morath's effort to restrain speech critical of the life of Charlie Kirk.

Moreover, it is undisputed that the TEA misconduct investigations contemplated by the Policy can lead to serious consequences for affected educators: revocations of teacher's

certifications; and placements of public flags on teachers' certificates and the "Do Not Hire" Registry, all of which serve to make public school teachers unhireable.[1]  *See* ECF No. 1 ¶ 22.  The Policy thus set in motion adverse actions against affected Texas AFT members, whose livelihoods are affected for engaging in protected speech that the TEA and Commissioner Morath disfavor.

## **LEGAL STANDARD**

A claim can be dismissed for lack of subject-matter jurisdiction only when a court lacks the statutory or constitutional power to adjudicate the claim.  *Greiner v. United States*, 900 F.3d 700, 703 (5th Cir. 2018); Fed. R. Civ. P. 12(b)(1).  In resolving a Rule 12(b)(1) motion, a court may consider: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (internal quotation omitted).  The plaintiff bears the burden of establishing jurisdiction, and dismissal is improper unless a "it appears certain that the plaintiff cannot prove any set of facts in support of [their] claim that would entitle plaintiff to relief."  *Robledo v. United States*, 147 F.4th 515, 519 (5th Cir. 2025) (quoting *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020)).  Challenges under Rule 12(b)(1) extend to the standing of the plaintiff to assert a claim.  *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n. 2 (5th Cir. 2011).  A plaintiff establishes Article III standing by showing that (1) the plaintiff has suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the

---

[1] *Educator Misconduct & Investigations*, TEX. ED. AGENCY, https://tea.texas.gov/texas-educators/investigations/educator-misconduct-investigations (last visited Feb. 23, 2026).

2

plaintiff." *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(b)(6) motion "tests the formal sufficiency of the plaintiff's complaint, but should not be used to resolve factual issues or the merits of the case." *Duncan v. Smith & Nephew, Inc.*, 2020 WL 6151233 at *1 (S.D. Tex. Oct. 5, 2020) (citing *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). "The court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Greenwood v. City of Yoakum*, 2008 WL 1858902 at *1 (S.D. Tex. April 24, 2008) (citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999)). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## ARGUMENT AND AUTHORITIES

### I.     Texas AFT Has Standing to Bring Its Claims.

Defendants argue that Texas AFT has not suffered harm from Defendants and has not pled an injury in fact traceable to Defendants' conduct. ECF No. 17 at 5. Defendants are wrong; this contention rests on a fundamental mischaracterization of the allegations. Texas AFT's Complaint alleges that the TEA Policy itself triggered adverse employment actions on the district level and created an immediate and chilling threat of professional discipline across the state. *See* ECF No. 1 ¶¶ 5, 6, 7, 12, 24–26, 62, 65, 72, 73. Texas AFT has sufficiently pled an injury in fact traceable to Defendants' conduct.

#### A.     Texas AFT's Members Have Suffered Injuries in Fact.

Defendants focus on what constitutes an adverse employment action when arguing that Texas AFT's members have not suffered injuries in fact. *See* ECF No. 17 at 5–6. However, as

courts have recognized, "an Article III injury for purposes of constitutional standing is different from the adverse action or chilling injury required to state a First Amendment retaliation claim." *Atkinson v. Pustilnik*, 2024 WL 1937860 at *5 (S.D. Tex. May 2, 2024).  Texas AFT sufficiently pled that its members suffered both chilling of their constitutionally-protected speech and adverse employment actions—each of which is sufficient for establishing an injury in fact.

Texas AFT's members suffered injuries in fact, both from the TEA Policy's chilling effect on their speech and from adverse actions taken as a result of the TEA Policy.  Defendants' motion wholly ignores Texas AFT's allegations that the TEA Policy's chilling effect injured Texas AFT's members.  However, the Fifth Circuit has consistently held that "a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing."  *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006); *see also Justice v. Hosemann*, 771 F.3d 285, 294 (5th Cir. 2014) ("Standing rules are relaxed for First Amendment cases so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief.").

Additionally, "[a]n adverse employment action, *or the threat thereof*, constitutes an injury-in-fact" for standing purposes.  *Crane v. Napolitano*, 920 F. Supp. 2d 724, 740 (N.D. Tex. 2013) (citing *United States v. City of Miami*, 664 F.2d 435, 446 (5th Cir. 1981)) (emphasis added).  The TEA Policy was used both to threaten and to enforce adverse actions against Texas AFT's members.  The TEA Policy chilled Texas AFT members' private speech; threatened them with loss of their teaching certifications and licenses; and set in motion adverse actions against them, including formal reprimands and terminations.  ECF No. 1 ¶¶ 32, 35, 38, 44, 47,48, 52, 65. Texas AFT members suffered all of these injuries as a result of engaging in protected speech.  *See id.*  ¶¶ 22, 71. These injuries satisfy Article III's standing requirements.

**B.    Texas AFT's Members' Injuries are Traceable to Defendants' Actions.**

Defendants attempt to distance themselves from the harm suffered by Texas AFT's members by arguing that their injuries "are not traceable to the [Texas] Attorney General." ECF No. 17 at 7. The Texas Attorney General is not a defendant in this case. Assuming *arguendo* that Defendants meant to refer instead to the Commissioner of Education, Defendant Mike Morath, this argument fails because the injuries at issue flow directly from the Commissioner's Policy and enforcement actions.

The Fifth Circuit has described the standing requirement as a "low causation bar," ruling that an "uncertain" or "indirect causal relationship will suffice for standing, and plaintiffs may satisfy the requirement by alleging 'a chain of causation between defendants' conduct and plaintiffs' injuries.'" *Est. of Parker v. Mississippi Dep't of Pub. Safety*, 140 F.4th 226, 236-37 (5th Cir. 2025) (internal citations omitted). "Standing exists where the purported injury is connected to allegedly unlawful government conduct. The defendant's conduct does not need to be the very last step in the chain of causation." *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (internal citations omitted). Rather, it "is often enough that the defendant's conduct was one of multiple contributing causes," and "the fact that the defendant is only one of several persons who cause the harm does not preclude a finding of causation sufficient to support standing." *Id.* Importantly, the causal requirement "does not exclude injury produced by [defendant's] determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997).

Texas AFT's Complaint outlines injuries suffered by its members that are plainly traceable to Defendants' challenged actions. Texas AFT alleged that multiple principals at its members' schools told the members that, although the principals personally disagreed with the need for discipline, they were required to initiate discipline against the teachers through the referral to Human Resources solely because of their social media posts. *See* ECF No. 1 ¶¶ 36, 44. These

statements make clear that adverse actions would not have occurred absent the TEA Policy and its mandatory reporting scheme. The Complaint thus plausibly alleges that the harms that Texas AFT's members experienced did not stem from discretionary decisions by local administrators, but from Defendants' policy that caused districts to initiate disciplinary measures.

The adverse actions that school districts took against Texas AFT's members are likewise consequences of the TEA Policy. The TEA Policy mandates that school districts across Texas report to the TEA teachers who post about Mr. Kirk's death in a manner that the TEA Policy subjectively identifies as "reprehensible," "vile," and "inappropriate;" it also encourages districts to take actions against teachers who make such posts. *See* ECF No. 1-1. That the school districts, rather than Mr. Morath, imposed disciplinary measures on Texas AFT's members is immaterial, since such actions occurred because of the TEA Policy and would not have otherwise occurred. *See, e.g., Reule*, 114 F.4th at 367. Commissioner Morath's own language in the TEA Policy confirms as much. He expressly "commend[ed] the swift action taken by the leadership of the districts" that employ educators who criticize Mr. Kirk. ECF No. 1-1. This language encourages superintendents to not only report educators to the TEA for an investigation but also take independent disciplinary steps and make an example out of educators who engage in protected speech. Accordingly, the fact that school districts carried out the adverse actions against Texas AFT's members does not deprive Texas AFT of standing to sue, since those actions were caused by the TEA Policy's edict to report and take action against teachers who post in a manner Defendants disfavor. *See* ECF No. 1-1.

Superintendents who do not take action against employees in accordance with the TEA Policy could jeopardize their certification for failure to report, and certain members' principals said that they had to take disciplinary action against the members in order to comply with the TEA

Policy. *See* ECF No. 1 ¶¶ 36, 43; *see also Bennett*, 520 U.S. at 169.  Texas AFT's "purported injury is connected" to "unlawful government conduct"—the TEA Policy—thereby satisfying the Article III causal requirement.  *Reule*, 114 F.4th at 367.

## II.    Texas AFT Has Plausibly Stated a Claim for Vagueness and Overbreadth.[2]

Defendants do not argue that Texas AFT has failed to state a claim regarding its facial challenge to the TEA Policy for vagueness and overbreadth, and those claims therefore are not subject to dismissal.  To the extent their Motion to Dismiss could be construed as reaching those claims, any such argument would still fail.  Texas AFT's Complaint plausibly alleges that the TEA Policy is facially unconstitutional, identifying the language that lacks clear standards, invites arbitrary enforcement, and burdens a substantial amount of protected speech.  These allegations are more than sufficient at the motion to dismiss stage.

At the outset, Defendants attempt to shift focus to the Educators' Code of Ethics, a code that Texas AFT has not challenged.  *See* ECF No. 17 at 1.  They assert that "[t]here was no new policy enunciated.  Just a reminder of the existing policy and the place to refer complaints."  *Id.* But if the existing Code of Ethics was truly all that governed teacher conduct, there would have been no need for Defendants to circulate a statewide directive requiring every superintendent in Texas to report teachers to TEA's Misconduct Portal for posts about Charlie Kirk.  Defendants' own actions confirm that the TEA Policy was more than a mere reminder of existing rules.  The Policy requires action from superintendents based on social media posts and prompts disciplinary processes by both TEA and school districts.  Such policies that "prohibit[] conduct under fear of punishment" are viewed by courts as "a statute, and if upon its face it abridges rights guaranteed

---

[2] In their Response to Motion for Preliminary Injunction, Defendants ask the Court to address Texas AFT's as-applied challenge before its facial challenge because they allege the as-applied challenge provides a narrower remedy. *See* ECF No. 18 at 9 n.1.  Defendants make no such request in their Motion to Dismiss.  *See generally* ECF No. 17.

by the First Amendment, it should be struck down." *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 581 (1971).

Defendants' exhaustive discussion of adverse actions fares no better. A plaintiff need not demonstrate that they have suffered an adverse action to prevail on a facial challenge to the constitutionality of a policy that infringes upon their right to free speech. *See Bode v. Kenner City*, 303 F. Supp. 3d 484, 487 (E.D. La. 2018) (barring enforcement of a city charter provision regulating public employee speech that the Court ruled was unconstitutionally vague and overbroad on its face despite there being "no known cases where the [] prohibitions ha[d] resulted in any adverse employment action"). The injury requirement for such a challenge is satisfied by showing that the policy "precludes the exercise of Plaintiff's First Amendment freedoms and chills their protected speech." *Id.* (citing *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279 (5th Cir. 2012)). This is demonstrated throughout Texas AFT's complaint, from members deleting their posts before any formal reprimand out of fear of the policy (ECF No. 1 ¶¶ 35, 47) to deleting more posts out of fear of further targeting by the state. *Id.* ¶ 52.

Texas AFT's Complaint plausibly alleges that the TEA Policy is both vague and overbroad. Texas AFT alleges that requiring superintendents to report for misconduct investigations that may result in revocation of teaching certificates, "additional instances of inappropriate content" targets a wide swath of constitutionally protected speech. ECF No. 1 ¶ 61. It further highlights Defendants' failure to define "additional instances of inappropriate content;" or what qualifies as "vile" and "reprehensible" under the Policy. *Id.* ¶ 64; ECF No. 1-1. The Complaint also emphasizes the chilling effect that the TEA Policy had not only on Texas AFT members, but public school teachers who wish to hold on to their teaching licenses across the state. ECF No. 1 ¶¶ 35, 47, 52, 62, 65, 72.

**III.    Texas AFT Has Plausibly Stated a Claim for First Amendment Retaliation.**

Defendants confusingly assert both that Texas AFT failed to state a First Amendment retaliation claim under *Pickering* and that Texas AFT has not pleaded an Article III injury.  *See* ECF No. 17 at 5.  By advancing these arguments side-by-side, Defendants improperly collapse two distinct legal inquiries.  As explained in Section I.A *supra*, "a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing." *Ctr. for Individual Freedom*, 449 F.3d at 660.  By contrast, the *Pickering* analysis is a merits-based balancing test that assesses whether the adverse action alleged was taken in retaliation for protected speech.  *See Pickering v. Bd. Of Educ.*, 391 U.S. 563, 568 (1968).  Texas AFT plausibly alleged both: that the TEA Policy caused sufficient injury to establish Article III standing, and that Defendants retaliated against teachers for engaging in constitutionally-protected expression.

To the extent that Defendants' Motion to Dismiss challenges the merits of Texas AFT's retaliation claim, their argument fails.  Defendants concede that Charlie Kirk's assassination is a matter of public concern and that teachers were referred for investigation for their speech.  ECF No. 17 at 5.  However, Defendants contend that (1) teachers suffered no adverse employment actions; and (2) Plaintiff failed to show how the *Pickering* balancing test weighs in their favor. ECF No. 17 at 6.  Defendants offer legal support only for their adverse-action argument and provide no authority to support their assertion that Texas AFT failed to satisfy *Pickering*.

**A.    Texas AFT's Members Suffered Adverse Employment Actions as a Result of the TEA Policy.**

Defendants argue that Texas AFT's claims must be dismissed because they do not employ Texas AFT's members, did not impose any adverse actions on Texas AFT members, and that all

other adverse actions were "caused by the independent conduct of [Texas AFT members'] actual

employer, the local school board." *See* ECF No. 17 at 6–7.

Defendants cannot evade their obligation under the First Amendment by relying on the fact

that they do not employ Texas AFT's members. As the Fifth Circuit explained in *Kinney v. Weaver*:

> The Supreme Court has made it clear that First Amendment protection does not
> depend on whether the governmental action at issue is "direct" or "indirect." To
> hold that the Police Officials' conduct cannot constitute a First Amendment
> violation because they did not directly deprive [Plaintiffs] of their jobs, but instead
> used governmental power to exert economic pressure on the [Plaintiffs'] employer
> in order to achieve that same result, would allow the government to produce a result
> which it could not command directly.

367 F.3d 337, 357-58 (5th Cir. 2004) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

Mr. Morath used his oversight authority over Texas school districts to pressure Texas AFT's

members' employers to target them for their protected speech. ECF No. 1 ¶ 73. As a result of this

pressure, school districts issued a formal reprimand against at least Teacher 4 and terminated at

least Teacher 1. *Id.* ¶¶ 32, 50, 51. Both adverse actions occurred within one week of the TEA

Policy's publication. *Id.* ¶¶ 28–32, 46–53. Whether accomplished through "direct" or "indirect"

actions, Mr. Morath used his agency's "governmental power" to "achieve the same result" that he

"could not command directly." *See Kinney*, 367 F.3d at 357-58.

Defendants' argument also rests on the false premise that the four teachers identified in the

Complaint comprise the full scope of affected members. They do not. The teachers referenced in

the Complaint are illustrative examples, and without discovery, Texas AFT cannot yet determine

the complete scope of adverse employment actions taken against its members pursuant to the TEA

Policy. *See* ECF No. 1 ¶ 27 ("The following *are examples of the harms* suffered by Texas AFT

members who were directly and adversely affected by the unconstitutional policy pushed by the

TEA[.]") (emphasis added).

Moreover, it should not be ignored, as Defendants urge, that the TEA's misconduct review process can and does lead to revocations of teachers' certifications. This type of license or certification revocation is an adverse action where defendant is a non-employer. "The standard for what constitutes an 'adverse employment action' is different than the standard relating to 'adverse actions' in non-employment settings." *Hodak v. City of St. Peters*, 2006 WL 3004052 at *7 (E.D. Mo. Oct. 20, 2006). In a non-employment context, Texas AFT simply must show "the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Cripps*, 819 F.3d at 229. Initiating the misconduct review process that could result in the revocation of an educator's certification meets this standard. *See Cooperrider v. Woods*, 127 F.4th 1019, 1038 (6th Cir. 2025) (ruling that the "complaint's allegation that Defendants made the decision to commence license-revocation proceedings against [Plaintiff], on its face, supports a reasonable inference that [Plaintiff] suffered an adverse action."). The Complaint alleges that TEA investigations are proceedings that can result in such revocations. *See* ECF No. 1 ¶ 22.

**B.    The *Pickering* Balancing Test Weighs in Favor of Texas AFT.**

Defendants argue, without providing any supporting authority, that Texas AFT failed to show how the *Pickering* balancing test weighs in its favor. ECF No. 17 at 5–6. This is a misstatement of the burden. Under the *Pickering* balancing test, the public employee bears only "the burden of establishing that his speech or activity related to a matter of public concern." *Flores v. Sanchez*, No. EP04CA056PRM, 2005 WL 1804434, at *6 (W.D. Tex. July 29, 2005). Defendants do not dispute that Texas AFT has made this showing. The burden then shifts to the TEA to "establish that its interest in promoting the efficiency of services…outweighs the employee[s'] interest in engaging in the protected activity." *Id.* Defendants have not—and cannot—make such a showing.

Even if Texas AFT has to prove that the TEA's interest in promoting efficiency outweighs their members' interest in engaging in the protected activity (it does not), the Amended Complaint has done so. The *Pickering* test requires courts to "balance . . . the interests" of the public employee "in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. Texas AFT alleges throughout its Complaint that the posts that its exemplar members made caused no disruption to school operations. ECF No. 1 ¶¶ 30, 34, 45, 53. Accepting those allegations as true—as the Court must at this stage—Defendants had no legitimate operational basis, beyond a blatant viewpoint-based animus, to regulate Texas AFT's members' speech.

Texas AFT clearly set out how its members' interest in commenting on matters of public concern outweighs the Defendants' interest in promoting efficiency in its Motion for Preliminary Injunction. *See* ECF No. 12 at 15–17.

Defendants argue in their Response to Motion for Preliminary Injunction that the *Pickering* test is inapplicable to this case because TEA is not the employer of Texas AFT's members.[3] *See* ECF No. 18 at 8. While Defendants make no such argument in their Motion to Dismiss, Texas AFT also satisfies the elements of the "ordinary citizen" test used to assess First Amendment retaliation claims in which the defendant does not stand in the place of the plaintiff's public employer. *See Cripps v. La. Dep't of Agric. & Forestry*, 819 F.3d 221, 229 (5th Cir. 2016); *Keenan v. Tjeda*, 290 F.3d 252, 254 (5th Cir. 2002). To prevail on a First Amendment retaliation claim, a party must establish: (1) that they were engaged in a constitutionally protected activity; (2) that the defendants' actions caused them to suffer an injury that would chill a person of ordinary

---

[3] The Fifth Circuit has held that the *Pickering* test applies to cases in which the relationship between the defendant and the employee "implicates governmental interest similar to those involved in the public employment context." *Kinney*, 376 F.3d at 360.

firmness from continuing to engage in that activity; and (3) that the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Cripps*, 819 F.3d at 229 (citation omitted); *Keenan*, 290 F.3d at 258 (citations omitted).

The Complaint plausibly alleges each of these elements. Defendants do not dispute that Texas AFT members were engaging in a constitutionally protected activity—speaking on a matter of public concern. *See* ECF No. 17 at 5. Nor do they dispute that Texas AFT members were referred for investigation because of their speech. *Id.* As explained in the Complaint and Section III.A *infra*, the TEA Policy in fact chilled Texas AFT members from engaging in protected speech. *See* ECF No. 1 ¶¶ 35, 47, 52, 62, 65, 72.

## IV.    Defendants Do Not Assert Sovereign Immunity on Behalf of Defendant Morath.

Defendants do not assert that Defendant Morath should be dismissed under sovereign immunity, accordingly, those claims should go forward. For a suit against a state official to proceed under *Ex Parte Young*, "three criteria must be satisfied: (1) A 'plaintiff must name individual state officials as defendants in their official capacities'; (2) the plaintiff must 'allege an ongoing violation of federal law'; and (3) the relief sought must be 'properly characterized as prospective.'" *Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 471 (5th Cir. 2020) (en banc). Here, all three criteria are satisfied because: (1) Mr. Morath is named in his official capacity as Commissioner of the TEA; (2) Texas AFT alleges that Mr. Morath's continuing enforcement of the TEA Policy violates the U.S. Constitution; and (3) the injunctive relief sought is properly prospective in that it seeks to end a violation of the law causing ongoing harm. *See id.*

## V.    The Court Should Reject the Defendants' Argument that *Younger* Abstention is Appropriate Here.

Defendants argue that the Court should abstain from exercising jurisdiction pursuant to the abstention doctrine under *Younger v. Harris*, 401 U.S. 37 (1971). ECF No. 17 at 9. The Court

should reject this argument. *Younger* does not compel federal courts to look the other way when the State co-opts its own procedures for unconstitutional ends. Abstaining under *Younger* would require the Court to ignore that the State is deploying an otherwise unchallenged disciplinary process in bad faith to target and punish Texas AFT's members for engaging in protected speech.

Facial challenges to state policies brought "on First Amendment grounds have been exempted from the abstention doctrine, which, itself is 'the exception and not the rule.'" *RTM Media, L.L.C. v. City of Houston*, 518 F. Supp. 2d 866, 871 (S.D. Tex. 2007) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976))). "In such cases to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *City of Houston v. Hill*, 482 U.S. 451, 468 (1987).

Even assuming *arguendo* that one of the "highly exceptional circumstances" warranting abstention under *Younger* exists—and one does not—a federal court should nonetheless assert jurisdiction if the state proceeding was brought in bad faith or for purposes of harassment. *Tex. Entm't Ass'n v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021). The bad faith exception applies in two major circumstances: "first, when a state commences a prosecution or proceeding to retaliate for or to deter constitutionally protected conduct; and second, when the prosecution or proceeding is taken in bad faith or for the purpose to harass." *Thomas v. State*, 294 F.Supp.3d 576, 595 (N.D. Tex. 2018) (citing *All Am. Check Cashing, Inc. v. Corley*, 191 F. Supp. 3d 646 (S.D. Miss. 2016)). For the purposes of review at the motion to dismiss stage, the Court need only consider whether Texas AFT's pleadings adequately allege a bad faith exception. *See Morris v. Robinson*, 2017 WL 4510593 at *5 n.8 (W.D. Tex June 5, 2017).

The TEA proceedings against Texas AFT's members fall squarely into this category. The Complaint alleges that a top state official issued a politically motivated, first-of-its-kind, one-sided policy seeking to retaliate against those who do not share his viewpoints. ECF No. 1 ¶¶ 4, 5, 23–26, 58, 59, 64, 68–74. This is the definition of bad faith. Through the TEA Policy, Defendants took the unprecedented step of directing superintendents to misuse the TEA's Misconduct Reporting Portal—a mechanism designed to report "physical abuse[,] threats of violence[,] romantic or sexual relationships[, and] inappropriate communication or boundary violations" involving "a student or minor"—as a tool to suppress educators' First Amendment rights to speak on a matter of public concern. ECF No. 1 ¶¶ 22, 23; *see also Educator Misconduct & Investigations*, Tex. Ed. Agency, https://tea.texas.gov/texas-educators/investigations/educator-misconduct-investigations (last visited Feb. 23, 2026). Such infringement on core constitutional rights is precisely the kind of danger federal courts are entrusted to prevent.

Finally, a "federal court need not decline to hear a constitutional case within its jurisdiction merely because a state investigation has begun." *Evans v. Garza*, 161 F.4th 315, 319 (5th Cir. 2025). Requiring abstention "whenever enforcement is threatened . . . would leave a party's constitutional rights in limbo while an agency contemplates enforcement but does not undertake it." *Jefferson Par. Firefighters Ass'n v. Louisiana Bd. of Ethics,* 779 F. Supp. 3d 842, 861–62 (E.D. La. 2025).

Defendants fail to establish when *any* state proceedings at issue commenced or identify the stage those proceedings had reached when Texas AFT filed this suit. By contrast, Texas AFT's Complaint asserts that teachers who were told they were being reported to the TEA remain unsure whether any investigation was ever opened. *See* ECF No. 1 ¶¶39, 45. Accordingly, the Court should not abstain from exercising its jurisdiction over this case.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion.

Dated: February 23, 2026                    Respectfully submitted,

By: /s/ *Karima Maloney*_____
Karima Maloney
Texas Bar No. 24041383
Allison Standish Miller
Texas Bar No. 24046440
Alexander M.  Wolf
Texas Bar No. 24095027
**STEPTOE LLP**
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2300
Fax: (713) 221-2320
kmaloney@steptoe.com
amiller@steptoe.com
awolf@steptoe.com

Ida Adibi (*admitted pro hac vice*)
Kylie Clouse (*admitted pro hac vice*)
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
iadibi@steptoe.com
kclouse@steptoe.com

Manuel Quinto-Pozos
Texas Bar No. 24070459
**DEATS DURST & OWEN PLLC**
2901 Bee Caves Road, Suite L
Austin, TX 78746
Telephone: (512) 474-6200
Fax: (512) 474-7896
mqp@ddollaw.com

*Counsel for Plaintiff*
*Texas American Federation of Teachers*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 23rd day of February 2026, a true and correct copy of the above document was served via the CM/ECF system to all counsel of record.

/s/ *Karima Maloney*
Karima Maloney

17