# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KATHERINE MEJIA, and JENNIFER SMITH, | Case No. 4:26-cv-00020-SMR-HCA |
| Plaintiffs, | ORDER ON MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| IOWA BOARD OF EDUCATIONAL EXAMINERS, and MICHAEL CAVIN, in his individual and official capacity as Executive Director of the Iowa Board of Educational Examiners, | |
| Defendants. | |

Two licensed Iowa educators seek a preliminary injunction to halt a state licensing investigation. They claim the Iowa Board of Educational Examiners ("BOEE") violated their First Amendment rights by investigating them for social media posts related to Charlie Kirk's murder and President Donald Trump. The *Younger* abstention doctrine, however, bars federal courts from interfering with ongoing state enforcement proceedings. Because this investigation qualifies for *Younger* abstention and Plaintiffs identify no exception, the Court must decline jurisdiction.

I. BACKGROUND[1]

Katherine Mejia is a counselor in the West Delaware Community School District; Jennifer Smith is a teacher in the Johnston Community School District. [ECF No. 1 ¶¶ 3, 5]. Both must hold licenses and endorsements from the BOEE, a state agency with supervisory authority over educator licensing. *Id*. Defendant Cavin serves as BOEE's Executive Director. *Id*. ¶ 7.

---

[1]The following facts are drawn from Plaintiffs' petition and supporting documents.

1

On September 10, 2025, political activist Charlie Kirk was murdered while speaking on a college campus in Utah. That same day, Mejia—who was on leave from work—made two Facebook posts. *Id.* ¶ 11. In the first, she reposted a Facebook post concerning Jeffrey Epstein and President Donald Trump, showing a photo of a large check, commenting: "At this point if you still support him you're a pediphile [sic] or ok with it happening . . . [.]" *Id.* In the second, she responded to Kirk's death: "Let's make one thing clear from the start: Charlie Kirk was the victim of a shooting in a country where he, along with other right-wing extremist influencers, have been inciting violence for years. KIRK IS NEITHER A MARTYR NOR A HERO, HE IS A CAUSE!" *Id.*

Two people complained to the West Delaware Community School District about Mejia's posts—one about the Epstein-Trump image, another about Kirk's death. *Id.* ¶ 13. The district superintendent reprimanded her. *Id.* ¶ 14.

On September 11, after work, Smith posted on Facebook about Kirk's death. *Id.* ¶ 20. Her post stated: "Words below are from the one that suddenly died due to gun violence. That one death flies our flags at half-staff and yet time and again, children and school staff are constantly dying just because they were doing their jobs for the betterment of society, are not honored nor barely remembered. There was a school shooting on this same day. Did you know that? Have you heard anything . . . See More." *Id.* ¶ 21. It continued: "RIP you monster, I'm so sure your god is fine with the awful spread of hate you completed while here on earth." *Id.* ¶ 23. The post also included an image with text: "This is not eulogy-flattery. This is memory. We remember the things he said about Dr. Martin Luther King Jr. 'MLK was awful. He's not a good person.' We remember his calculation on gun violence: 'I think it's worth . . . some gun deaths every single year so that we can have the Second Amendment to protect our other God-given rights. That is a prudent deal. It

is rational.' These are not the words of healing, not the words of unity. And yet they, too, are part of the ledger he leaves behind." *Id*. ¶ 22.

The Johnston Community School District received phone calls about Smith's post. *Id*. ¶ 25. After speaking with an associate principal and a human resources employee, Smith deleted it the next day. *Id*. ¶ 26.

On September 19, Cavin sent a letter to Iowa school district superintendents addressing "professionalism among Iowa educators" in light of recent social media posts about Kirk. [ECF No. 1-1]. He called comments "condoning political or any type of violence" "reprehensible" and warned that such conduct could violate the ethical rules governing educators. *Id*. The letter cited specific ethical rules and explained how to submit complaints about individual educators, assuring superintendents that "[a]ll submitted complaints will receive a comprehensive investigation by the Board staff, and assured due process for all involved." *Id*.

The superintendents of both school districts then submitted complaints about Mejia and Smith's social media posts to the BOEE. [ECF Nos. 1-2, 1-3]. On October 22, the BOEE notified Smith that it had opened an investigation into her conduct; on October 28, it notified Mejia of the same. *Id*. According to Plaintiffs, the investigative process could subject them to closed-session discussions of their conduct, public notice of probable cause findings, and sanctions including loss of licensure and termination. [ECF No. 1 ¶ 64]. No probable cause finding has yet been made.

Plaintiffs allege that Defendants' actions are part of a broader effort by Iowa officials to retaliate against educators who criticized Kirk after his death. *Id*. ¶¶ 81, 82. They point to several public statements supporting this allegation. Governor Kim Reynolds said anyone who celebrated Kirk's death should be fired. *Id*. ¶ 38. House Speaker Pat Grassley warned that school districts must investigate and reprimand teachers who made posts "praising the assassination of Charlie

Kirk," or the House Government Oversight Committee would "address this issue and take action to root out this hate from our schools." [ECF No. 1-6]. And the chairs of the Senate and House education committees wrote to the Board of Regents demanding immediate termination of any university employee "who celebrated the death" of Kirk. [ECF No. 1-4].

Plaintiffs seek a preliminary injunction to halt the BOEE investigation. [ECF No. 2]. Defendants respond that *Younger* abstention bars relief. [ECF No. 8].

## II.  DISCUSSION

### A.  Legal Standards

Federal courts have a "virtually unflagging" obligation to hear cases within their jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (citation omitted). *Younger* abstention is an exception to that rule. *Younger v. Harris*, 401 U.S. 37, 43 (1971). The doctrine calls for a three-part inquiry. *See Wassef v. Tibben*, 68 F.4th 1083, 1086–87 (8th Cir. 2023).

The first question is whether the case belongs to one of three categories: (1) ongoing state criminal prosecutions; (2) civil enforcement proceedings that share the essential character of a criminal prosecution; and (3) civil proceedings involving orders that are uniquely in furtherance of a state court's ability to perform its judicial functions. *Sprint*, 571 U.S. at 78; *see also New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*").

If the case fits one of these categories, the court turns to the *Middlesex* factors. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). These factors are not independently dispositive; they are additional considerations the court addresses before invoking *Younger*. *See Sprint*, 571 U.S. at 81. They ask whether there is an ongoing state judicial proceeding, whether that proceeding implicates important state interests, and whether it affords an adequate opportunity to raise constitutional challenges. *Middlesex*, 457 U.S. at 432; *see also*

*Plouffe v. Ligon*, 606 F.3d 890, 892 (8th Cir. 2010). When all three are met, the analysis moves to the final step.

If the first two steps are satisfied, the court reaches the final question: whether an exception to abstention requires federal intervention. *Younger*, 401 U.S. at 49–54. The plaintiff bears that burden. *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 680 (8th Cir. 2013). Recognized exceptions cover bad faith or harassment by state officials, patently unconstitutional statutes, and other extraordinary circumstances. *Plouffe*, 606 F.3d at 892–93. If no exception applies, abstention is mandatory. *375 Slane Chapel Road, LLC v. Stone County*, 53 F.4th 1122, 1127 (8th Cir. 2022).

### B. Analysis

#### 1. *NOPSI* Category

The threshold question is whether this case involves civil enforcement proceedings "akin to a criminal prosecution." *Sprint*, 571 U.S. at 78–79 (citation omitted). The answer to that question—whatever one makes of the circumstances that gave rise to these proceedings—is yes.

The Eighth Circuit has applied *Younger* abstention to professional licensing proceedings in Iowa. In *Wassef*, the court held that abstention was appropriate where the Iowa Board of Medicine had initiated a formal disciplinary action against a licensed physician—one that carried the potential for license revocation—for failing to meet Iowa's professional conduct standards. 68 F.4th at 1088. Such proceedings are "quasi-criminal in nature" because they deploy the State's coercive power to enforce professional standards under threat of license revocation. *Id*. The same principle applies to attorney disciplinary proceedings. *Plouffe*, 606 F.3d at 892.

The BOEE proceeding fits within that line of cases. Like the Iowa Board of Medicine in *Wassef*, the BOEE exercises state authority to regulate a licensed profession, enforce ethical standards, and impose sanctions up to and including permanent revocation of licensure. That the

conduct triggering this investigation was speech—and speech about a matter of public concern—does not alter this analysis. Iowa's interest in regulating educator conduct is substantial and if anything stronger than its interest in medical licensing given the State's constitutional obligation to provide public education and the central role educators play in that mission.

2. *Middlesex* Factors

a. Ongoing State Proceeding

Plaintiffs argue there is no "ongoing" proceeding because the BOEE has not yet found probable cause or initiated a contested case. They invoke two decisions for the proposition that *Younger* does not reach proceedings where enforcement is merely threatened. *Steffel v. Thompson*, 415 U.S. 452, 462 (1974); *Planned Parenthood of Greater Iowa, Inc. v. Atchison*, 126 F.3d 1042, 1047 (8th Cir. 1997). The argument has surface appeal, but it overstates those decisions and does not accurately describe where these proceedings stand.

*Younger* abstention does not require that formal charges be pending. It requires an ongoing proceeding—one that has progressed beyond the mere threat of enforcement into the formal machinery of state adjudication. The Eighth Circuit has recognized that the relevant inquiry is whether a preliminary investigation has "culminat[ed] in the filing of formal charges," language that by its own terms contemplates proceedings where charges have not yet issued. *Wassef*, 68 F.4th at 1088 (quoting *Slane Chapel Road*, 53 F.4th at 1128). The question, then, is whether the BOEE's actions here represent formal state proceedings or merely threatened enforcement. They are the former.

The record establishes that the BOEE has taken a series of concrete, formal steps. The superintendents of both school districts filed written complaints. The BOEE then assessed those complaints against the jurisdictional requirements of Iowa Code section 256.146(14)(a) and

Iowa Administrative Code 282-11.3, which demand specificity, personal knowledge, adequate magnitude, and sufficient evidentiary support before an investigation may be authorized. Having made those threshold determinations, the BOEE assigned each matter a case number, designated an individual investigator, and issued formal written notices to both Plaintiffs requesting their written responses. These are not the ministerial acts of a clerk receiving mail. They are the formal, sequential steps of a structured state regulatory process—each a predicate for the next, each a deliberate exercise of state authority.

That the BOEE has not yet made a probable cause finding does not diminish the ongoing nature of the proceedings. *Steffel* and *Planned Parenthood* concerned situations where no state process had commenced at all—where a plaintiff faced only the prospect of future enforcement. Here, enforcement has begun. The BOEE has exercised jurisdiction, assigned investigators, and placed Plaintiffs under active investigation with the attendant obligations to respond. The coercive force of the State is already at work, and that is sufficient. *See Gonzalez v. Waterfront Comm'n*, 755 F.3d 176, 183 (3d Cir. 2014) (ongoing proceeding existed before hearing but after service of statement of charges). The first *Middlesex* factor is satisfied.

b. Important State Interests

Iowa's interest in regulating the professional conduct of its licensed educators is substantial and well established. *See Wassef*, 68 F.4th at 1088 (recognizing Iowa's interest in professional licensing standards satisfied *Younger*'s important-state-interest requirement); *Barsky v. Bd. of Regents*, 347 U.S. 442, 449 (1954). The State licenses educators, sets ethical standards for their conduct, and enforces those standards through a structured administrative process. For purposes of *Younger* abstention, neither the fact that the underlying conduct involves speech, nor the

possibility that the Court might ultimately conclude it is constitutionally protected, diminishes that interest. The second *Middlesex* factor is satisfied.

### c. Adequate Opportunity to Raise Constitutional Claims

Iowa's administrative framework provides Plaintiffs a meaningful opportunity to present their First Amendment defenses. Contested case proceedings before an administrative law judge include the right to present evidence, cross-examine witnesses, and submit legal arguments. Iowa Code §§ 17A.12–20 (2026). BOEE decisions are subject to judicial review in Iowa's state courts, where federal constitutional claims may be raised. *Id.* § 17A.19; *Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 182–85 (Iowa 2013). At each stage of those proceedings, Plaintiffs may assert that the First Amendment bars the BOEE from disciplining them for the speech at issue.

Plaintiffs contend they have no forum to raise constitutional challenges until formal charges are filed. The abstention inquiry does not ask whether every preliminary stage of the state process provides a constitutional forum—it asks whether the state process as a whole does. Here, that is the case. A constitutional attack on state procedures does not, without more, "establish the inadequacy of those procedures for *Younger* abstention purposes." *Wassef*, 68 F.4th at 1089 (citing *Ohio Civil Rts. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986)). The third *Middlesex* factor is satisfied.

### 3. Exceptions to *Younger* Abstention

All three *Middlesex* factors are satisfied. That conclusion does not end the inquiry, however, because Plaintiffs argue that an exception to abstention requires federal intervention notwithstanding.

Plaintiffs argue that the bad faith or harassment exception saves this case from abstention. The heavy burden of establishing a *Younger* exception rests with the party opposing abstention. *Geier*, 715 F.3d at 680. On this record, Plaintiffs have not carried it.

The bad faith exception is narrow. Courts have applied it primarily in the criminal context, and most prominently in cases involving egregious prosecutorial conduct—the paradigm case being *Dombrowski v. Pfister*, 380 U.S. 479 (1965), where state criminal statutes were used to suppress civil rights activity during the Jim Crow era. The Eighth Circuit has explained that bad faith generally means a prosecution brought "without a reasonable expectation of obtaining a valid" outcome, or proceedings "initiated to retaliate for or discourage the exercise of constitutional rights." *Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988) (citations omitted).

Measured against that standard, the BOEE is proceeding under facially legitimate ethical rules—Iowa Administrative Code 282-25.3(6)(d), which prohibits conduct that repeatedly exposes students or other practitioners to unnecessary embarrassment or disparagement. The rules are not patently unconstitutional. The BOEE began its investigation in response to formal written complaints submitted by school superintendents, following the threshold jurisdictional determinations required by Iowa law. The process, on its face, bears the ordinary markings of a professional licensing regime.

The Court does not, however, close its eyes to the context in which these proceedings arose. Cavin's September 19 letter was not a routine communication. It was sent to most, if not all, public school superintendents in Iowa, expressly in response to social media posts about Charlie Kirk's death, and it identified the specific ethical rule under which complaints should be filed. Both superintendents cited the letter as the direct cause of their filings—one expressly, one in substance. Senior state officials publicly demanded termination of any educator who had criticized Kirk. The

-9-

timing, the statewide reach, and the viewpoint-specific framing of the letter present a picture that is, at minimum, deeply troubling. A licensing authority's enforcement apparatus should not be mobilized in response to political pressure to suppress disfavored commentary on a public figure's death, and this record raises serious questions about whether that is precisely what occurred here.

The bad faith exception, however, asks a different question than whether the underlying First Amendment claim is meritorious—or even strong. It asks whether the state forum itself is so tainted by bad faith or so structured to harass that it cannot be trusted to adjudicate those claims fairly. *Lewellen*, 843 F.2d at 1109. That is a demanding standard, and it is one the Eighth Circuit has recognized only in the criminal context. *Aaron v. Target Corp.*, 357 F.3d 768, 778–79 (8th Cir. 2004). The Supreme Court has never directly applied the exception in a civil enforcement proceeding, nor has the Eighth Circuit. *Id*. The exception must be construed narrowly and invoked only in circumstances that create an extraordinary pressing need for immediate federal equitable relief—not merely circumstances that present a highly unusual or troubling factual situation. *Id*. (citing *Younger*, 401 U.S. at 53–54).

On that narrower question, and on this record, the exception is not available. Plaintiffs will have the full procedural protections of Iowa's contested case process and judicial review, and nothing in the record suggests those forums are incapable of entertaining and vindicating a First Amendment defense. That the underlying circumstances are troubling does not, without more, establish the kind of extraordinary pressing need for immediate federal intervention that the bad faith exception was designed to address. *Cf. Younger*, 401 U.S. at 50–51 (chilling effect of state government action on First Amendment rights, standing alone, does not justify intervention).[2]

---

[2] Plaintiffs have moved to supplement the record with Iowa House Study Bill 682, introduced on February 5, 2026, which would require the BOEE to revoke educator licenses for publicly celebrating acts of politically motivated violence, with specific reference to Kirk's murder

### C. Disposition

When *Younger* abstention applies, the Court is without discretion to grant injunctive relief. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 816 n.22 (1976); *Plouffe*, 606 F.3d at 894 (Colloton, J., concurring). Because all three requirements for abstention are met and no exception applies, Plaintiffs' motion for a preliminary injunction must be denied.

The proper disposition of the underlying action follows from the nature of the claims asserted. Where a plaintiff seeks only injunctive relief, dismissal without prejudice is the appropriate disposition under *Younger*. *Wassef*, 68 F.4th at 1091. Plaintiffs' claims for injunctive and declaratory relief against the BOEE and against Cavin in his official capacity are therefore dismissed without prejudice. Dismissal without prejudice preserves Plaintiffs' ability to return to federal court if the state proceedings prove inadequate or extraordinary circumstances arise. *See id.* at 1086 n.3.

The damages claims against Cavin in his individual capacity stand on a different footing. Because such claims cannot be pursued in the state administrative forum, dismissal would extinguish them entirely—an inequitable result that *Younger* does not require. A stay is the appropriate disposition while state proceedings run their course. *Borowski v. Kean Univ.*, 68 F.4th 844, 850 (3d Cir. 2023); *see also Wassef*, 68 F.4th at 1086 n.3. Those claims are accordingly stayed pending the conclusion of the state proceedings.

---

and retroactive application to September 10, 2025. [ECF No. 15]. The Court has considered the bill. It does not change the analysis. H.S.B. 682 has cleared no legislative hurdle, passed no chamber, and been signed by no one—it is a proposal, not the law.

To the extent Plaintiffs argue the bill's introduction further demonstrates retaliatory motive, the Court is not unsympathetic; its retroactive reach and the specific identification of Kirk's death are difficult to explain on neutral grounds. But the introduction of unenacted legislation does not establish the extraordinary circumstances the exception requires.

-11-

### III. CONCLUSION

The Court does not today decide whether the BOEE's investigation violates the First Amendment—a question the record suggests is serious. It decides only where that question must first be answered. The structure of federalism directs that answer to the state forum in the first instance. Plaintiffs will have the full procedural protections of Iowa's contested case process to press their constitutional defenses, and the state courts stand available to review any adverse determination. Should those proceedings prove inadequate, or should extraordinary circumstances arise, the Court's door remains open.

The motion for a preliminary injunction is DENIED. [ECF No. 2]. Plaintiffs' claims for injunctive and declaratory relief are DISMISSED without prejudice. Plaintiffs' damages claims against Defendant Cavin in his individual capacity are STAYED pending resolution of the state administrative proceedings. Plaintiffs may move to lift the stay upon conclusion of the state proceedings.

IT IS SO ORDERED.

Dated this 23rd day of February, 2026.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT