**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| Texas American Federation of Teachers *Plaintiff,* v. Mike Morath, *Defendant.* | Case No. 1:26-cv-00024-ADA |

**DEFENDANT'S AMENDED MOTION TO DISMISS**

TABLE OF CONTENTS

Table of Authorities ................................................................................................................. iii

Introduction ............................................................................................................................... 1

I.   Legal Standard ................................................................................................................. 2

II.  Argument .......................................................................................................................... 3

    1. Disciplinary Process for Teachers .............................................................................. 3

        A.  Plaintiff has not suffered harm from Defendant ............................................. 5

    2. Plaintiff's alleged injuries are not traceable to Mike Morath ................................... 7

    3. Younger Abstention..................................................................................................... 8

Conclusion ................................................................................................................................ 10

Certificate of Service................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*A & R Eng'g and Testing, Inc. v. Scott*,
    72 F.4th 685 (5th Cir. 2023) ............................................................................. 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 2, 3

*Breaux v. City of Garland*,
    205 F.3d 150 (5th Cir. 2000) ........................................................................... 6

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................................ 8

*Colson v. Grohman*,
    174 F.3d 498 (5th Cir. 1999) ........................................................................... 7

*Daves v. Dallas Cnty.*,
    22 F.4th 522 (5th Cir. 2022) ............................................................................ 8

*Fed. Election Comm'n v. Cruz*,
    596 U.S. 289 (2022) ........................................................................................ 8

*Gomez v. Tex. Educ. Agency*,
    354 S.W.3d 905 (Tex. App.—Austin 2011, pet. denied) ................................ 5

*Harris v. Victoria Indep. Sch. Dist.*,
    168 F.3d 216 (5th Cir. 1999) ........................................................................... 6

*Hooks v. Landmark Indus.*,
    797 F.3d 309 (5th Cir. 2015) ........................................................................... 2

*Institutional Div. of Tex. Dep't of Crim. Justice v. Powell*,
    318 S.W.3d 889 (Tex. 2010) ........................................................................ 3, 9

*La Union Del Pueblo Entero v. Abbott*,
    151 F.4th 273 (5th Cir. 2025) .......................................................................... 5

*Lowery v. Mills*,
    157 F.4th 729 (5th Cir. 2025) .......................................................................... 7

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982) ........................................................................................ 9

*Nat'l Press Photographers Ass'n v. McCraw*,
    90 F.4th 770 (5th Cir. 2024) ........................................................................ 5, 7

*Pierce v. Texas Dept. of Crim. J., Institutional Div.*,
    37 F.3d 1146 (5th Cir. 1994) ........................................................................ 6, 7

*Plotkin v. IP Axess Inc., Etc.*,
    407 F.3d 690 (5th Cir. 2005) ........................................................................... 3

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ... 2

*Santander v. Salazar*,
133 F.4th 471 (5th Cir. 2025) ... 3

*Texas Ass'n of Business v. Earle,*
388 F.3d 515 (5th Cir. 2004) ... 9

*Texas State Teachers Ass'n v. State*,
711 S.W.2d 421 (Tex. App.—Austin 1986, writ ref'd n.r.e.) ... 9

*Zadeh v. Robinson*,
928 F.3d 457 (5th Cir. 2019) ... 9

**Statutes**

Tex. Admin Code § 249.23 ... 4

Tex. Admin Code § 249.26(b) ... 4

Tex. Admin. Code § 12.85 ... 5

Tex. Admin. Code § 249.18 ... 4

Tex. Admin. Code § 249.19-21. ... 4

Tex. Admin. Code § 249.27 ... 4

Tex. Admin. Code § 249.29 ... 4

Tex. Admin. Code § 249.36 ... 5

Tex. Admin. Code § 249.39 ... 5

Tex. Admin. Code §§ 153.1203-153.1207 ... 4

Tex. Admin. Code. § 249.14(a)-(d) ... 3

Tex. Admin. Code § 249.14(k) ... 4

Tex. Educ. Code §§ 39.3-4 ... 4

Tex. Gov't Code § 2001.058(e) ... 5

Tex. Gov't Code § 2001.087 ... 5

Tex. Gov't. Code §§ 2001.174-76 ... 5

**Regulations**

Fed. R. Civ. P. 12(b)(1) ... 2

Fed. R. Civ. P. 12(b)(6) ... 2

**Constitutional Provisions**

Tex. Const. Ann. art. VII, Sec. 1 (1995) ... 9

**Other Authorities**

*Educator Misconduct & Investigations*, TEXAS EDUCATION AGENCY
  https://tea.texas.gov/texas-educators/investigations/educator-misconduct-
  investigations (last visited Feb 5, 2026) ................................................................. 3

Defendant Mike Morath hereby files this Amended Motion to Dismiss and would show the Court as follows:

## INTRODUCTION

On September 10, 2025, Charlie Kirk was murdered as he engaged in discourse on a college campus. As a public figure in a time when passions are high, the public reacted to his assassination in public forums. Some participants in the resulting dialogue happened to be teachers. The Texas Commissioner of Education, Mike Morath sent a letter to school superintendents, not teachers, not principals, reminding superintendents that public school educators are held to a higher ethical standard, the Educators' Code of Ethics. He also told them that if the superintendents discover that any teachers may have been over the ethical line in their discourse, that the superintendents should refer those teachers to the Texas Education Agency's ("TEA") investigative division through the Misconduct Reporting Portal. Those complaints would then be thoroughly investigated to determine if a breach occurred.

It is important in these overheated times to step back and think for a moment about what exactly Mr. Morath said and to whom he said it. He simply asked for referrals for investigation of anything the superintendents believed was not within the ethical boundaries for a public-school teacher of Texas's children to publish to the world. Nothing more, nothing less.

There was no new policy enunciated. Just a reminder of the existing policy and the place to refer complaints.

Plaintiff vastly overstates Mr. Morath's words. For instance on the top of page two of the Amended Complaint, plaintiff says, "TEA's Policy [sic] further encouraged superintendents to take matters into their own hands and discipline educators for 'reprehensible,' 'vile,' or 'inappropriate' social media posts about Charlie Kirk, sending a threatening message to Texas educators that they will face punishment on multiple levels." ECF 26 p.2. The letter does no such thing. The sentence into which so much content has been poured thanks superintendents for their swift action. This sentence is a bit ambiguous, but it is either thanking them for actions which they

1

have already taken, which had nothing to do with the letter since these actions predated it, or thanking them for their future action in referring complaints for investigation as the letter instructed them to do. Either way, Plaintiff's reading is not within the scope of the actual words of the sentence.

Separate and apart from any letter by Mr. Morath, school districts who are the actual employers of teachers, had their own reactions to their teachers' responses to the Charlie Kirk murder. Mr. Morath had nothing to do with these reactions including any school district terminations or public reprimands.

There has been no showing that any plaintiff has suffered injury because of Defendant's actions. Opening an investigation is not an injury. Conducting that investigation is not an injury. Most of the teachers described in the complaint continue to do their jobs without interruption. The handful of adverse employment actions described in the Amended Complaint were caused solely by the school districts employing those teachers. Defendant had no role in these actions. No injury is alleged in the complaint that is traceable to Defendant.

## I.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When a court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus.*, 797 F.3d 309, 312 (5th Cir. 2015). The plaintiff bears the burden to prove jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(citing *Twombly*, 550 U.S. at 556). While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc., Etc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Qualified immunity can be asserted in a 12(b)(6) motion to dismiss. *See, e.g.*, *Santander v. Salazar*, 133 F.4th 471, 477 (5th Cir. 2025).

## II.  ARGUMENT

The Court should dismiss Plaintiff's claims for three reasons. First, Defendant has not caused any harm to any of Plaintiff's members. Second, there is no traceability of any harm allegedly suffered to Defendant. Third, in the alternative, th*e Younger* abstention doctrine requires the court to allow the investigations and any potential subsequent administrative processes to continue.

### 1. Disciplinary Process for Teachers

As an initial matter, it is important to lay out the legal process that the state must go through before there is any adverse action taken against a teacher's license. During that process any affected teacher has an adequate opportunity to raise their First Amendment arguments within the state process. *See, e.g.*, *Institutional Div. of Tex. Dep't of Crim. Justice v. Powell*, 318 S.W.3d 889, 892 (Tex. 2010).

The process that the TEA is required to follow when conducting a disciplinary investigation is governed by detailed administrative rules and statutes. *See Educator Misconduct & Investigations*, TEXAS EDUCATION AGENCY https://tea.texas.gov/texas-educators/investigations/educator-misconduct-investigations (last visited Feb 5, 2026). The governing rules and statutes ensure due process and provide the petitioner an adequate opportunity to challenge the evidentiary basis of any disciplinary action and for the petitioner to raise and have timely decided any legal defenses.

The TEA's investigation and hearing process generally begins when the TEA receives a written complaint or when the TEA obtains information concerning allegedly improper conduct committed by an educator, applicant, or examinee. *See* 19 Tex. Admin. Code. § 249.14(a)-(d); *see*

3

*also id.* at §§ 153.1203-153.1207 (describing mandatory reporting requirements and separate procedures when an employee is under investigation for a romantic relationship with, or solicited or engaged in sexual contact with, a student or minor); Tex. Educ. Code §§ 39.3-4 (describing special investigations). After reviewing the allegations, TEA staff have the discretion whether to accept the case for investigation. *See* 19 Tex. Admin. Code. § 249.14(k). Before the institution of any agency proceedings, the TEA is required to send a letter via certified or registered mail to the certificate holder being investigated giving them notice of the facts or conduct alleged to warrant the intended action and provide her with an opportunity to show compliance with the law. *Id.* § 249.14(p)-(q). Only the TEA may file a petition seeking sanctions with the State Board for Educator Certification (SBEC). *Id.* § 249.14(q).

If the TEA determines that a petition seeking sanctions is warranted, the TEA can file the petition and must serve the petition on the certificate holder and the certificate holder's attorney, if notice of representation has been provided. *Id.* § 249.15(c), 249.26. The petitioner has the burden of proof by a preponderance of the evidence, and the petition must contain "a statement of the legal authority and jurisdiction under which the disciplinary action is being sought and hearing is to be held," "a reference to the particular sections of the statutes and rules involved,' "a statement of the matters asserted," and "a statement regarding the failure of the parties to reach an agreed settlement of the matters." *Id.* § 249.26(b). The certificate holder has 30 calendar days to file an answer and has the right to be represented by an attorney. *Id.* §§ 249.23, 249.27.

If the certificate holder has timely served an answer, the case is then referred to the State Office of Administrative Hearings, where the case is heard by an Administrative Law Judge. *Id.* §§ 249.18(b)(2), 249.19-21. The parties are entitled to discovery, and the proceeding is governed by the Texas Rules of Civil Procedure; Tex. Gov't Code, Chapter 2001 (relating to administrative procedures); 1 Tex. Admin. Code, Part 7, Chapter 155 (relating to procedural rules relevant to procedures of the State Office of Administrative Hearings); and 19 Tex. Admin. Code, Chapter 249 (relating to disciplinary proceedings by the State Board for Educator Certification). 19 Tex. Admin. Code § 249.29. The Texas Rules of Evidence as applied in a nonjury civil case in district court

govern the hearing, and parties have the right to cross-examine witnesses. Tex. Gov't Code § 2001.087; 1 Tex. Admin. Code § 12.85. After the hearing, the Administrative Law Judge must prepare a proposal for decision, which must contain separate findings of fact and conclusions of law. 19 Tex. Admin. Code § 249.36. The SBEC must then make a final decision on the proposal for decision and may change a finding of fact or conclusion of law made by the Administrative Law Judge only if the SBEC states "in writing the specific reason and legal basis" for the change. 19 Tex. Admin. Code § 249.39; Tex. Gov't Code § 2001.058(e). The final order is subject to judicial review, and the reviewing court must reverse or remand the case if the decision prejudices the appellant's substantial rights because it violates a constitutional or statutory provision, exceeds the agency's authority, is made through unlawful procedure, is not reasonably supported by substantial evidence, or is arbitrary or capricious. Tex. Gov't. Code §§ 2001.174-76; *Gomez v. Tex. Educ. Agency*, 354 S.W.3d 905 (Tex. App.—Austin 2011, pet. denied).

These procedures, like the procedures in *Middlesex*, are not deficient. Nor has there been any showing that Defendant is acting in bad faith in the investigation and possible subsequent administrative process. Plaintiff's members can be represented by counsel, have plenty of opportunity to present evidence and legal arguments to the agency prior to any final decision, and may seek judicial review. These procedures are an adequate opportunity to raise these constitutional questions and importantly, there has been no allegation to the contrary.

### A. Plaintiff has not suffered harm from Defendant

Plaintiff has not pled an Article III injury for several reasons. First, Plaintiff has not pled facts showing a credible threat of adverse employment action by Defendant exists as to its members. Second, Plaintiff has not pled an injury in fact traceable to the conduct of Defendant. Article III standing requires the plaintiff to plead an injury in fact that is traceable to the conduct of the defendant and redressable by the court. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 781 (5th Cir. 2024). "[P]laintiffs must establish standing for each and every provision they challenge." *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 285 (5th Cir. 2025) (quoting *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019)).

Plaintiff has failed to state a claim for First Amendment retaliation because it has failed to show an adverse employment action by Defendant against any of its members. A plaintiff must plead four elements to assert a retaliation claim cognizable under the First Amendment: (1) the plaintiff has suffered an adverse employment action; (2) the plaintiff was speaking as a citizen on a matter of public concern; (3) the plaintiff employee's interests in free speech on matters of public concern outweighs the defendant employer's interests in efficiently managing a public function; and (4) the defendant's action was motivated by the plaintiff's speech. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). Here, Defendant agrees the death of Charlie Kirk is a matter of public concern and that the teachers were referred for investigation because of the speech at issue, but without an adverse employment action, and because Plaintiff has failed to show how *Pickering* balancing weighs in their favor against Defendant, Plaintiffs have failed to state a claim.

The Fifth Circuit has consistently taken a narrow view of what constitutes an adverse employment action. *Pierce v. Texas Dept. of Crim. J., Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994). "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Id.* The Fifth Circuit has declined to broaden its view of adverse employment actions, advising that even when some actions may have "the effect of chilling protected speech," they are not necessarily actionable. *Id.* at 1150.

The Fifth Circuit has further defined what is *not* an adverse employment action: (1) "mere accusations or criticism," *Breaux v. City of Garland*, 205 F.3d 150, 157–58 (5th Cir. 2000) (citing *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997)); (2) "investigations," *id.* (citing *Pierce,* 37 F.3d at 1150); (3) "psychological testing," *id.* (citing *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998), *cert denied*, 526 U.S. 1065 (1999)); (4) "false accusations," *id.* (citing *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999)); and (5) "polygraph examinations that do not have adverse results for the plaintiff," *id.* (citing *Pierce*, 37 F.3d at 1150). Specifically in the education context, the Fifth Circuit has repeatedly announced that "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures" are not the

kinds of adverse actions that "rise to the level of a constitutional deprivation." *Lowery v. Mills*, 157 F.4th 729, 741 (5th Cir. 2025) (quoting *Pierce*, 37 F.3d at 1149).

Thus, the outer boundaries of the adverse employment action category appear to be defined by the ultimate result. For example, in *Pierce*, the plaintiff was investigated two separate times for potential misconduct, but the Fifth Circuit found no adverse employment action because "[n]either investigation resulted in any action being taken against Pierce." *Pierce*, 37 F.3d at 1150. And in *Colson v. Grohman*, the Fifth Circuit distinguished verbal reprimands from formal reprimands, concluding that only the latter qualified as an adverse employment action. *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999) (citing *Benningfield*, 157 F.3d at 376; *Harris*, 168 F.3d at 220).

Here, Plaintiff has failed to show any adverse employment action by Defendant. The only one that gets close is mentioned on page 5 of the Amended Complaint. While they allege that one teacher was put on the "do not hire list," that is inaccurate. One teacher has been flagged as being investigated. That flag on his file does not mean he cannot be hired, it is simply noting to the world that he is being formally investigated. This is the first step in the formal process, and it would be the only member of plaintiff with the beginning of an adverse employment action. The fact is that if this court believes this flag on the file is adverse action, then the court should abstain from further proceedings while that case continues through the administrative process.

Defendant had nothing to do with causing any other teachers suffering adverse employment actions. Because the Fifth Circuit has explicitly declined to consider an investigation an adverse employment action, plaintiff has failed to state a claim. Plaintiff's alleged injuries are not traceable to the Attorney General.

### 2. Plaintiff's alleged injuries are not traceable to Mike Morath

Plaintiff has not pled facts showing any of the alleged injuries are traceable to Defendant. To establish standing an injury must be fairly traceable to the defendant's conduct. *Nat'l Press Photographers Ass'n*, 90 F.4th at 781. "Traceability is particularly difficult to show where the proffered chain of causation turns on the government's speculative future decisions regarding whether and to what extent it will bring enforcement actions in hypothetical cases." *A & R Eng'g*

7

*and Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412–14 (2013) "[W]here the plaintiff fails to allege such actual or threatened enforcement, the Supreme Court has instructed [courts] to reject the mere potential for enforcement as a 'highly attenuated,' 'speculative chain of possibilities' that cannot trace an injury to the government." *Id.* (quoting *Clapper*, 568 U.S. at 410). As discussed in the previous section Plaintiff has not alleged facts showing Defendant has taken or will eventually take any adverse action against its members. For this reason, Plaintiff lacks standing to bring any of its claims.

Plaintiff cannot show that any of its members have been subjected to adverse employment action by the Defendant. *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 297 (2022) (citing *Clapper*, 568 U.S. at 416) ("Their problem, however, was that they could not show that they had been or were likely to be subjected to that policy in any event."). Plaintiff's members "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is certainly not impending." *Clapper*, 568 U.S. at 416 (citing *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam)). For these reasons Plaintiff lacks standing to bring its claims in this case.

### 3. Younger Abstention

For the reasons stated above, the Court should dismiss Plaintiff's claims in their entirety. It is too early in the process for any actual harm to have occurred, and if harm eventually occurs, it will not be the doing of Defendant.

Nonetheless, if the court believes that opening investigations alone is sufficient harm, then that harm is also sufficient to find that a state judicial process has begun that is entitled to be allowed to continue without collateral actions from a federal court.

The *Younger* abstention doctrine is animated by two principles: "equity and comity." *Daves v. Dallas Cnty.*, 22 F.4th 522, 547 (5th Cir. 2022) (citing *Younger v. Harris,* 401 U.S. 37, 43–44, 53–54 (1971)). It precludes federal courts from interfering with ongoing, parallel state proceedings where there is an ongoing state court proceeding that implicates important state interests, and

plaintiffs have an adequate opportunity to raise their federal challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)

Each of these preconditions are present here. The Texas Education Agency investigations are ongoing. *See, e.g.*, *Zadeh v. Robinson*, 928 F.3d 457, 462, 472–73 (5th Cir. 2019) (finding *Younger* abstention appropriate because of the Texas Medical Board's ongoing investigation). The State's interest in establishing and maintaining its public school system is "of 'paramount importance'", "constitutional magnitude," Tex. Const. Ann. art. VII, Sec. 1 (1995), and "involves the exercise of the state's police power." *Texas State Teachers Ass'n v. State*, 711 S.W.2d 421, 425 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (quoting *Ferrell v. Dallas Indep. Sch. Dist.*, 392 F.2d 697, 703 (5th Cir. 1968)). And any affected teacher has an adequate opportunity to raise their First Amendment arguments within the state process. *See, e.g.*, *Powell*, 318 S.W.3d at 892.

Ongoing state judicial proceedings include certain civil and administrative proceedings that are judicial in nature. *Texas Ass'n of Business v. Earle*, 388 F.3d 515, 520 (5th Cir. 2004) (citing *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc*, 477 U.S. 619 (1986), and *Middlesex County Ethics Comm.*, 457 U.S. 423). In *Middlesex*, the Supreme Court explained that for *Younger* abstention, the "'pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims.'" *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432 (quoting *Moore v. Sims*, 442 U.S. 415, 430 (1979)). The Supreme Court then found that the petitioner "had an 'opportunity to raise and have timely decided by a competent state tribunal the federal issues involved'" because the state supreme court entertained the constitutional issues raised by the petitioner. *Id.* at 436–37 (quoting *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)); *accord Zadeh*, 928 F.3d at 472 n.1 (noting that the constitutional issues must be preserved for appeal to the state court) (citing *Ohio Civil Rights Comm'n*, 477 U.S. at 629).

The process that the TEA is required to follow when conducting a disciplinary investigation is similar to the bar disciplinary proceedings in *Middlesex* that were entitled to *Younger* abstention. TEA's disciplinary process is governed by detailed administrative rules and statutes that ensure

9

due process and provide the petitioner an adequate opportunity to challenge the evidentiary basis of any disciplinary action and for petitioner to raise and have timely decided any legal defenses.

## CONCLUSION

For these reasons, the Court should grant Defendant's Amended Motion to Dismiss and dismiss Plaintiff's claims in their entirety.

Date: March 16, 2026

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted.

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
keith.ingram@oag.texas.gov

BRIAN B. TUNG
Assistant Attorney General
Texas State Bar No. 24145179
brian.tung@oag.texas.gov

LAUREN E. SAEGER
Assistant Attorney General
Texas State Bar No. 24149365
lauren.saeger@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100

COUNSEL FOR DEFENDANT MIKE MORATH

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on March 16, 2026, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

| | |
|---|---|
| Alexander M. Wolf<br>Texas Bar No. 24095027<br>Allison Standish Miller<br>Texas Bar No. 24046440<br>Steptoe LLP<br>717 Texas Avenue, Suite 2800<br>Houston, TX 77002<br>Telephone: (713) 221-2309<br>Facsimile: (713) 221-2320<br>awolf@steptoe.com<br>amiller@steptoe.com | Manuel Alfonso Quinto-Pozos<br>Texas Bar No. 4070459<br>Deats, Durst & Owen PLLC<br>2901 Bee Caves Rd., Suite L<br>Austin, TX 78746<br>Telephone: (512) 474-6200<br>Facsimile: (512) 474-7896<br>mqp@ddollaw.com<br><br>COUNSEL FOR PLAINTIFF, TAFT |

                                        */s/ Keith Ingram*
                                        BRIAN KEITH INGRAM
                                        Special Counsel