**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| **TEXAS AMERICAN FEDERATION OF TEACHERS,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 1:26-cv-00024-ADA** |
| **MIKE MORATH, in his official capacity as Commissioner of the Texas Education Agency,** | |
| **Defendant.** | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS**

Karima Maloney
Texas Bar No. 24041383
David Isaak
Texas Bar No. 24012887
Allison Standish Miller
Texas Bar No. 24046440
Alexander M. Wolf
Texas Bar No. 24095027
STEPTOE LLP
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2300
Fax: (713) 221-2320
kmaloney@steptoe.com
disaak@steptoe.com
amiller@steptoe.com
awolf@steptoe.com

Ida Adibi (*admitted pro hac vice*)
Kylie Clouse (*admitted pro hac vice*)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
iadibi@steptoe.com
kclouse@steptoe.com

Manuel Quinto-Pozos
Texas Bar No. 24070459
DEATS DURST & OWEN PLLC
2901 Bee Caves Road, Suite L
Austin, TX 78746
Telephone: (512) 474-6200
Fax: (512) 474-7896
mqp@ddollaw.com

*Counsel for Plaintiff Texas American Federation of Teachers*

## TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities............................................................................................................ ii

Introduction......................................................................................................................... 1

Statement of Facts............................................................................................................... 1

Legal Standard .................................................................................................................... 3

Argument and Authorities................................................................................................... 5

I.      Texas AFT Members Have Suffered Harm from Defendant's Policy ................................ 5

        A.      Chilling as an Injury in Fact................................................................................. 5

        B.      Adverse Actions as Injuries in Fact ...................................................................... 7

II.     Texas AFT's Members' Injuries are Traceable to Defendant's Actions............................. 9

III.    *Younger* Abstention Is Not Warranted................................................................................ 12

Conclusion ........................................................................................................................ 16

Certificate of Service ........................................................................................................ 18

# TABLE OF AUTHORITIES

*Alexander v. AmeriPro Funding, Inc.*,
    848 F.3d 698 (5th Cir. 2017) ...................................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................4

*Bennett v. Spear*,
    520 U.S. 154 (1997) ..............................................................................................................10

*Benningfield v. City of Houston*,
    157 F.3d 369 (5th Cir. 1998) ..................................................................................................8

*Blackwelder v. Safnauer*,
    689 F. Supp. 106 (N.D.N.Y. 1988) ......................................................................................14

*City of Houston v. Hill*,
    482 U.S. 451 (1987) ..............................................................................................................12

*Cooperrider v. Woods*,
    127 F.4th 1019 (6th Cir. 2025) ...............................................................................................9

*Coszalter v. City of Salem*,
    320 F.3d 968 (9th Cir. 2003) ..................................................................................................8

*Crane v. Napolitano*,
    920 F. Supp. 2d 724 (N.D. Tex. 2013) ...................................................................................6

*Cripps v. La. Dep't of Agric. & Forestry*,
    819 F.3d 221 (5th Cir. 2016) ..................................................................................................8

*Ctr. for Individual Freedom v. Carmouche*,
    449 F.3d 655 (5th Cir. 2006) ..................................................................................................6

*Daily Wire, LLC v. United States Dep't of State*,
    733 F. Supp.3d 566 (E.D. Tex. 2024).................................................................................4, 7

*Duncan v. Smith & Nephew, Inc.*,
    2020 WL 6151233 (S.D. Tex. Oct. 5, 2020)...........................................................................4

*Est. of Parker v. Mississippi Dep't of Pub. Safety*,
    140 F.4th 226 (5th Cir. 2025) .................................................................................................9

*Gbalazeh v. City of Dallas*,
    394 F. Supp. 3d 666 (N.D. Tex. 2019) ...........................................................................15, 16

*Greenwood v. City of Yoakum*,
    2008 WL 1858902 (S.D. Tex. Apr. 24, 2008) ........................................................................4

*Greiner v. United States*,
   900 F.3d 700 (5th Cir. 2018) ..................................................................................3

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
   634 F.3d 787 (5th Cir. 2011) ..................................................................................3

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984)...................................................................................................5

*Hodak v. City of St. Peters*,
   2006 WL 3004052 (E.D. Mo. Oct. 20, 2006)...........................................................8

*Justice v. Hosemann*,
   771 F.3d 285 (5th Cir. 2014) ..................................................................................6

*Katherine Meja and Jennifer Smith v. Iowa Board of Educational Examiners and
   Michael Cavin*,
   Case No. 4:26-cv-0020 (S.D. Iowa Feb. 23, 2026)................................................14

*Lane v. Halliburton*,
   529 F.3d 548 (5th Cir. 2008) ..................................................................................3

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................................................3

*M.D. v. Perry*,
   799 F. Supp. 2d 712 (S.D. Tex. 2011) ...................................................................15

*Marie v. Moser*,
   65 F. Supp. 3d 1175 (D. Kan. 2014).......................................................................14

*Meese v. Keene*,
   481 U.S. 465 (1987)..................................................................................................5

*Missouri v. Biden*,
   83 F.4th 350 (5th Cir. 2023), rev'd on other grounds, *Murtha v. Missouri*, 603
   U.S. 43 (2024)........................................................................................................10

*Morris v. Robinson*,
   2017 WL 4510593 (W.D. Tex June 5, 2017) .........................................................13

*NRA of Am. v. Vullo*,
   602 U.S. 175 (2024).................................................................................................10

*Pickett v. Tex. Tech. Univ. Health Sci. Ctr.*,
   37 F.4th 1013 (5th Cir. 2022) ..................................................................................4

*Power v. Summers*,
226 F.3d 815 (7th Cir. 2000) ........................................................................................8

*Reule v. Jackson*,
114 F.4th 360 (5th Cir. 2024) ....................................................................................9, 12

*Rivera-Jimenez v. Pierluisi*,
362 F.3d 87 (1st Cir. 2004)...........................................................................................8

*Robledo v. United States*,
147 F.4th 515 (5th Cir. 2025) .......................................................................................4

*RTM Media, L.L.C. v. City of Houston*,
518 F. Supp. 2d 866 (S.D. Tex. 2007) .......................................................................12

*RTM Media, L.L.C. v. City of Houston*,
584 F.3d 220 (5th Cir. 2009) ......................................................................................12

*Santa Fe Springs Realty Corp. v. City of Westminster*,
906 F. Supp. 1341 (C.D. Cal. 1995) ..........................................................................15

*Socialist Workers Party v. Attorney General*,
419 U.S. 1314 (1974)....................................................................................................6

*Speech First, Inc. v. Fenves*,
979 F.3d 319 (5th Cir. 2020) ......................................................................................5, 7

*Tex. Entm't Ass'n v. Hegar*,
10 F.4th 495 (5th Cir. 2021) .......................................................................................13

*Thomas v. State*,
294 F.Supp.3d 576 (N.D. Tex. 2018) .........................................................................13

*United States v. Anderson*,
798 F.2d 919 (7th Cir. 1986) ......................................................................................14

*Wollschlaeger v. Farmer*,
814 F. Supp. 2d 1367 (S.D. Fla. 2011) .......................................................................14

*Younger v. Harris*,
401 U.S. 37 (1971). ECF No. 30............................................................................. *passim*

**Statutes**

Tex. Educ. Code §§ 22A.051, 22A.052........................................................................13

**Other Authorities**

19 TEX. ADMIN. CODE § 249.14(a) ...............................................................................15

Fed. R. Civ. P. 12(b)(1)..................................................................................................3, 4, 7

Fed. R. Civ. P. 12(b)(6)........................................................................................................4

Webster's New World Dictionary (1962) ...........................................................................14

v

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS</u>

### <u>INTRODUCTION</u>

Defendant's Amended Motion to Dismiss, ECF No. 30, should be denied. Plaintiff's Amended Complaint plausibly alleges TEA Commissioner Mike Morath violated Texas AFT's members' First Amendment rights in issuing and enforcing the TEA Policy. The Complaint plainly alleges injury to Texas AFT's members. Not only has the Policy chilled the speech of Texas AFT's members, but Texas AFT members have suffered concrete harm—including being put on a Do Not Hire registry.

Aside from its failed standing challenge, Defendant does not offer any legal basis to dismiss Texas AFT's facial challenge of the TEA Policy. Nor should this Court take the extraordinary step of abstaining from exercising its jurisdiction. *Younger* abstention is not appropriate in this case because the Amended Complaint presents a First Amendment facial challenge; the TEA investigations were brought in bad faith; Plaintiff Texas AFT is not party to the TEA administrative proceedings; and, perhaps most importantly, the TEA administrative proceedings fail to offer prospective relief to stop the Policy and halt its ongoing chilling effect.

### <u>STATEMENT OF FACTS</u>

Defendant's motion ignores the applicable legal standards at the motion to dismiss stage— when all inferences are drawn in favor of the plaintiff—and spends much time disputing Texas AFT's allegations, relying on outside facts, and drawing inferences in his own favor. The recitation of the facts below applies the correct standard, referring to the Complaint itself and reasonable inferences in Plaintiff's favor.

In the wake of Charlie Kirk's death, Commissioner Mike Morath published a policy letter (the "TEA Policy" or "Policy") that condemned and referred Texas educators for misconduct investigations by the TEA for all "vile," "reprehensible," and "inappropriate" content posted on

their personal social media accounts regarding Mr. Kirk.  ECF No. 26, Exhibit 1.  The Policy did not stop there. Mr. Morath further mandated superintendents across Texas do the same, directing as follows: "If you are made aware of additional instances of inappropriate conduct being shared, it should be reported to the agency through TEA's Misconduct Reporting Portal," a mechanism reserved for reporting teachers for sexual relationships and other unlawful acts with students and minors.  *Id.*; ECF No. 26 ¶ 28.

Mr. Morath, who wields tremendous oversight authority and influence over the state's school districts, including taking over three school districts in the past six months,[1] also "commended the swift action taken by leadership of the districts that employ these educators" who made inappropriate posts." ECF No. 26-1.  This language sent a threatening message to educators that they can expect their districts to take disciplinary actions against them for social media posts labelled "inappropriate" or "reprehensible" by Mr. Morath and the TEA.  Predictably, the TEA Policy unleashed a wave of retaliation and disciplinary actions against teachers based on their First Amendment protected speech.  ECF No. 26, ¶¶ 7, 27, 30.

Teachers placed under investigation by the TEA have "flags" placed on their teaching certificates.  ECF No. 26, ¶¶ 7, 71. Such investigations may result in the revocation of an educator's teaching license, effectively preventing affected educators from working in Texas public schools. Publicly threatening Texas educators with such a consequence deters them from speaking publicly for fear of retaliation.  *Id.* ¶ 12.  Mr. Morath's Policy thus had and continues to have a chilling effect on Texas AFT members' political speech.

---

[1] *Sydnie Henry*, *TEA Announces Takeover of Three More School Districts*, TEXAS SCORECARD (Dec. 12, 2025), https://texasscorecard.com/state/tea-announces-takeover-of-three-more-school-districts/.

Retaliation against Texas AFT members did not stop at investigations. As a result of Mr. Morath encouraging "action" to be taken against those who posted "vile," "reprehensible," or "inappropriate" content about Mr. Kirk, Texas AFT members have been placed on administrative leave, reprimanded, and even in some cases terminated for expressing their views about Mr. Kirk on their private social media accounts. *See* ECF No. 26 ¶¶ 34, 35, 54, 55, 61, 62, 68, 69. One teacher who was terminated by his school district for posting about Kirk's death was placed on the TEA's "Do Not Hire" registry, and other members have been referred to the TEA for investigation based on their social media posts. *See id.* ¶¶ 30, 4¶ 30, 64, 71, 72. These teachers were disciplined solely for their speech, without any regard to whether the posts disrupted school operations in any way. As a result of the TEA Policy, many educators have self-censored and withdrawn from political speech. *See id.* ¶¶ 43, 56, 65, 73.

## LEGAL STANDARD

A claim can be dismissed for lack of subject-matter jurisdiction only when a court lacks the statutory or constitutional power to adjudicate the claim. *Greiner v. United States*, 900 F.3d 700, 703 (5th Cir. 2018); Fed. R. Civ. P. 12(b)(1). Challenges under Rule 12(b)(1) extend to the standing of the plaintiff to assert a claim. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n. 2 (5th Cir. 2011). A plaintiff establishes Article III standing by showing that (1) the plaintiff has suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

In resolving a Rule 12(b)(1) motion, a court may consider: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (internal quotation omitted). Regarding the third

3

prong, however, a court may not resolve disputed facts on a Rule 12(b)(1) motion "where issues of facts are central both the subject matter jurisdiction and the claim on the merits." *Pickett v. Tex. Tech. Univ. Health Sci. Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022) (citations omitted). In *Daily Wire, LLC v. United States Dep't of State*, 733 F. Supp.3d 566, 576, 584-85 (E.D. Tex. 2024), the district court applied this principle to the issue of First Amendment standing to deny a Rule 12(b)(1) motion when there was a factual dispute regarding whether plaintiff had suffered injury. The plaintiff bears the burden of establishing jurisdiction, but dismissal is improper unless "it appears certain that the plaintiff cannot prove any set of facts in support of [their] claim that would entitle plaintiff to relief." *Robledo v. United States*, 147 F.4th 515, 519 (5th Cir. 2025) (quoting *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020)).

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(b)(6) motion "tests the formal sufficiency of the plaintiff's complaint, but should not be used to resolve factual issues or the merits of the case." *Duncan v. Smith & Nephew, Inc.*, 2020 WL 6151233 at *1 (S.D. Tex. Oct. 5, 2020) (citing *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). "The court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Greenwood v. City of Yoakum*, 2008 WL 1858902 at *1 (S.D. Tex. Apr. 24, 2008) (citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999)). "A court may dismiss a complaint only if it is clear

4

that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## ARGUMENT AND AUTHORITIES

Defendant's Motion to Dismiss should be denied because Plaintiff's Amended Complaint demonstrates its members have suffered harm traceable to Mr. Morath's conduct, and that *Younger* abstention is not warranted in this case.  Defendant's arguments for dismissal are limited solely to standing and abstention and do not challenge the merits of Plaintiff's claims.  Accordingly, the Court's review at this juncture should be limited to the narrow jurisdictional issues raised, and because those arguments fail, the case must proceed.

## I.    Texas AFT Members Have Suffered Harm from Defendant's Policy

Plaintiff has sufficiently pled that its members suffered Article III injuries from the TEA Policy.  Texas AFT members have been harmed both through the chilling of their constitutionally-protected speech and in the form of adverse actions taken against them—each of which is sufficient for establishing an injury in fact.

### A.    Chilling as an Injury in Fact

Defendant's motion wholly ignores Texas AFT's facial challenge to the TEA Policy and its allegations that the Policy's chilling effect injured Texas AFT's members.  *See* ECF No. 26 at ¶¶ 74-103, 110.

The chilling of a speech is, in itself, a constitutional harm where, as here, a plaintiff can demonstrate "more than a 'subjective chill'" and show that a state policy "threatens to cause him cognizable injury." *Meese v. Keene*, 481 U.S. 465, 473 (1987).  Such chilling is enough to establish an Article III injury even prior to the state's enforcement of a policy.  *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) ("This court has repeatedly held, in the pre-enforcement context,

that chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement" (cleaned up and citations omitted)).

A threat of harm is therefore enough to satisfy standing requirements. *See Crane v. Napolitano*, 920 F. Supp. 2d 724, 740 (N.D. Tex. 2013) (citing *United States v. City of Miami*, 664 F.2d 435, 446 (5th Cir. 1981)) ("An adverse employment action, *or the threat thereof*, constitutes an injury-in-fact") (emphasis added). For example, the Supreme Court ruled that the proposed FBI surveillance of a student political convention presented a justiciable claim where such action would dissuade potential attendees from participating. *Socialist Workers Party v. Attorney General*, 419 U.S. 1314, 1318-19 (1974) (denying relief on other grounds). Moreover, the Fifth Circuit has consistently held that "a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006); *see also Justice v. Hosemann*, 771 F.3d 285, 294 (5th Cir. 2014) ("Standing rules are relaxed for First Amendment cases so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief.").

Here, the TEA Policy imposes a chill sufficient to demonstrate standing. In the Policy, Mr. Morath threatens to launch TEA misconduct investigations against educators for their constitutionally protected speech. ECF No. 26-1. These investigations can result in the loss of an educator's certificate, thereby ending his or her career. ECF No. 26 ¶¶ 9, 12, 24. This would—and did—reasonably chill Texas AFT members and cause them to self-censor out of fear of reprisal. *See id.* ¶¶ 43, 56, 65, 71. Defendant also encouraged school districts—over which he and his agency exerted considerable power—to take action against educators who, as private citizens, took political positions with which Defendant did not agree. *Id.* ¶¶ 99-103. Plaintiff has thus adequately pled its members suffered harm from Defendant's Policy.

### B.    Adverse Actions as Injuries in Fact

Plaintiff has also adequately pled an injury in fact in its as-applied challenge in alleging that the TEA Policy was used to enforce actual adverse actions against its members.  An injury suffered by one member confers standing on the association.  *Speech First, Inc.*, 979 F.3d at 330. As alleged in the Amended Complaint, after posting on social media about Mr. Kirk's death, Teacher 6 was placed on the TEA's "Do Not Hire" registry as "under investigation by TEA based on allegations that the individual abused or was involved in an inappropriate relationship with a student or minor."  ECF No. 26 ¶ 72.  This registry is visible to the public on TEA's website. Teacher 6  remained under this designation for months despite never engaging in said inappropriate conduct with a student.  *Id.*  ¶¶ 72-73.  This placement on the Do Not Hire registry made Teacher 6 unemployable as a public school educator in Texas, constituting an adverse employment action as a refusal to hire.  *Id.* ¶¶ 11, 72-73.  Defendant claims, without evidence, that this is "inaccurate," but a Rule 12(b)(1) or 12(b)(6) challenge is not the proper forum to resolve factual disputes about the accuracy of Plaintiff's allegations regarding First Amendment injury.  *See Daily Wire, LLC*, 733 F. Supp.3d at 585 (2024) ("A court cannot resolve disputed facts on a Rule 12(b)(1) motion 'where issues of fact are central to both subject matter jurisdiction and the claim on the merits'" (quoting *Pickett*, 37 F. 4th at 1030)).

And while independently sufficient to confer standing and perhaps the most direct example of an adverse action taken by TEA, Teacher 6's placement on the Do Not Hire registry was not the only adverse action suffered by Texas AFT members as a result of the TEA Policy.  As alleged in Plaintiff's Amended Complaint, Teachers 4 and 5 were issued formal written reprimands, and Teachers 1 and 6 were terminated by their school districts in response to the TEA Policy.  ECF No. 26 ¶¶ 36, 54, 62, 69.

Further, the TEA investigations are adverse actions in and of themselves. Defendant is correct that the Fifth Circuit has held that employer-driven internal investigations alone are not adverse employment actions. *E.g., Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998). But this case involves misconduct investigations conducted by a third-party regulatory authority— the TEA—that has the power to recommend revocation of AFT members' teaching certifications. Simply being under investigation by the TEA negatively impacts an educator's reputation, requires resource expenditures for legal representation, and can have lasting detrimental impacts on an employee's long-term employment prospects, even outside of the education arena. This is especially true here since TEA investigations are normally reserved for serious misconduct, such as physical abuse or inappropriate sexual relationships with students, and other teachers and administrators assume that this (and not unpopular speech) is the subject of an investigation. ECF No. 26 ¶¶ 11, 28, 94, 95. Such consequences constitute adverse actions under the "reasonably likely to deter" standard employed by courts across the country. *See e.g., Rivera-Jimenez v. Pierluisi*, 362 F.3d 87, 94 (1st Cir. 2004); *Coszalter v. City of Salem*, 320 F.3d 968, 974-77 (9th Cir. 2003); *Power v. Summers*, 226 F.3d 815, 820-21 (7th Cir. 2000).

Importantly, the TEA is not Texas AFT members' employer and thus, the standard for what constitutes an adverse action is lower than in the employment context. In a non-employment context, Texas AFT simply must show that "the defendant's actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Cripps v. La. Dep't of Agric. & Forestry*, 819 F.3d 221, 229 (5th Cir. 2016); *see also e.g., Hodak v. City of St. Peters*, 2006 WL 3004052 at *7 (E.D. Mo. Oct. 20, 2006) ("The standard for what constitutes an 'adverse employment action' is different than the standard relating to 'adverse actions' in non-employment settings"). Initiating the misconduct review process that could result in the revocation

of an educator's certification meets this standard. *See Cooperrider v. Woods,* 127 F.4th 1019, 1038 (6th Cir. 2025) (ruling that the "complaint's allegation that Defendants made the decision to commence license-revocation proceedings against [Plaintiff], on its face, supports a reasonable inference that [Plaintiff] suffered an adverse action"). TEA investigations are proceedings that can result in such revocations. ECF No. 26 ¶¶ 9, 12, 24. Indeed, Texas AFT members who have been subject to discipline by school districts or investigation and other actions by the TEA routinely report that they are much less likely to post political content on social media because of the potential repercussions from the TEA Policy. *See* ECF No. 26 ¶¶ 43, 56, 65, 73. Plaintiff has thus shown an Article III injury-in-fact.

## II.     Texas AFT's Members' Injuries are Traceable to Defendant's Actions.

Defendant attempts to distance himself from the harm suffered by Texas AFT's members by arguing that their injuries "are not traceable to Mike Morath." ECF No. 30 at 7. This argument fails because the injuries at issue flow directly from the Commissioner's Policy and enforcement actions.

The Fifth Circuit has described the standing requirement as a "low causation bar," ruling that an "uncertain" or "indirect causal relationship will suffice for standing, and plaintiffs may satisfy the requirement by alleging 'a chain of causation between defendants' conduct and plaintiffs' injuries.'" *Est. of Parker v. Mississippi Dep't of Pub. Safety*, 140 F.4th 226, 236-37 (5th Cir. 2025) (internal citations omitted). "Standing exists where the purported injury is connected to allegedly unlawful government conduct. The defendant's conduct does not need to be the very last step in the chain of causation." *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (internal citations omitted). Rather, it "is often enough that the defendant's conduct was one of multiple contributing causes," and "the fact that the defendant is only one of several persons who cause the harm does not preclude a finding of causation sufficient to support standing." *Id.* Importantly, the

9

causal requirement "does not exclude injury produced by [defendant's] determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997).

Mr. Morath cannot evade his obligation under the First Amendment by relying on the fact that the TEA does not employ Texas AFT's members. As the Fifth Circuit explained in *Kinney v. Weaver*:

> The Supreme Court has made it clear that First Amendment protection does not depend on whether the governmental action at issue is "direct" or "indirect." To hold that the Police Officials' conduct cannot constitute a First Amendment violation because they did not directly deprive [Plaintiffs] of their jobs, but instead used governmental power to exert economic pressure on the [Plaintiffs'] employer in order to achieve that same result, would allow the government to produce a result which it could not command directly.

367 F.3d 337, 357-58 (5th Cir. 2004) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). A state actor also cannot circumvent the First Amendment by coercing or encouraging a third party into suppressing disfavored speech on his behalf. *NRA of Am. v. Vullo*, 602 U.S. 175 (2024); *Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023), rev'd on other grounds, *Murtha v. Missouri*, 603 U.S. 43 (2024).

Texas AFT's Amended Complaint outlines injuries suffered by its members that are plainly traceable to Defendant's challenged actions. First, several of the injuries alleged in the Amended Complaint—the chilling of members' speech, flags placed on certificates, and placement on the Do Not Hire registry—were direct actions taken by the TEA in accordance with Mr. Morath's Policy. *See* ECF No. 26 ¶¶ 43, 56, 65, 71–73. Second, Mr. Morath also used his oversight authority over Texas school districts to pressure Texas AFT's members' employers to target them for their protected speech. *See id.* at ¶ 23, 27, 29. The TEA Policy mandates that school districts across Texas report to the TEA teachers who post about Mr. Kirk's death in a manner that the TEA Policy subjectively identifies as "reprehensible," "vile," and "inappropriate;" it expressly "commend[ed]

the swift action taken by the leadership of the districts" that employ educators who criticize Mr. Kirk. *See* ECF No. 26-1. This language encourages superintendents not only to report educators to the TEA for an investigation but also to take independent disciplinary steps and make an example out of educators who engage in protected speech. Superintendents who disregard the Commissioner's directives risk serious reprisal, including potentially losing control of their district's operations under Texas law. *Id.* ¶ 23 (citing Tex. Educ. Code § 39A.003).

Far from being "fears of hypothetical future harm," as Defendant claims, the consequences of the TEA Policy have already materialized. *See* ECF No. 30 at 8. Texas AFT members were subject to third-party investigations, which were publicly posted online, damaging their reputation and career prospects. *See* ECF No. 26 ¶¶ 28, 43, 48, 63, 64, 72. In response to the Policy, school districts in fact issued formal reprimands against at least Teachers 4 and 5 and terminated at least Teachers 1 and 6. *Id.* ¶¶ 36, 54, 62, 69. All these adverse actions occurred shortly after the TEA Policy's publication. *See id.* ¶¶ 35, 46, 54, 61, 62, 68, 69. Multiple principals at Texas AFT members' schools told the members that although the principals personally disagreed with the need for discipline, they were required to refer the teachers to Human Resources for their social media posts. *See id.* ¶¶ 40, 47. At least one teacher's written reprimand even specifically referenced the TEA Policy. *Id.* ¶ 54.

Plaintiff's allegations make clear that adverse actions would not have occurred absent the TEA Policy and its mandatory reporting scheme. Whether accomplished through "direct" or "indirect" actions, Mr. Morath used his agency's "governmental power" to "achieve the same result" that he "could not command directly." *See Kinney*, 367 F.3d at 357-58. Defendant's contentions that "Mr. Morath had nothing to do" with the school district's actions constitute a factual dispute and thus cannot be the basis for a motion to dismiss. *See* ECF No. 30 at 2, 7.

Viewing all facts in the light most favorable to the Plaintiff, it is evident that Texas AFT's "purported injury is connected" to "unlawful government conduct"—the TEA Policy—thereby satisfying the Article III causal requirement. *See Reule*, 114 F.4th at 367.

### III.    *Younger* Abstention Is Not Warranted

Defendant argues that the Court should abstain from exercising jurisdiction pursuant to the abstention doctrine under *Younger v. Harris*, 401 U.S. 37 (1971). ECF No. 30 at 8-10. The Court should reject this argument. *Younger* does not compel federal courts to look the other way when the State co-opts its own procedures for unconstitutional ends. Abstaining under *Younger* would require the Court to ignore that the State is deploying an otherwise unchallenged disciplinary process in bad faith to target and punish Texas AFT's members for engaging in protected speech.

Facial challenges to state policies brought "on First Amendment grounds have been exempted from the abstention doctrine, which, itself is 'the exception and not the rule.'" *RTM Media, L.L.C. v. City of Houston*, 518 F. Supp. 2d 866, 871 (S.D. Tex. 2007) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976))).[2] "In such cases to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *City of Houston v. Hill*, 482 U.S. 451, 468 (1987).

---

[2] Defendant's Reply in Support of his Original Motion to Dismiss paints a misleading picture of *RTM*'s subsequent history. He writes that "Plaintiff neglects to mention that in the exact same case before the exact same Court, abstention was granted a few months later," ECF 25 at 3, but neglects to mention that the *RTM* Court *never* granted abstention on the plaintiff's First Amendment claim. Instead, in a later decision, the Court in *RTM* granted abstention on a separate Due Process claim that did not implicate the First Amendment claim at issue in the first *RTM* opinion. *RTM Media, L.L.C.*, 578 F.Supp.2d 875, 885 (S.D. Tex. 2008). Defendant then writes that "[t]he abstention issue in the case was then specifically upheld by the Fifth Circuit." This too is misleading; the Fifth Circuit upheld abstention on the *Due Process* claim—not the First Amendment claims—and did not even reach the merits on the abstention issue on the Due Process claim. Instead, it held that the plaintiff had failed to preserve that claim for appeal. *RTM Media, L.L.C. v. City of Houston*, 584 F.3d 220, 228-29 (5th Cir. 2009).

Even assuming *arguendo* that one of the "highly exceptional circumstances" warranting abstention under *Younger* exists—and one does not—a federal court should nonetheless assert jurisdiction if the state proceeding was brought in bad faith or for purposes of harassment. *Tex. Entm't Ass'n v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021). The bad faith exception applies in two major circumstances: "first, when a state commences a prosecution or proceeding to retaliate for or to deter constitutionally protected conduct; and second, when the prosecution or proceeding is taken in bad faith or for the purpose to harass." *Thomas v. State*, 294 F.Supp.3d 576, 595 (N.D. Tex. 2018) (citing *All Am. Check Cashing, Inc. v. Corley*, 191 F. Supp. 3d 646 (S.D. Miss. 2016)). For the purposes of review at the motion to dismiss stage, the Court need only consider whether Texas AFT's pleadings adequately allege a bad faith exception. *See Morris v. Robinson*, 2017 WL 4510593 at *5 n.8 (W.D. Tex June 5, 2017).

The TEA proceedings against Texas AFT's members present precisely such circumstances. The Amended Complaint alleges that a top state official issued a politically motivated, first-of-its-kind, one-sided policy seeking to retaliate against those who do not share his viewpoints. ECF No. 26 ¶¶ 5, 6, 25–30, 80, 87–90, 104–112. This is the definition of bad faith. Through the TEA Policy, Defendant took the unprecedented step of directing superintendents to misuse the TEA's Misconduct Reporting Portal—a mechanism designed to report "physical abuse[,] threats of violence[,] romantic or sexual relationships[, and] inappropriate communication or boundary violations" involving "a student or minor"—as a tool to suppress educators' First Amendment rights to speak on a matter of public concern. *Id.* ¶¶ 11, 28, 72; *see* Tex. Educ. Code §§ 22A.051, 22A.052. Such infringement on core constitutional rights is precisely the kind of danger federal courts are entrusted to prevent.

13

Defendant relies on a case from the Southern District of Iowa to argue that the bad faith exception does not apply. *See Katherine Meja and Jennifer Smith v. Iowa Board of Educational Examiners and Michael Cavin*, Case No. 4:26-cv-0020 (S.D. Iowa Feb. 23, 2026). But the facts in *Meja* are readily distinguishable. First, proceedings before the Iowa Board of Educational Examiners (BOEE) are not specifically intended to address allegations involving abuse of a minor. It is, in part, Mr. Morath's directive requiring superintendents to misuse a forum designed for such cases that underscores the bad faith nature of these proceedings.

Second, the Iowa BOEE only "encouraged" administrators to report educators for their social media posts about Mr. Kirk. In this case, Mr. Morath made clear that reporting educators was mandatory, noting that "inappropriate content *should* be reported to the agency through the TEA's Misconduct Reporting Portal." ECF 26, Ex. 1. By using the word "should," the TEA Policy confirms the mandatory nature of Mr. Morath's directive. *See Wollschlaeger v. Farmer*, 814 F. Supp. 2d 1367, 1376 (S.D. Fla. 2011) ("The word 'should' can impose a mandatory rule of conduct."); *United States v. Anderson*, 798 F.2d 919, 924 (7th Cir. 1986) ("The word 'should' is defined as 'the past tense of shall,' (Webster's New World Dictionary at 1349 (1962)) and as listed in Roget's Thesaurus means 'be obliged, must ... have to'").

Furthermore, "abstention is mandated under *Younger* only when the federal plaintiff is actually a party to the state proceeding; the doctrine does not bar non-parties from raising constitutional claims in federal court, even if the same claims are being addressed in a concurrent state proceeding involving similarly situated parties." *Blackwelder v. Safnauer*, 689 F. Supp. 106, 119 (N.D.N.Y. 1988) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928-29 (1975)); *Marie v. Moser*, 65 F. Supp. 3d 1175, 1197 (D. Kan. 2014). Here, AFT seeks relief on behalf of itself and

14

all of its members—not just those who have been subject to TEA's disciplinary process.  This is especially true as AFT is mounting a facial challenge, in addition to an as-applied challenge.

A related reason why abstention is inappropriate is because AFT is seeking forward-looking injunctive relief to retract the Policy and stop the chilling of its members' First Amendment rights.  The TEA's administrative process does not provide such forward-looking relief or effect the change in TEA's policy that Plaintiff requests; rather, that process only resolves each individual educator's case.  *See* 19 TEX. ADMIN. CODE § 249.14(a) (permitting the TEA to investigate information concerning "alleged improper misconduct by *an educator, application, examinee, or other person*." (emphasis added)).  It cannot provide relief to educators beyond the scope of each individual proceeding.  In such circumstances, where a Plaintiff's injury cannot be fully redressed through the parallel state court proceedings, courts have held that *Younger* abstention is "inappropriate."  *See Santa Fe Springs Realty Corp. v. City of Westminster*, 906 F. Supp. 1341, 1353 (C.D. Cal. 1995) (citing *Younger*, 401 U.S. at 45).  For this reason, courts in this Circuit have declined to apply *Younger* where the state proceedings were intended to address only a "particular" individual's circumstances, not "overarching" concerns or "constitutional violations." *M.D. v. Perry*, 799 F. Supp. 2d 712, 721-22 (S.D. Tex. 2011) (exercising jurisdiction where the state tribunal was ill-suited for obtaining "the type of wide-ranging injunctive and declaratory relief that [Plaintiffs] desire"); *accord Gbalazeh v. City of Dallas*, 394 F. Supp. 3d 666, 670 (N.D. Tex. 2019).

Here, because Texas AFT is not a party to any of the TEA disciplinary proceedings at issue and cannot vindicate its membership's rights through the state process, there is no basis for the Court to abstain from exercising jurisdiction over this case.  Indeed, the TEA's investigation process has no procedure to ensure forward-looking injunctive relief.  As such, resorting to the TEA's disciplinary process would deny AFT a large portion of the relief it seeks—enjoining the

15

policy to stop future unconstitutional disciplinary actions and chilling of speech against its members.  *See Gbalazeh*, 394 F. Supp. 3d at 670 (declining to abstain under *Younger* where "Plaintiffs' claims are about more than fighting [a] citation; they seek an injunction that allows them to continue exercising what they believe to be a First Amendment right").  As in *Gbalazeh*, AFT not only seeks to stop the ongoing investigations but to discontinue the TEA Policy and any further enforcement.  For the thousands of teachers across the state who now fear exercising their right to free speech, the parallel TEA proceedings offer no redress and their speech remains permanently chilled.  Because the TEA investigative process cannot grant this prospective relief, abstention is not appropriate.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion.

16

Dated: March 30, 2026

Respectfully submitted

/s/ *Karima Maloney*
Karima Maloney
Texas Bar No. 24041383
David Isaak
Texas Bar No. 24012887
Allison Standish Miller
Texas Bar No. 24046440
Alexander M.  Wolf
Texas Bar No. 24095027
**STEPTOE LLP**
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2300
Fax: (713) 221-2320
kmaloney@steptoe.com
disaak@steptoe.com
amiller@steptoe.com
awolf@steptoe.com

Ida Adibi (*admitted pro hac vice*)
Kylie Clouse (*admitted pro hac vice*)
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
iadibi@steptoe.com
kclouse@steptoe.com

Manuel Quinto-Pozos
Texas Bar No. 24070459
**DEATS DURST & OWEN PLLC**
2901 Bee Caves Road, Suite L
Austin, TX 78746
Telephone: (512) 474-6200
Fax: (512) 474-7896
mqp@ddollaw.com

*Counsel for Plaintiff*
*Texas American Federation of Teachers*

17

## CERTIFICATE OF SERVICE

I certify that on the 30th day of March 2026, a true and correct copy of the above document was served via the CM/ECF system to all counsel of record.

/s/ *Karima Maloney*
Karima Maloney