# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| TEXAS AMERICAN FEDERATION OF TEACHERS,<br><br>*Plaintiff,*<br><br>v.<br><br>MIKE MORATH, in official capacity as Commissioner of the Texas Education Agency,<br><br>*Defendant.* | CASE NO. 1:26-CV-00024-ADA |

## DEFENDANT'S REPLY IN SUPPORT OF HIS AMENDED MOTION TO DISMISS

i

TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................ **Error! Bookmark not defined.**

Argument ......................................................................................................................1

    I.   The Legal Standard. ...................................................................................................1

    II.  The Court should be wary of Plaintiff's conclusory allegations and unwarranted factual inferences unsupported by Plaintiff's complaint. ....................................... 2

    III. This Court should not accept Plaintiff's interpretation of the text of the Morath Letter. ................................................................................................................ 4

    IV. Plaintiff has failed to carry its burden to show redressability. ............................5

    V.  Plaintiff's chilling argument. ................................................................................ 6

    VI. The threshold question in Plaintiff's coercion argument is a question of law. ................... 8

    VII. Younger abstention is appropriate. ...................................................................... 8

Certificate of Service ................................................................................................. 11

Plaintiff, Texas American Federation of Teachers, has filed its Response (ECF 33) to Mr. Morath's Amended Motion to Dismiss (ECF 30). Many of Plaintiff's claims have already been addressed in Mr. Morath's Amended Motion to Dismiss and Response to Plaintiff's Motion for Preliminary Injunction (ECF 32), and Mr. Morath incorporates his previous arguments by reference. In this Reply, Mr. Morath further shows the Court as follows:

<u>**ARGUMENT**</u>

### I.   The Legal Standard.

When reviewing a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, courts do not defer to the plaintiff's position on questions of law. Even when reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, courts do not accept as true legal conclusions disguised as facts. *See, e.g.*, *In re Complaint of Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." (internal quotes omitted)).

Furthermore, when reviewing a Rule 12(b)(1) motion, courts do not always defer to the plaintiff's position on questions of fact. "In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Department of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). In doing so, the reviewing court is not limited to the Plaintiff's complaint. As Plaintiff acknowledges, when "resolving a Rule 12(b)(1) motion, a court may consider: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" ECF 33 at 9 (quoting *Lane v. Haliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (modifications in ECF 33)). In this review, "no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *Montez*, 392 F.3d at 149.

However, "there are limits to a district court's ability to resolve fact disputes on a Rule 12(b)(1) motion." *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1029 (5th Cir. 2022).

As Plaintiff remarks, one of these limits applies "'where issues of fact are central both to subject matter jurisdiction and the claim on the merits.'" ECF 33 at 9-10 (quoting *Pickett*, 37 F.4th at 1030) (citation corrected). When a question of fact is necessary to determine both subject matter jurisdiction and the claim on the merits, courts "must assume jurisdiction and proceed to the merits." *Montez*, 392 F.3d at 150; *accord Pickett*, 27 F.4th at 1030 ("the question whether the trial court could have resolved factual disputes here depends on whether the subject-matter jurisdiction and merits questions are coterminous"). In *Daily Wire*, the trial court found that where "the dispute at issue—whether Defendants interfered with Texas's enforcement of H.B.20—*is* the merits question," the court could not resolve the disputed facts on a Rule 12(b)(1) motion. *Daily Wire, LLC v. United States Dep't of State*, 733 F. Supp. 3d 566, 581 (E.D. Tex. 2024) (emphasis in original); *see also id.* at 584-585 ("the facts disputed by Defendants in their motion are the very facts underlying Media Plaintiffs' merits claims").

Plaintiff's accusation that "Defendant's motion ignores the applicable legal standards at the motion to dismiss stage—when all inferences are drawn in favor of the plaintiff," ECF 33 at 7, is inaccurate. Defendants have the right to challenge jurisdictional facts in a Rule 12(b)(1) motion. *See id.* (alleging that Defendant has applied the incorrect standard and is "disputing Texas AFT's allegations, relying on outside facts, and drawing inferences in his own favor"). And Defendants certainly have the right to challenge Plaintiff's views on disputed questions of law.

## II.   The Court should be wary of Plaintiff's conclusory allegations and unwarranted factual inferences unsupported by Plaintiff's complaint.

In Plaintiff's Response to Defendant's Amended Motion to Dismiss (ECF 33) and Reply in Support of its Amended Motion for Preliminary Injunction (ECF 34), Plaintiff makes numerous conclusory allegations, unwarranted factual inferences, and legal conclusions. Defendant asks the court to be especially mindful of this issue as it considers Plaintiff's arguments. Defendant provides these following examples, but does not have the space to address each instance individually.

For example, Plaintiff claims that the TEA's Misconduct Reporting Portal is "reserved for reporting teachers for sexual relationships and other unlawful acts with students and minors."

ECF 33 at 8 (citing ECF 26, Ex. 1 ("Morath Letter"); ECF 26 at ¶ 28). However, nothing in the Morath Letter suggests that the TEA's Misconduct Reporting Portal is only reserved for reporting teachers for sexual relationships and other unlawful acts with students and minors. *See generally* Morath Letter. And Paragraph 28 of Plaintiff's Amended Complaint states that "principals are required to report the following types of misconduct involving a student or minor: physical abuse; threats of violence; romantic or sexual relationships; and inappropriate communication or boundary violations." ECF 26 at ¶ 28 (internal quotations and emphasis omitted). But, it is not clear how a statement that says principals must report certain kinds of misconduct, *see* Tex. Educ. Code §§ 22A.051-052 (describing mandatory reporting duties), necessarily implies that the TEA's Misconduct Reporting Portal is "reserved" for only these kinds of mandatory reports.

Plaintiff also argues that school superintendents who declined to report social media posts "risked jeopardizing their certifications and losing control of their district's operations under Texas law." ECF 26 at 4 (citing Tex. Educ. Code Sec. 39A.00[1]; *Educator Misconduct & Investigations*, Texas Education Agency, https://tea.texas.gov/texas-educators/investigations/educator-misconduct-investigations ("SBEC may also take disciplinary action against a principal or superintendent who fails to report."); Tex. Educ. Code Sec. 22A.051(k)). However, Tex. Educ. Code §§ 39A.001-39A.002 only allows the TEA to take responsive action in a narrow set of enumerated circumstances, not relevant here. And the quote from the TEA's website is in a subsection pertaining to statutorily-defined mandatory reporting duties that concern issues like physical abuse, threats of violence, and romantic or sexual relationships, not anything related to the social media posts referenced in the Morath Letter. *See* Texas Education Agency, *Educator Misconduct & Investigations*; Tex. Educ. Code §§ 22A.051-052. Similarly, Plaintiff's citation to the newspaper article stating TEA has "tak[en] over three school districts in the past six months" is misleading. ECF 33 at 8 (citing Sydnie Henry, *TEA Announces Takeover of Three More School Districts*, Texas Scorecard (Dec. 12, 2025), https://texasscorecard.com/state/tea-announces-takeover-of-three-more-school-districts/); *but see* ECF 33 at 7 (criticizing Defendants for relying on facts outside of the Amended Complaint). That same article explicitly states that TEA is

appointing new school boards "after campuses in each district received failing academic ratings for at least five consecutive years" which was required by Texas law. Henry, *TEA Announces Takeover* (citing Tex. Educ. Code § 39A); *see also* Tex. Educ. Code § 39A.111 (describing this requirement). Plaintiff has not alleged, and Plaintiff's factual allegations should not be interpreted to support, any conclusion that TEA has the power to pursue, or has pursued, any punitive action against any local school district or official for declining to report social medial posts referred to in the Morath Letter.

III.    **This Court should not accept Plaintiff's interpretation of the text of the Morath Letter.**

This Court should not accept Plaintiff's interpretation of the text of the Morath Letter as true, just like courts do not accept a plaintiff's interpretation of the text of a contract as true, or Plaintiff's interpretation of the text of a statute as true. Rather, the interpretation of text is question of law. "The interpretation of a contract—including whether the contract is ambiguous—is a question of law, which we review *de novo.*" *Mclane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). Only if the text of the contract is ambiguous as a question of law can courts consider questions of fact, like the intent of the parties to the contract. *Id.* at 377-378.

The Morath Letter did not announce a new policy or mandate school superintendents to report social media posts to the TEA, but rather noted that some social media posts "could constitute a violation of the Educators' Code of Ethics" and stated that superintendents who were "made aware" of potential violations "should" report them through the preexisting Misconduct Reporting Portal. Morath Letter; *accord* ECF 30 at 6; ECF 32 at 22. However, Plaintiffs have consistently tried to argue that the Morath Letter announced a mandatory policy. *See, e.g.*, ECF 33 at 20 (arguing that *Iowa Board of Educational Examiners* can be distinguished because "the Iowa BOEE only 'encouraged' administrators to report educators for their social media posts about Mr. Kirk" while "[i]n this case, Mr. Morath made clear that reporting educators was mandatory, noting that 'inappropriate content *should* be reported to the agency through the TEA's Misconduct Reporting Portal.'" (citing Morath Letter, emphasis added)). Plaintiff argues that "[b]y using the word 'should,' the TEA Policy confirms the mandatory nature of Mr. Morath's directive." ECF

4

33 at 20 (citing one case from the Southern District of Florida, one Seventh Circuit case from forty years ago, one dictionary from sixty years ago, and one thesaurus from at least sixty years ago).

However, the Morath Letter does not impose a legal requirement any more than the statement: "I should eat more vegetables." Whether the text of the Morath Letter announced a mandatory policy is a question of law. And so is whether the text of the Morath Letter was sufficiently ambiguous so that it can reasonably be interpreted to announce a mandatory policy. Defendant urges the Court to read the Morath Letter and decide for itself whether the Morath Letter announced a mandatory requirement. Defendant has consistently argued that it does not. *See, e.g.*, ECF 30 at 6; ECF 32 at 22.

## IV.    Plaintiff has failed to carry its burden to show redressability.

In its Response, Plaintiff does not address the third element of standing—redressability. In fact, nowhere does Plaintiff address redressability. *See* ECF 33 at 9-18; ECF 28; ECF 34 at 2-4. And Plaintiff cannot address redressability because this element makes it clear that Plaintiffs have sued the wrong defendant.

"To satisfy the 'irreducible constitutional minimum' of Article III standing, a plaintiff must not only establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, but he must also seek (3) a remedy that is likely to redress that injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021). The plaintiff cannot simply show that the remedy will address any injury, but "must show 'a substantial likelihood' that the requested relief will remedy the alleged injury in fact." *El Paso Cnty., Texas v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020) (citation modified) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)). "Article III's redressability requirement serves to align injuries and remedies. The primary goals of that requirement are to ensure that plaintiffs do not sue the wrong parties and that courts do not issue advisory opinions." *Diamond Alternative Energy v. Env't Prot. Agency*, 606 U.S. 100, 120 (2025).

If Plaintiff's alleged injury in fact are adverse employment actions, the proper defendants are those who can remedy those adverse employment actions. Plaintiff alleges that some of its

5

members have been investigated and that school districts have fired two teachers and have issued two other teachers formal reprimands. *See, e.g.*, ECF 33 at 17. However, the Fifth Circuit has expressly held as a matter of law that being subject to an investigation, even one shared publicly with the media, is not an adverse employment action. *See Breaux v. City of Garland*, 205 F.3d 150, 154, 157–58 (5th Cir. 2000); *see also* ECF 30 at 11. And the TEA does not have the ability to command the individual independent school districts to rehire these two teachers or withdraw the two formal reprimands.

This redressability requirement makes clear that Plaintiff's real issue is not with the TEA but with independent school districts. Texas independent school districts have their own taxing authority and social media policies and are governed by a locally elected Board of Trustees that oversees management and selects the superintendent. *See City of El Paso v. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296, 299 (Tex. 1986) (reaffirming that local school districts are "political subdivisions" of the state); *see also* Tex. Educ. Code § 11.201 (superintendents are responsible for "the termination or suspension of an employee or the nonrenewal of an employee's term contract"); *id.* at 45.001 (taxing authority).

Local independent school districts, local superintendents, local school boards, or local principals may be appropriate defendants, depending on the facts of each case. But to establish associational standing, Plaintiff needs to show that its members have standing to sue Mr. Morath, in his official capacity, "in their own right." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (quoting *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 282 (1986)). Plaintiff has failed to do so.

## V.    Plaintiff's chilling argument.

Plaintiff also alleges its members are injured as their speech is being chilled because the Morath Letter "threatens to launch TEA misconduct investigations against educators for their constitutionally protected speech" which can result in adverse employment consequences, like the "loss of an educator's certificate." ECF 33 at 12. This argument is really an adverse employment

action argument and should be interpreted the same way. *See Lowery v. Mills*, 157 F.4th 729, 741 (5th Cir. 2025) (finding no binding caselaw that "has recognized any freestanding chilled-speech claim district from [plaintiff's] chilled-speech claim" and therefore plaintiff's "chilled-speech claim . . . rises and falls with his retaliation claim"); ECF 30 at 11 (citing *Pierce v. Texas Dept. of Crim. J., Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir.)).

However, even if this Court finds that Plaintiff's chilled-speech claim is independent of Plaintiff's retaliation claim, this Court must decide as a question of law whether Plaintiff has shown standing because any "chilling effect" was an "objective chill," not a "subjective chill." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 406, 418 (2013) (finding the government's interception of communications insufficient to support objective chilling as a question of law, and therefore the plaintiffs only alleged subjective chill, insufficient to support standing). And fear of investigation, by itself, is not sufficient to support standing, even if the plaintiff fears that the "'fruits'" of the investigation may be used to support some "'other and additional action detrimental to that individual.'" *Clapper*, 568 U.S. at 417 (quoting *Laird v. Tatum*, 408 U.S. 1, 10-11 (1972)). *Laird* was about the Army's "investigative and data-gathering activity" in the civilian sector. *Laird*, 408 U.S. at 1, 13-14. And the Army's investigation in *Laird*, like an investigation by the TEA, can lead to future consequences. Nonetheless, the plaintiffs in *Laird* lacked standing because the chill they experienced was a subjective chill. *Clapper*, 568 U.S. at 418 (citing *Laird*, 408 U.S. at 13-14).

In the present case, the TEA has not determined that a petition seeking sanctions is warranted against any individual, nor has it referred any dispute to the State Office of Administrative Hearings. *See* ECF 30 at 8-10 (describing the investigative and hearing process). This Court should consider the caselaw about objective chill, the text of the Morath Letter, the limited legal authority of the TEA, and the substantive process available to Plaintiff's members and determine for itself whether Plaintiff has met its burden to show "objective chill" as a question of law.

## VI.   The threshold question in Plaintiff's coercion argument is a question of law.

Defendant has already addressed Plaintiff's coercion allegations, *see* ECF 33 at 10, and incorporates his prior arguments by reference. *See, e.g.*, ECF 32 at 23-24. It is true that a government official cannot engage in "conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024). However, Defendant would like to emphasize that "whether a reasonable person would perceive the official's communication as coercive" is an "objective inquiry." *Id.* at 191. This objective inquiry is a question of law, decided by the courts, not by the factfinder. *See id.* at 194 (deciding that the threshold question had been met instead of remanding the question to a lower court for a factual determination).

## VII.   *Younger* abstention is appropriate.

Defendant has already addressed Plaintiff's *Younger* arguments, ECF 33 at 18-22, and incorporates his prior arguments by reference. *See, e.g.*, ECF 30 at 8-10, 13-15; ECF 32 at 8-11. Defendant writes additionally to respond to Plaintiff's arguments that *Younger* abstention is inappropriate because: (1) because Plaintiff "is not a party to any of the TEA disciplinary proceedings at issue," and (2) because "the TEA's investigation process has no procedure to ensure forward-looking injunctive relief." *See* ECF 33 at 21-22.

Plaintiff supports its first argument by quoting *Blackwelder*: "[As a general proposition,] abstention is mandated under *Younger* only when the federal plaintiff is actually a party to the state proceeding . . . ." ECF 33 at 20 (quoting *Blackwelder v. Safnauer*, 689 F. Supp. 106, 119 (N.D.N.Y. 1988) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928-29 (1975))). The *Blackwelder* Court continues, "An exception to this rule come into play when 'legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them.'" *Blackwelder*, 689 F.Supp. at 119 (quoting *Doran*, 422 U.S. at 928)); *see also D.L. v. Unified School Dist. No. 497*, 392 F.3d 1223, 1230 (10th Cir. 2004) ("*Doran* illustrates that it is proper for

8

a federal court to exercise jurisdiction over the claim of a genuine stranger to an ongoing state proceeding . . . [s]o long as the stranger has its own distinct claim to pursue.").

The Second Circuit applied this principle in *Spargo*, where it held that *Younger* abstention barred plaintiffs' First Amendment speech challenge because "[the federal plaintiffs] may claim no greater First Amendment protection than [the state defendant], and their '[s]uccess on the merits . . . is entirely derivative' of whatever rights that [the state defendant] may have to engage in the prohibited speech and political activity" *Spargo v. N.Y. State Com'n, Judicial Conduct*, 351 F.3d 65, 83-84 (2nd Cir. 2003) (quoting *In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988)). This is true even when an organization is asserting First Amendment rights. *See In re Application of Dow Jones*, 842 F.2d at 608 ("Success on the merits for the news agencies is entirely derivative of the rights of the trial participants to speak. . . . It is that right to receive speech [from the trial participants] that affords standing to the press to maintain this action."). In the present case, Plaintiff's alleged injuries-in-fact are on behalf of its individual members. Plaintiff, as a corporate entity, does not allege that it has been harmed by Mr. Morath. Like with *In re Application of Dow Jones*, it is the individual members' First Amendment rights "that affords standing [for Plaintiff] to maintain this action" and "success on the merits for [Plaintiff] is entirely derivative of the rights of [its members]."

Plaintiff also argues that abstention is inappropriate because "the TEA's investigation process has no procedure to ensure forward-looking injunctive relief." ECF 33 at 21. Plaintiff is mistaken. There are plenty of opportunities for individuals to get state action dropped, even before a case is referred to the State Office of Administrative Hearings, and before a case reaches the state judicial system. *See* ECF 30 at 8-10. And plaintiffs can certainly receive declaratory and injunctive relief in the state judicial system. *See* Tex. Civ. Prac. & Rem. Code §§ 37.001, 65.011.

More importantly, however, Plaintiff is mistaken about the application of *Younger*. Abstention is required where there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex*, 457 U.S. at 432, even if the precise remedy sought in federal court is not available, or not immediately available, in the state proceedings. And oftentimes, the

9

remedies available at a particular moment in the state administrative process will not perfectly match the remedies available in an Art. III district court, but abstention is still required. *See, e.g.*, *Middlesex*, 457 U.S. at 427, 432 (state bar disciplinary hearing before disciplinary review board); *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 621-22 (allegation of ongoing violation of civil rights before state civil rights commission). Abstention is even required if the state administrative proceeding cannot consider federal constitutional challenges, and therefore cannot grant equitable relief under those federal constitutional challenges, as long as "constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Dayton Christian Schs.*, 477 U.S. at 629.

Dated: April 6, 2026

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**ROB FARQUHARSON**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

Respectfully submitted,

**BRIAN KEITH INGRAM**
Special Counsel
Texas State Bar No. 00787746
keith.ingram@oag.texas.gov

*/s/ Brian B. Tung*
**BRIAN B. TUNG**
Assistant Attorney General
Texas State Bar No. 24145179
Brian.tung@oag.texas.gov

**LAUREN E. SAEGER**
Assistant Attorney General
Texas State Bar No. 24149365
lauren.saeger@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on April 6, 2026, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

*/s/ Brian B. Tung*
**BRIAN B. TUNG**
Assistant Attorney General

11