# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

TEXAS AMERICAN FEDERATION OF
TEACHERS,

        Plaintiff,

v.

MIKE MORATH, in his official capacity as
Commissioner of the Texas Education
Agency,

        Defendant.

CIVIL ACTION NO. 1:26-cv-00024-ADA

## DECLARATION OF MARNEY COLLINS SIMS FOR THE CYPRESS-FAIRBANKS INDEPENDENT SCHOOL DISTRICT

On this day, came to be heard Marney Collins Sims, who stated as follows:

1.      My name is Marney Collins Sims. I am over eighteen (18) years of age, of sound mind, fully competent to and capable of making this declaration, and personally acquainted with the facts stated herein.

2.      I am an attorney in good standing, licensed to practice law in the State of Texas. I have been continuously licensed since 1998.

3.      I have served as General Counsel for the Cypress-Fairbanks Independent School District ("the District") for 21 years. In that capacity, I advise the District on numerous aspects of delivering its mission to educate its students, including compliance with State and Federal law.

4.      During the time that I have served as the General Counsel, the District has handled multiple situations in which District employees publish personal opinions or content on their social media with which students, parents, other District employees, taxpayers or other members of the public disagree. One of my duties is to advise the District on how to handle these situations.

5.      The District has an interest in ensuring that its teachers and other employees contribute to the District's mission of educating its students, and that they do so effectively. The District has an interest in ensuring that employees' actions do not interfere with the District's mission.

6.      At the same time, the District's employees have legal rights. I am well versed in the legal framework that the U.S. Supreme Court has established over the years in analyzing the free speech rights of a public employee (such as an employee of the District).

7.      The District, with my office's advice, has navigated multiple situations involving employees' social media posts. The January 6, 2021, events at the U.S. Capitol, the killing of

1

George Floyd, assassination attempts against President Trump, multiple presidential elections, the Covid pandemic, and wars are only a few examples of events that have inspired District employees, like the public in general, to take to social media to voice their opinions.

8.      In each of these instances, we have reviewed employees' social media posts brought to the District's attention and taken the appropriate action to address the employees' actions, taking into account the District's interests as well as the employees' rights.

9.      Following the assassination of Charlie Kirk in September 2025, I received a copy of Commissioner of Education Mike Morath's Bulletin to the superintendents of Texas public schools addressing "reprehensible" and "inappropriate" social media posts by public school employees regarding Mr. Kirk and setting forth a requirement that districts report teachers to the TEA for investigation through its misconduct portal.

10.     Because District staff are well-versed with handling employees' social media posts, prior to the issuance of Mr. Morath's Bulletin policy, I had not inquired into, nor heard about, any social media posts by District employees pertaining to Mr. Kirk's assassination. Upon receiving Mr. Morath's Bulletin, however, I undertook an additional investigation and learned that the District's Human Resources professionals had indeed received reports of social media posts.

11.     Due to Mr. Morath's Bulletin, I decided to review each and every one of these reports myself. Based on my review, I determined that Human Resources had handled them appropriately by following the District's usual procedures for such matters.

12.     I did not determine any of the posted comments to violate District policies or to fall within the reporting requirements of Chapter 22A of the Texas Education Code. Further, upon review of the TEA misconduct portal procedures and standards, none of the categories listed on the portal for submission of information was applicable to the behavior in which District employees had engaged. Accordingly, I decided that the best course of action was not to report educators and employees through the misconduct portal, but instead to submit a letter to Mr. Morath acknowledging the reporting requirement provided in his Bulletin describing the steps taken with respect to each incident. That letter is attached as Exhibit A.

13.     Even though there was no obligation under the Texas Education Code to report these six employees who posted about Mr. Kirk to TEA's Educators Investigations Division, I made the report because Mr. Morath's Bulletin required it. In the absence of Mr. Morath's reporting requirement set forth in the September 2025 memorandum, the District would not have reported these employees to TEA for investigation as a result of their social media posts.

14.     In all the prior instances in which my office has addressed employees' social media posts, I recall no other situation in which TEA or the Commissioner of Education issued a directive like the one pertaining to Charlie Kirk posts.

15.     In recent years, the authority of the TEA and the Commissioner of Education has expanded. For instance, they now can conduct special investigations into school districts. Additionally, they can sanction superintendents and principals for failure to make certain reports to the TEA. Because the Commissioner of Education is cloaked with significant authority under state law, and because that authority can be (and has been) wielded against school districts and

2

superintendents throughout the state, it would not have been advisable for the District or its Superintendent (or other districts and their leadership) to simply ignore the letter.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 15th, 2026.

Marney Collins Sims

# EXHIBIT A



**INDEPENDENT SCHOOL DISTRICT**

LEARN • EMPOWER • ACHIEVE • DREAM

*Marney Collins Sims, General Counsel*

October 14, 2025

***Via TEA Educator Investigations Division***

Texas Education Agency
Division of Compliance and Investigations
1701 North Congress Avenue
Austin, TX 78701-1494

      Re: Complaint Notification Requested by Commissioner of Education via Superintendent's Bulletin on September 12, 2025

Dear Commissioner Morath:

My name is Marney Collins Sims, and I am the general counsel for the Cypress-Fairbanks Independent School District ("District") and I writing on behalf of Dr. Douglas Killian, Superintendent of Schools.  On Dr. Killian's behalf, the District is providing the information in this letter pursuant to your Superintendent's Bulletin dated September 12, 2025 that stated to report "instances of inappropriate content being shared [by educators that have posted and/or shared reprehensible and inappropriate] … through TEA's Misconduct Reporting Portal."

Specifically, the District received six complaints regarding negative or inappropriate social media posts by staff members related to the assassination of Charlie Kirk.  In each instance, the Legal Services Department, Human Resources Department and relevant supervisors reviewed the concerns and took appropriate employment action commensurate with the concern raised.  Each situation was reviewed in light of the First Amendment parameters for Texas public schools; the Supreme Court balancing test that seeks to ensure government employees can still speak out as citizens about matters of public concern while giving the government leeway to address incitement of violence or workplace disruption.

In each instance below, the relevant employee was determined to be speaking in their capacities as a private citizen on a matter of public concern, which did not result in incitement of violence or disruption to the workplace:

1.  ███████████████, teacher, ████ █████ School.  It was reported through three anonymous tips that ██████████████ was harassing, cyber-bullying and discriminating by posting a news article about Charlie Kirk's shooting on her social media page with a comment that said, "[c]ouldn't have happened to a more shitty person" and re-posting a graphic "Marked Safe From mourning the death of a fascist who used his platforms to advocate for the oppression of marginalized people Today."  The District subsequently received a direct complaint from a citizen who had a private direct message exchange with ████████████████ where she used multiple vulgarities in her messages to the citizen.

The campus did not receive any concerns or inquiries from any parents, staff or ███ community members.  The principal placed ███████████ on administrative leave and investigated the concerns.  At the conclusion of the investigation, it was determined that ██████████████ had not directed her posted comments to any specific individuals therefore harassment, discrimination and cyber-bullying could not be substantiated.  The private exchange with the citizen was related to ██. ████████████'s personal viewpoints, and did not relate to ███████████████'s job duties. Additionally, the posted comments related to Charlie Kirk's death did not threaten or incite violence and did not create disruption on campus or the community.  The principal did find older posts on ██. ████████████'s account that were public posts (they were here profile picture, so viewable to anyone) that contained questionable content.  As a result of the full review and investigation, including the older, unrelated posts and the private exchange with the citizen that contained vulgarities, ██. ████████████ received written directives on expected personal conduct and will be required to complete professional development activities related to professional communication.  █████████ ████████ was returned to duty with these directives.

2. █████████████, temporary worker in ████████████████████.  A community complaint was made that a post made by ████████ made a negative remark about Charlie Kirk's death.  ████████ was removed from duty while the concern was investigated.  ███████████ posted on social media "Love seeing people get what they deserve."  There were multiple comments by other individuals on ████████████'s post, including a post where a commenter (not ████████████) made a reference to the post being about Charlie Kirk.  ████████████, during the review, was able to demonstrate (through other posts) that the reference was to a former roommate who owed him money.  ████████████ was allowed to return to providing temporary services to the District.

3. █████████████, secretary, ████████████████████████████████.  It was reported by a citizen that █████████████ was mocking the death of Charlie Kirk.  It was determined that ██████████ made a social media post to TikTok with a video of a car driving down the road; the car had several items on the back of it, including "Rest in Peace Charlie Kirk" on the back windshield, a bible verse written on the paint of the vehicle, a large sticker with the image of President Trump, and sticker depicting a gun with a reference to the Second Amendment.  In the video █████████ says "Oh boy" and shakes her head and posted the words, "[s]ometimes I forget I am in Texas until I see this." ████████████'s supervisor determined that she was making a personal commentary about the conservative values of Texans and not directly commenting on the death of Charlie Kirk and did not threaten or incite violence.  The comment was a personal comment during personal time and did not create a disruption at work.  ████ ████████ was reminded by her supervisor to review her privacy settings on all social media accounts.

4. █████████████, teacher, ████████████████.  A community complaint was filed that █████████████ shared a post by another person (with no commentary).  The post discussed President Trump and Vice President Vance showing empathy only to certain people like Charlie Kirk by flying his body home but not being concerned about school shootings. Upon review, it was determined that the comments did not involve comments about Charlie Kirk's death, did not incite or encourage violence, and did not create disruption in the school environment.  ████████████ was reminded by her supervisor to review her privacy settings on her social media accounts.

5. █████████████, paraprofessional, ████████ School.  It was reported by a citizen that ████████████ shared a post with a picture of Charlie Kirk and a quote he previously made about the 2nd amendment with the comment "RIP, I guess."  ████████████'s post mentioned having flags at half-staff for some and not others. Upon review, it was determined the comments were the personal opinion of the staff member, did not incite or encourage violence, and did not create disruption at the campus or in the

school environment. ████████ was reminded by her supervisor to review her privacy settings on her social media accounts and to be aware that private comments and posts that create a disruption in the workplace may be subject to discipline.

6. ████████████, speech language pathologist, ████████████ ████████. An anonymous report was received that ████████████ made a comment on another person's post about Charlie Kirk. The comment stated "Let's do some homework on Mr. Kirk! My 'thoughts and prayers' were sarcastic. Charlie Kirk was dangerous. Anyone who says gun deaths are "worth it" has no business shaping our future. I'm glad that voice is gone." Upon review, it was determined that the staff member was making personal commentary about the political views of Charlie Kirk and personal commentary regarding his death. After reviewing her comments, ████████████ agreed they were inappropriate and insensitive and deleted them. Although ████████████'s comments were inappropriate, they did not incite or encourage violence and did not create a disruption in the work environment. ████████████ was reminded by her supervisor that private comments and posts that create a disruption in the workplace may be subject to discipline.

The District reviewed each instance of reported misconduct related to the death of Charlie Kirk individually and in light of the legal standards applicable to the specific situations. Because none of the posted comments were determined to violate District policies and to fall within the First Amendment rights of each employee, the complaints do not fall within the reporting requirements of Chapter 22A of the Texas Education Code. However, based on the Superintendent's Bulletin dated September 12, 2025, indicating superintendents should report situations that appear to fall outside of Chapter 22A, the District is making this notification to the Educator Investigations Division. Because this type of notice letter could be construed as a superintendent acting under color of his or her office, the following declaration is made: this letter and the required report should not be construed as Dr. Killian independently or intentionally mistreating or denying or impeding any of the listed employees in their enjoyment of any right, privilege, power or immunity in their employment.

After reviewing the attached information, please let me know if additional information or explanation is needed.

Sincerely,

*Marney Collins Sims*

Marney Collins Sims
General Counsel
Cypress-Fairbanks Independent School District