**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **Texas American Federation of Teachers,** *Plaintiff,* | § | |
| **vs.** | § | **CIVIL NO: 1:26-cv-00024-ADA** |
| **Mike Morath,** ***in his official capacity as Commissioner of the Texas Education Agency,*** ***Defendant.*** | § | **JURY TRIAL DEMANDED** |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Plaintiff's Motion for Preliminary Injunction (ECF Nos. 28; 32; 34) and Defendant's related Motion to Dismiss (ECF Nos. 30; 33; 35). On April 22, 2026, the Court held oral argument. *See* ECF No. 39 (Hearing Transcript). The Court now **GRANTS** Defendant's Motion to Dismiss due to lack of standing. This case is hereby **DISMISSED WITHOUT PREJUDICE**. The Court vacates its oral ruling on Plaintiff's Motion for a Preliminary Injunction.[1] The Court considered all briefing, exhibits, oral arguments, and the law, even if not specifically cited below.

## I. BACKGROUND

Charlie Kirk, a public figure, was shot and killed on September 10, 2025. ECF No. 30 at 1. Texas educators posted online about this public topic. *Id.* Two days later, Defendant Mike Morath, the Commissioner of the Texas Education Agency, sent a letter ("Morath Letter") to school superintendents noting that he would be referring "all documentation of educators" who

[1] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other [] motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

proliferated "vile content" about Mr. Kirk's killing to Texas Education Agency ("TEA")'s Educator Investigations Division. ECF No. 1-1. The Morath Letter also noted to superintendents that if they "are made aware of additional instances of inappropriate content being shared, it should be reported to the agency through TEA's Misconduct Reporting Portal." *Id.* Plaintiff, a labor union representing teachers and non-administrative public school employees across Texas, filed suit and requested a preliminary injunction enjoining Defendant from "enforcing the [Morath Letter] in any manner, which would include suspending all investigations referred to TEA following the [Morath Letter]'s publication related to posts regarding Mr. Kirk." ECF No. 28 at 20. Defendant filed a related motion to dismiss and argued that Plaintiff lacks standing to challenge Defendant's conduct.[2] ECF No. 30. The Court first addresses standing as required under *Ramming.* 281 F.3d at 161.

## II. LEGAL STANDARD

Parties can challenge the Court's subject matter-jurisdiction through a 12(b)(1) motion. Fed. R. Civ. P. 12(b)(1). "A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (5th Cir. 2001). Article III standing is a requirement for subject matter jurisdiction and requires the plaintiff to prove: "(1) an 'injury in fact'—'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) a causal connection showing the

[2] Defendant also argues the Court should abstain from these proceedings under *Younger v. Harris*, 401 U.S. 37, 43–44, 53– 54 (1971). Because the Court finds that Plaintiff does not have standing to challenge Defendant's actions, the Court does not address *Younger* at this time. Moreover, the Court does not address whether any adverse action by the State Office of Administrative Hearings would violate Plaintiff's members' First Amendment rights. ECF No. 39 at 29:19–30:2; *see Robinson v. Damphousse et al.*, CA No. 1:26-cv-00705-ADA (W.D. Tex. May 13, 2026).

injury is 'fairly traceable' to the challenged conduct; and (3) redressability—that the injury will 'likely' be 'redressed by a favorable decision.'" *Vapor Tech. Ass'n v. Graham*, 167 F.4th 302, 305 (5th Cir. 2026) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The court may consider: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (internal quotation omitted).

## III. ANALYSIS

Defendant argues that Plaintiff has failed to show Article III standing because (1) Plaintiff has not pled an injury-in-fact and (2) Plaintiff's member's injuries, to the extent they exist, are not traceable to Defendant's conduct. ECF No. 30 at 5, 7. Plaintiff counters that its members have suffered harm due to a chilling of speech and because its members have experienced adverse employment actions. ECF No. 33 at 5–9. Plaintiff further argues that these injuries are traceable to Defendant's Letter and enforcement actions. *Id.* at 9–12. As discussed below, the Court agrees with Defendant that Plaintiff's injuries, to the extent they exist, are not traceable to Defendant.

Plaintiff argues that its members' injuries "flow directly from the [Morath Letter] and enforcement actions." Plaintiff notes that a state actor cannot circumvent the First Amendment "by coercing or encouraging a third party into suppressing disfavored speech." ECF No. 33 at 10. Thus, argues Plaintiff, its allegations that its members' speech was chilled, flags were placed on teachers' certificates, and some teachers were placed on a on a "do not hire" list were "direct actions taken by the TEA in accordance with Mr. Morath's [Letter]." The Court disagrees. *See Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (noting that the injury must be connected to alleged unlawful government conduct).

**i. The Morath Letter is Not a New Policy**

Plaintiff challenges the new "TEA Policy." ECF No. 26 ¶ 5. Even assuming the facts as pled are true, the Court finds that no new "TEA Policy" exists. Defendant Morath sent a letter identifying current, in-place policies. ECF 1-1. The Morath Letter did not announce any new policy or expand on any existing policy. *Id.* The Morath Letter simply states that Commissioner Morath would be referring any content that he believed to violate the current Educators' Code of Ethics to the current Educator Investigations Division. Thus, any harm Plaintiff's members suffered was due to the already existing Code of Ethics, the current investigatory process of the Educator Investigations Division, the in-place State Office of Administrative Hearings' process, or the like. ECF Nos. 1-1; 30 at 4.[3]

**ii. Plaintiff's Members' Injuries Are Not Traceable to the Morath Letter**

The Court's conclusion above is supported by the injuries Plaintiff alleges. Plaintiff argues that the alleged injuries were caused by either (1) "direct action taken by the TEA in accordance with Mr. Morath's [Letter]," such as placement on the Do Not Hire registry, or (2) "pressure" placed on teachers' "employers to target" the teachers for their protected speech. ECF No. 33 at 10. But these injuries can only be caused by the in-place policies and procedures, none of which were altered by the Morath Letter. *See* ECF No. 39 at 14:1–25 (arguing that the Morath Letter "threatens very severe disciplinary action"); *cf.* ECF No. 1-1 (not containing any threats of discipline or expanding the scope of current processes); *see* ECF No. 39 at 17:20–25 (noting that flags are part of the in-place formal investigation process). Still, Plaintiff argues that the Morath Letter "mandates" that the school districts target its members due to their protected speech. The

---

[3] Any individualized harm allegedly suffered by a TAFT member can be challenged at the State Office of Administrative Hearings. ECF No. 39 at 33:1–16. The Court understands that TAFT may not make a facial challenge to the Morath Letter at SOAH. *Id.*

Court does not see any "mandate" in the letter, because the Morath Letter does not announce any new requirement or threat from Commissioner Morath. ECF No. 33 at 11. At best, Plaintiff argues that without the Morath Letter, then none of its members would have been disciplined by their respective school districts because the Morath Letter "required" the School Districts to report the teachers. *Id*. But if the principals were ***required*** to report teachers, it was due to in-place policies and regulations as the Morath Letter did not create any new obligations on behalf of the school districts. ECF No. 1-1.

Regardless, Plaintiff argues that causation, *i.e.*, traceability, is a low bar and that a chain of causation leading to an injury is enough for standing. ECF No. 33 at 9 (citing *Est. of Parker v. Mississippi Dep't of Pub. Safety*, 140 F.4th 226, 236-37 (5th Cir. 2025); *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024); *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). Defendant's position is that (1) referring a teacher to the ethics committee or (2) encouraging superintendents to refer teachers who violate the code of ethics can only lead to harm based on the government's "speculative future decisions" and thus is insufficient to satisfy standing's traceability requirement. ECF No. 30 at 7 (citing *A & R Eng'g and Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023)).[4]

The Court agrees with Defendant. For example, in *Reule*, the 5th Circuit held that vexatious litigants failed to establish standing due to failing to show traceability. 114 F.4th at 368. The *Reule* plaintiffs sought, among other relief, an injunction barring a court clerk from enforcing a prefiling injunction. *Reule v. Jackson*, No. 6:22-CV-367-JDK, 2023 WL 3724770, at *5 (E.D.

---

[4] This argument relies on the position that investigations themselves are not injuries-in-fact. ECF No. 33 at 11. The Court agrees. Referring an incident for investigation or opening and conducting a standard investigation is not an injury-in-fact sufficient to establish standing. *Breaux v. City of Garland*, 205 F.3d 150, 157–58 (5th Cir. 2000).

Tex. May 30, 2023), *aff'd*, 114 F.4th 360 (5th Cir. 2024). The reason the plaintiffs failed to establish standing was that even if the Court granted the injunction, the plaintiffs would still be subject to Chapter 11 sanctions if they filed another lawsuit without permission. *Reule*, 114 F.4th at 367 (holding that Plaintiffs' injuries are not traceable to Defendants' conduct because even if the challenged conduct ceased, "nothing about [Plaintiffs'] situation would change" because Plaintiffs would be subject to the similar alleged injuries absent the challenged conduct). Thus, the plaintiffs needed to challenge the injunction order itself, *i.e.*, the real cause of the alleged injury. Here, as discussed above, even if the Court ordered Defendant to withdraw the Morath Letter or referrals for investigations, Plaintiff's members' alleged injuries are caused by the in-place Educators' Code of Ethics and the in-place Educator Investigations Division that enforces those ethics. Just like *Reule*, repealing the letter would not change Plaintiff's members' situation.

Moreover, the other cases cited by the Plaintiff contain challenged conduct that is (1) much closer to a direct causation to the plaintiff's alleged injury-in-fact or (2) given deference by a government actor who causes the alleged injury-in-fact. *See, e.g.*, *Parker*, 140 F.4th at 237 (discussing that some officers' conduct (challenged conduct) was fairly traceable to the injury-in-fact because the officers were involved in escalating a situation that led to Plaintiff's death); *Bennett*, 520 U.S. at 169 (noting that the injury faced was fairly traceable to the challenged conduct because the Service's Biological Opinion (challenged conduct) provided a central role in the Action Agency (cause of injury-in-fact) because the Service's Biological Opinion contains an administrative record that is "fully adequate for the action agency's decision" and the Action Agency must provide reasoning for "disagreeing with" the Service's Biological Opinion). Here, the Morath Letter contains no record or recommended outcome and is much further removed from any alleged harm. *Cf. Parker*, 140 F.4th at 237. Thus, the Court agrees with Defendant that *A &*

*R* controls, and that Plaintiff has failed to show traceability because any independent actions by the independent school districts or SOAH are not traceable to, or bound by, the Morath Letter. *A & R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685, 691 (5th Cir. 2023).

Plaintiff's final argument is that the Morath Letter, even if it did not create injury directly, was a use of governmental power to "achieve the same result" that Commissioner Morath could not "command directly." ECF No. 33 at 11 (citing *Kinney v. Weaver*, 367 F.3d 337, 357–58 (5th Cir. 2004)). First, this argument admits that the harm Plaintiff's members experienced was not directly due to the Morath Letter or the informal investigations, but rather the in-place Educators' Code of Ethics and the in-place Educator Investigations Division. Second, *Kinney* did not discuss constitutional standing, but rather whether a First Amendment violation can occur if a plaintiff suffers an adverse employment action by a non-governmental entity when the non-governmental agency is pressured by a government actor. *Kinney*, 367 F.3d at 357–58. The Court agrees with Plaintiff on that issue, but that is not the issue before the Court. ECF No. 26 (noting that all actors causing any alleged harm in this case are government actors). The question is whether the injuries alleged by Plaintiff were traceable to the actions of Defendant Morath and the Morath Letter. Today, the Court holds that they were not, for the reasons stated above.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Standing is **GRANTED**. The Court's oral ruling denying Plaintiff's Motion for Preliminary Injunction is **VACATED**. This case is dismissed without prejudice. This opinion is not meant to be construed as a comment on the constitutionality of any underlying SOAH decision or proceedings not before the Court.

Signed: 08/21/2026.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE